J. Scott Carr (SBN 136706)
scarr@kcozlaw.com
KABAT CHAPMAN & OZMER LLP
333 S. Grand Avenue, Suite 2225
Los Angeles, CA 90071
Telephone: (213) 493-3980
Facsimile: (404) 400-7333

Attorneys for Defendant
Spherion Staffing, LLC

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAHARA HANSBER, NANG CHAN, and JESUS MORENO, on behalf of themselves, all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>ULTA BEAUTY COSMETICS, LLC; SPHERION STAFFING, LLC; and DOES 1-100,<br><br>Defendants. | CASE NO.:<br><br>(Kern County Superior Court Case No. BCV-20-101598)<br><br>**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1332(d), 1441 and 1446** |

PLEASE TAKE NOTICE that Defendant Spherion Staffing, LLC ("Spherion" or "Defendant") hereby removes the below referenced action from Kern County Superior Court in the State of California to the United States District Court for the Eastern District of California. Removal is based on 28 U.S.C. §§ 1332(d), 1441, and 1446 on the following grounds:

NOTICE OF REMOVAL

**STATEMENT OF JURISDICTION**

1. Removal of this action is proper because this Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S.C. § 1332(d). In relevant part, CAFA grants district courts original jurisdiction over civil class actions filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant and where the amount in controversy for the putative class members in the aggregate exceeds the sum or value of $5,000,000, exclusive of interest and costs. CAFA authorizes removal of such actions pursuant to 28 U.S.C. § 1446. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

**PLEADINGS, PROCESS, AND ORDERS**

2. On or about November 4, 2020, Plaintiffs Shahara Hansber, Nang Chan, and Jesus Moreno ("Plaintiffs") filed a First Amended Class Action Complaint for Damages, Injunctive Relief, Declaratory Relief, and Restitution in the Kern County Superior Court in the State of California against Defendants entitled: *Shahara Hansber, Nang Chan, and Jesus Moreno, on behalf of themselves, all others similarly situated, and on behalf of the general public v. Ulta Beauty Cosmetics, LLC; Spherion Staffing, LLC; and Does 1-100*, Case No. BCV-20-101598 ("State Court Action"). A true and correct copy of the First Amended Complaint ("FAC") filed in the State Court Action is attached hereto as **Exhibit 1**.

3. Spherion was not a party to the State Court Action at any time prior to the date of the filing of the FAC.

4. On December 11, 2020, Spherion acknowledged service of the FAC. A true and correct copy of the completed Notice and Acknowledgment of service of the FAC is attached hereto as **Exhibit 2**.

5. In the FAC, Plaintiffs seek recovery for the following: (1) failure to pay all straight time wages; (2) failure to pay all overtime wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to comply with itemized wage statement provisions; (6) failure to pay all wages due at time of termination of employment (*i.e.*, waiting time penalties); (7) irregular pay periods; (8) violation of the Unfair Competition Law; and (9) violations of the Private

Attorneys General Act ("PAGA").  (Ex. 1, FAC.)

6. Plaintiffs seek to represent the following class:

> All non-exempt, hourly workers who were employed and/or performed services for Defendants and/or DOES, either directly for Defendants and/or DOES, or through staffing agencies and/or other third-party entities, in Defendants' and/or DOES' warehouse/distribution facilities within the State of California, during the period of the relevant statute of limitations. ("Class Members").

(Exh. 1, FAC ¶ 47.)

## PROCEDURAL PREREQUISITES

7. The remainder of the documents in the State Court Action are attached hereto as **Exhibit 3**.

8. Pursuant to 28 U.S.C. § 1446(d), a removal notice, together with a copy of this Notice of Removal, will be filed with the clerk of the Superior Court of the State of California in and for the County of Kern, and shall be served on Plaintiffs.

9. Spherion is filing a Corporate Disclosure Statement concurrently with this Notice of Removal.

10. Removal to this Court is proper pursuant to 28 U.S.C. §§ 1441 and 1446 because the State Court Action is currently pending in this Judicial District.

11. Defendant Ulta Beauty Cosmetics, LLC ("UBC") joins in this Notice of Removal.

## REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

### Jurisdiction Pursuant to the Class Action Fairness Act

12. This Court has original jurisdiction of this action pursuant to CAFA. Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), as amended, provides in pertinent part as follows:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—
>
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant . . .

13. This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), and one that may be removed to this Court by Spherion pursuant to 28 U.S.C. §§ 1441(b) and 1446.

**Purported Class Action Under State Law**

14. This action has been styled as a class action. (Exh. 1, FAC, p.1.)

15. The putative Class in this case includes at least 2,458 members. (Declaration of J. Scott Carr ("Carr Decl.") ¶ 9.)

**Diversity of Citizenship Exists**

16. CAFA's minimal diversity requirement is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A); 1453(b).

17. For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must … be domiciled in the state"). Residence is prima facie evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile"); *see also Zavala v. Deutsche Bank Trust Co. Americas*, No. C 13-1040 LB, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes"). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (*citing Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). Plaintiffs allege that they are residents of California. (Exh. 1, FAC ¶ 29.) Therefore, Plaintiffs are citizens of the State of California. *See* 28 U.S.C. § 1332(a)(1).

18. At all material times, Spherion Staffing, LLC has been and remains a Delaware limited liability company with its principal place of business in Georgia. For CAFA purposes, unincorporated associations like limited liability companies are deemed citizens of "the State where it has its principal place of business and the State under whose laws it is organized." *See* 28 U.S.C. §

1332(d)(10). Accordingly, at the time of the filing of this action and as of the date of this removal, Spherion is now and has been a citizen of the States of Georgia and Delaware for purposes of determining CAFA diversity jurisdiction.

19. Even if the Court were to apply the traditional rules of diversity of citizenship for limited liability companies instead of the express provisions of CAFA, the minimal diversity of CAFA is still met here as follows:

   a. The sole member of Spherion is SFN Group, LLC, a Delaware limited liability company with its principal place of business in Georgia.

   b. SFN Group, LLC's sole member is Randstad North America, Inc., a Delaware corporation with its principal place of business in Georgia.

20. Accordingly, under the traditional diversity analysis for limited liability companies, at the time of the filing of this action and as of the date of this removal, Spherion is and has been a citizen of the States of Delaware and Georgia for purposes of determining diversity jurisdiction.

21. Therefore, Plaintiffs are citizens of states (California) different from Spherion (Delaware, Georgia), and the minimal diversity required by CAFA is satisfied. 28 U.S.C. §§ 1332(d)(2)(A); 1453(b).

**Amount in Controversy**

22. The Class Action Fairness Act authorizes the removal of class actions in which the aggregate amount in controversy, exclusive of interest and costs, for all potential class members exceeds $5,000,000. *See 28* U.S.C. § 1332(d).

23. While Spherion denies Plaintiffs' claims of wrongdoing and their requests for relief, the allegations in the FAC and the total amount of wages, penalties, attorneys' fees, injunctive relief, and other monetary relief at issue in this action amounts to at least $**10,954,583**, substantially in excess of CAFA's jurisdictional minimum of $5,000,000. *See Saulic v. Symantec Corp.*, No. SA CV 07-610 AHS (PLAx), 2007 WL 5074883, at *7-9 (C.D. Cal. Dec. 26, 2007) (considering facts presented in notice of removal, including defendant's declarations, along with plaintiff's allegations in finding jurisdictional limits satisfied under CAFA); *Luckett v. Delta Airlines, Inc.,* 171 F.3d 295,

298 (5th Cir. 1999) (same).  Specifically, a conservative estimate of the amount in controversy here far exceeds $5,000,000, exclusive of interest and costs, calculated as follows:

   a. **Waiting Time Penalties Amount in Controversy:**  Plaintiffs allege that "Defendants . . . have had a **consistent policy and/or practice** of willfully failing to timely pay wages owed to Plaintiffs and those non-exempt, hourly workers who left Defendants and/or DOES employ or who were terminated," and "Plaintiffs and **all other members of the proposed class** experienced Defendants' and/or DOES' common company policies of failing to timely compensate non-exempt, hourly workers all wages owed upon termination."  (Exh. 1, FAC ¶¶ 12, 36; emphasis added.)   Labor Code § 203 provides that wages continue at an employee's daily rate of pay until the final wages are paid, or an action to recover them is commenced, up to maximum of 30 days.  Accordingly, Plaintiffs allege entitlement to waiting time penalties under California Labor Code § 203 for members of the putative Class who are no longer employed by Spherion, seeking to recover "thirty (30) days' worth of wages as a penalty under Labor Code section 203, together with interest thereon and attorneys' fees and costs." (Exh. 1, FAC ¶ 130.)  Spherion denies this claim and will raise various defenses thereto.  However, if members of the putative Class who are no longer employed by Spherion were to prevail on this claim, the amount in controversy thereon exceeds **$6,145,497.92.**  (Carr Decl. ¶¶ 10-13.)  The calculations establishing the amount in controversy on this claim are set forth in the Declaration of J. Scott Carr filed contemporaneously herewith.  (*Id.*)  Based only on the waiting time claim, the amount in controversy in this action exceeds the jurisdictional amount required for removal under CAFA.  (Carr Decl. ¶ 13.)  Nevertheless, Spherion has estimated amounts in controversy for additional claims asserted by Plaintiffs.

   b. **Overtime Claim Amount in Controversy:**  Plaintiffs allege that Spherion "had a **continuous and widespread policy** of not paying Plaintiffs and those similarly situated for all hours they worked, including before clocking in for their work shift,

after clocking out for their work shift, and during unpaid meal periods. Further, Defendants and/or DOES have had a **continuous and widespread policy** to shave the time Plaintiffs and those similarly situated worked (referred to as 'time shaving');" Spherion had "a **consistent policy and/or practice** of failing to provide all straight time and overtime wages owed to all non-exempt, hourly workers, as mandated under the California Labor Code and the implementing rules and regulations of the Industrial Welfare Commission's ('IWC') California Wage Order;" and "Plaintiffs **and all other members of the proposed class** experienced Defendants' and/or DOES' common company policies and/or practices of failing to pay all straight time and overtime wages owed." (Exh. 1, FAC ¶¶ 6-7, 33; emphasis added.)  Plaintiffs further allege that Spherion has "a **continuous and consistent policy** of mandating workers waiting in lines to get through security and at the time clock all before employees are clocked in for the day, i.e., getting compensated. Plaintiffs and Class and subclass members frequently work over eight daily and forty weekly hours, and, therefore, this compensable time is owed at the overtime rates of Plaintiffs and Class Members and subclass members." (Exh. 1, FAC ¶ 84; emphasis added.)  Plaintiffs also allege that Plaintiffs and all members of the putative Class "are not free of control and duty for the entire time they are clocked out for lunch. Necessarily, workers exiting the facility will have to wait in line to get through security and wait in line to clock back in upon their return. Thus, part of the time they are clocked out is time they are under the compensable control of Defendants and/or DOES. Likewise, workers taking their lunch on the premises in the break rooms, have to walk the distances away from the break room to get to the time clock to clock in, which means they are necessarily controlled in their actions for a portion of their unpaid meal period time. Plaintiffs and Class and subclass members frequently work over eight daily and forty weekly hours, and, therefore, this compensable time is owed at the overtime rates of Plaintiffs and Class Members and subclass members." (*Id.* at ¶ 85.)  Spherion denies these allegations and the entirety of Plaintiffs'

1  overtime claim and will raise various defenses thereto.  However, if members of the
2  putative Class were to prevail on this claim, the amount in controversy thereon
3  exceeds $**379,232.63**.  (Carr Decl. ¶¶ 14-16.)  The calculations establishing the
4  amount in controversy on this claim are set forth in the Declaration of J. Scott Carr
5  filed contemporaneously herewith.  (*Id.*)

6      c. **Straight Time Claim Amount in Controversy:** Plaintiffs allege that Spherion "had
7  a **continuous and widespread policy** of not paying Plaintiffs and those similarly
8  situated for all hours they worked, including before clocking in for their work shift,
9  after clocking out for their work shift, and during unpaid meal periods. Further,
10  Defendants and/or DOES have had a **continuous and widespread policy** to shave
11  the time Plaintiffs and those similarly situated worked (referred to as 'time
12  shaving');" Spherion had "a **consistent policy and/or practice** of failing to provide
13  all straight time and overtime wages owed to all non-exempt, hourly workers, as
14  mandated under the California Labor Code and the implementing rules and
15  regulations of the Industrial Welfare Commission's ('IWC') California Wage Order;"
16  and "Plaintiffs **and all other members of the proposed class** experienced
17  Defendants' and/or DOES' common company policies and/or practices of failing to
18  pay all straight time and overtime wages owed.  (Exh. 1, FAC ¶¶ 6-7, 33; emphasis
19  added.) Plaintiffs further allege that Spherion has "a **continuous and consistent**
20  **policy** of mandating workers waiting in lines to get through security and at the time
21  clock all before employees are clocked in for the day, i.e., getting compensated." (Exh.
22  1, FAC ¶ 73; emphasis added.)  Plaintiffs also allege that Plaintiffs and all members
23  of the putative Class "are not free of control and duty for the entire time they are
24  clocked out for lunch. Necessarily, workers exiting the facility will have to wait in
25  line to get through security and wait in line to clock back in upon their return.  Thus,
26  part of the time they are clocked out is time they are under the compensable control
27  of Defendants and/or DOES.  Likewise, workers taking their lunch on the premises in
28  the break rooms, have to walk the distances away from the break room to get to the

time clock to clock in, which means they are necessarily controlled in their actions for a portion of their unpaid meal period time." (*Id.* at ¶ 74.) Spherion denies these allegations and the entirety of Plaintiffs' straight time claim and will raise various defenses thereto. However, if members of the putative Class were to prevail on this claim, the amount in controversy thereon ranges from **$97,745.27 to $354,283.57**. (Carr Decl. ¶¶ 17-19.) The calculations establishing the amount in controversy on this claim are set forth in the Declaration of J. Scott Carr filed contemporaneously herewith. (*Id.*)

    d. **Meal Break Claim Amount in Controversy:** Plaintiffs allege that Spherion "had a **consistent policy** of requiring non-exempt, hourly workers within the State of California, including Plaintiffs, to work through meal periods and work at least five (5) hours without a meal period and failing to pay such employees one (1) hour of pay at the employees' regular rate of compensation for each workday that the meal period is not provided, or other compensation, as required by California's state wage and hour laws, and automatically deducting a half hours pay from their wages;" "did not have a policy of allowing its non-exempt, hourly workers working shifts of ten (10) or more hours in a day to take a second meal period of not less than thirty (30) minutes as required by the applicable Wage Order of the IWC;" and "had a **consistent policy** of requiring non-exempt, hourly workers within the State of California, including Plaintiffs, to work over ten (10) hours without providing an additional, uninterrupted meal period of thirty (30) minutes and failing to pay such employees one (1) hour of pay at the employees' regular rate of compensation for each workday that the meal period is not provided, or other compensation, as required by California's state wage and hour laws." (Exh. 1, FAC ¶¶ 8-10; emphasis added.) Plaintiffs further allege that they "and **all other members of the proposed class** experienced Defendants' and/or DOES' common company policies and/or practices of . . . failing to provide compliant meal periods to non-exempt, hourly workers before the end of their fifth hour of work or a second meal period before the

end of the tenth hour or work, or compensation in lieu thereof." (Exh. 1, FAC ¶ 33; emphasis added.) Plaintiffs also allege that they and all members of the putative Class "do not get an entire 30-minutes [sic] for meal periods wherein they are free of employer control and duties, because part of their time must be spent waiting in line to get through security and waiting in line to clock back in before the 30-minutes are through. Thus, pursuant to Defendants' and/or DOES' **uniformly applicable policies** of only providing 30-minute meal periods, workers cannot be said to receive or be provided with full and complete 30-minute meal periods wherein they are free from employer mandated controls and duties." (Exh. 1, FAC ¶ 92; emphasis added.) In addition, Plaintiffs allege that Spherion's "business model is such that Non-Exempt workers were assigned too much work and insufficient help due to chronic understaffing to be able to take meal periods. Thus, Non-Exempt workers are not able to take meal periods." (Exh. 1, FAC ¶ 96.) Further, Plaintiffs allege that Spherion "would not permit Plaintiffs and the Class to take 30-minute meal periods unless specifically scheduled by Defendant or DOES or unless Plaintiffs and the Class were expressly told to by Defendant and/or DOES. This routinely resulted in Plaintiffs and the Class members not being able to take a meal period, if at all, until after the fifth hour." (Exh. 1, FAC ¶ 99.) Finally, Plaintiffs allege that Spherion "did not have a policy of providing a second meal period before the end of the tenth hour." (Exh. 1, FAC ¶ 100.) Spherion denies these allegations and the entirety of Plaintiffs' meal break claim and will raise various defenses thereto. However, if members of the putative Class were to prevail on this claim, the amount in controversy thereon amounts to **$354,283.57**. (Carr Decl. ¶¶ 20-23.) The calculations establishing the amount in controversy on this claim are set forth in the Declaration of J. Scott Carr filed contemporaneously herewith. (*Id.*)

e. **Rest Break Claim Amount in Controversy:** Plaintiffs allege that Spherion "had a **consistent policy and/or practice** of requiring its nonexempt, hourly workers within the State of California, including Plaintiffs, to work for over four hours, or a major

10
NOTICE OF REMOVAL

fraction thereof, without a 10 minute rest period, and failing to pay such employees one (1) hour of pay at the employees' regular rate of compensation for each workday that the rest period is not provide, or other compensation, as required by California's state wage and hour laws" and that "**Plaintiffs and all other members of the proposed class** experienced Defendants' and/or DOES' common company policies of failing to provide ten (10) minute paid rest breaks to non-exempt, hourly workers whom worked four (4) hours or major fractions thereof."  (Exh. 1, FAC ¶¶ 11, 34; emphasis added.)  Plaintiffs also allege Spherion's' "business model was such that Non-Exempt workers were assigned too much work with insufficient help due to chronic understaffing whereby Plaintiffs and the Class had to work through their rest periods."  (Exh. 1, FAC ¶ 108.)  Further, Plaintiffs allege that "**throughout the statutory period**" Spherion "had a pattern and practice of assigning too much work to be completed in too short of time frames, resulting in Plaintiffs and those similarly situated not being able to take rest periods" and "maintained security policies and practices, whereby Class Members were not provided control-free, off-premises rest periods and/or were incentivized to forego control-free, off-premises rest periods."  (Exh. 1, FAC ¶ 109-110; emphasis added.)  Spherion denies these allegations and the entirety of Plaintiffs' rest break claim and will raise various defenses thereto.  However, if members of the putative Class were to prevail on this claim, the amount in controversy thereon amounts to **$708,567.14**.  (Carr Decl. ¶¶ 20-23.)  The calculations establishing the amount in controversy on this claim are set forth in the Declaration of J. Scott Carr filed contemporaneously herewith.  (*Id.*)

f. **Wage Statement Claim Amount in Controversy:**   Plaintiffs allege that Spherion "had a **consistent policy and/or practice** of willfully failing to provide to Plaintiffs and its nonexempt, hourly workers, accurate itemized employee wage statements" and that "[t]hroughout the statutory period, Defendants and/or DOES employees, including Plaintiffs and similarly situated non-exempt, hourly workers were not provided with accurate and itemized employee wage statements."  (Exh. 1, FAC ¶¶

12, 18; emphasis added.)  Plaintiffs allege that the wage statements Spherion provided were inaccurate as to gross wages earned and total hours worked, among other alleged inaccuracies.  (Exh. 1, FAC ¶ 117.)  Spherion denies these allegations and the entirety of Plaintiffs' wage statement claim and will raise various defenses thereto.  However, if members of the putative Class were to prevail on this claim, the amount in controversy thereon amounts to **$1,078,350.00**  (Carr Decl. ¶¶ 24-26.)  The calculations establishing the amount in controversy on this claim are set forth in the Declaration of J. Scott Carr filed contemporaneously herewith.  (*Id.*)

    g. **Attorneys' Fees Calculation:**  Plaintiffs also seek reasonable attorneys' fees in the FAC.  (Exh. 1, FAC, ¶¶ 77, 87, 102, 111, 118, 130, 139; Prayer, ¶ 18.)  It is well settled that, in determining whether a complaint meets the amount in controversy requirement, the Court should consider the aggregate value of claims for damages *as well as* attorneys' fees.  *See, e.g., Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155-56 (9th Cir. 1998) (attorneys' fees may be taken into account to determine jurisdictional amounts).  In California, where wage and hour class actions have settled prior to trial for millions of dollars, it is not uncommon for an attorneys' fee award to be twenty-five to thirty percent of the settlement and, thus, potentially in excess of a range from **$2,190,918.73 to $2,255,053.21** based on the amount in controversy range here ($8,763,674.53 to $9,020,212,83).[1]  (Carr Decl. ¶¶ 27-28.)

    24.   Based on the foregoing, Spherion has shown that the total amount in controversy ranges from **$10,954,583 to $11,275,266.04** based on the substantial allegations of the FAC and is greater than the jurisdictional amount of $5,000,000 required by CAFA.  Therefore, removal of this action is appropriate under CAFA.

---

[1]  *See, e.g., Abasi v. HCA, the Healthcare Co. Inc.*, C.D. Cal. No. CV 03-7606 (May 9, 2005) (approving attorney's fee award totaling over $1,200,000 where plaintiffs' claims for unpaid overtime, meal and rest break periods settled for $4,750,000).

## CLAIMS NOT CONSIDERED IN
## AMOUNT-IN-CONTROVERSY CALCULATION

25. Plaintiffs also seek to recover: (1) damages for irregular pay periods; (2) damages for alleged violations of the California Business & Profession Code section 17200, *et seq.*; and (3) penalties for alleged PAGA violations.  (Exh. 1, FAC ¶¶ 132-154.)   The **$10,954,583 to $11,275,266.04** amount in controversy range does *not* include damages for these claims.

26. The **$10,954,583 to $11,275,266.04** amount in controversy range also does not include any amount of damages Plaintiffs seek to recover on their claims against UBC.

## TIMELINESS OF REMOVAL

27. The effective date of service of Plaintiffs' Complaint on Spherion was December 11, 2020.  This Notice of Removal is timely in that it has been filed within thirty (30) days of the effective date of service.

## NOTICE TO PLAINTIFFS

28. Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Eastern District of California, written notice of such filing will be served on Plaintiffs' counsel of record.  In addition, a copy of this Notice of Removal will be filed with the Clerk of the Court for Kern County Superior Court.

**WHEREFORE**, for the foregoing reasons, this Court has original jurisdiction of this matter pursuant to 28 U.S.C. § 1332, and removal of the action to this Court is proper pursuant to 28 U.S.C. § 1441.  Accordingly, Spherion respectfully requests that this action proceed in this Court.

DATED: January 5, 2021              KABAT CHAPMAN & OZMER LLP

                                    By:   /s/ J. Scott Carr
                                          J. Scott Carr

                                    Attorneys for Defendant Spherion Staffing, LLC

# PROOF OF SERVICE

## U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

  I am employed in the County of Fulton, State of Georgia; I am over the age of 18 and not a party to the within action; my business address is 171 17th Street NW, Suite 1550, Atlanta, Georgia 30363.

  On January 5, 2021, I served the foregoing document(s) described **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1332(d), 1441 and 1446 (inclusive of exhibits and civil case cover sheet)** on the interested parties to this action by delivering a copy thereof in a sealed envelope addressed to each of said interested parties at the following address(es): SEE ATTACHED LIST

☒  **(BY MAIL)** I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Atlanta, Georgia. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☐  **(BY EMAIL SERVICE)** I caused such document to be delivered electronically via e-mail to the e-mail address of the addressee(s) set forth in the attached service list.

☐  **(BY OVERNIGHT DELIVERY)** I served the foregoing document by FedEx, an express service carrier which provides overnight delivery, as follows: I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided for.

☐  **(BY PERSONAL SERVICE)** I caused such envelope to be delivered by hand to the offices of the below named addressee(s).

☐  (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒  (Federal) I declare that I am employed in the office of a member of the bar ot this court at whose direction the service was made. I declare under penalty of perjury that the above is true and correct.

Executed on January 5, 2021, at Atlanta, Georgia.

            __/s/ Bonnie Westenberger_____
            Bonnie Westenberger

## SERVICE LIST

David Mara
Matthew Crawford
MARA LAW FIRM, PC
2650 Camino Del Rio North, Suite 205
San Diego, California 92018

Marcus J. Bradley
Kiley L. Grombacher
Lirit A. King
BRADLEY/GROMBACHER, LLP
2815 Townsgate Road, Suite 130
Westlake Village, California 91361

James R. Hawkins
Isandra Fernandez
JAMES HAWKINS APLC
9880 Research Drive, Suite 200
Irvine, California 92618

*Attorneys for Plaintiffs*

Matthew C. Kane
McGuireWoods LLP
1800 Century Park East
8th Floor
Los Angeles, CA 90067-1501

*Attorneys for Defendant Ulta Beauty Cosmetics, LLC*