1

David Mara, Esq. (230498)
Matthew Crawford, Esq. (310230)
**MARA LAW FIRM, PC**
2650 Camino Del Rio North, Suite 205
San Diego, California 92108
Telephone: (619) 234-2833
Facsimile: (619) 234-4048

Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)     James R. Hawkins, Esq. (SBN 192925)
Lirit A. King, Esq. (252521)               Isandra Fernandez, Esq. (SBN 220482)
**BRADLEY/GROMBACHER, LLP**                 **JAMES HAWKINS APLC**
2815 Townsgate Road, Suite 130             9880 Research Drive, Suite 200
Westlake Village, California 91361          Irvine, California 92618
Telephone: (805) 270-7100                  Telephone: (949) 387-7200
Facsimile: (805) 270-7589                  Facsimile: (949) 387-6676

Attorneys for SHAHARA HANSBER, NANG CHAN, and
JESUS MORENO, on behalf of themselves, all others
similarly situated, and on behalf of the general public.

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAHARA HANSBER, NANG CHAN, and JESUS MORENO, on behalf of themselves, all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>ULTA BEAUTY COSMETICS, LLC; and DOES 1-100,<br><br>Defendants. | Case No.  1:21-cv-00022-AWI-JLT<br><br>**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND RESTITUTION**<br><br>1) **Failure to Pay All Straight Time Wages;**<br>2) **Failure to Pay All Overtime Wages;**<br>3) **Failure to Provide Meal Periods (Lab. Code §§ 226.7, 512, IWC Wage Order No. 7-2001(11); Cal. Code Regs., tit. 8 § 11090);**<br>4) **Failure to Authorize and Permit Rest Periods (Lab. Code § 226.7; IWC Wage Order No. 7-2001(12); Cal. Code Regs. Title 8 § 11090);**<br>5) **Knowing and Intentional Failure to Comply with Itemized Employee Wage Statement Provisions (Lab. Code §§ 226, 1174, 1175);**<br>6) **Failure to Pay All Wages Due at the Time of Termination of Employment (Lab. Code §§201-203);** |

7) **Irregular Pay Periods (Lab. Code §§ 204; 210);**
8) **Violation of Unfair Competition Law (Bus. & Prof. Code § 17200, et seq.);**
9) **Violations of the Labor Code Private Attorneys General Act of 2004 ("PAGA") (Lab. Code §§ 2698 *et seq.*).**

**DEMAND FOR JURY TRIAL**

Plaintiffs SHAHARA HANSBER, NANG CHAN, and JESUS MORENO ("Plaintiffs") on behalf of themselves, all others similarly situated, and on behalf of the general public, complains of Defendant ULTA BEAUTY COSMETICS, LLC ("Defendant") and/or DOES and for causes of action and alleges:

1.  This is a class action pursuant to California Code of Civil Procedure section 382 on behalf of Plaintiffs and all non-exempt, hourly workers who were employed and/or performed services for Defendant and/or DOES, either directly for Defendant and/or DOES, or through staffing agencies and/or other third-party entities, in Defendant's and/or DOES' warehouse/distribution facilities within the State of California.

2.  At all times mentioned herein, Defendant and/or DOES have conducted business in Kern County and elsewhere within California.

3.  At all times mentioned herein, Defendant and/or DOES, within the State of California, have, among other things, employed current and former non-exempt, hourly workers, working either directly for Defendant and/or DOES, or through staffing agencies and/or other third-party entities, in Defendant's and/or DOES' warehouse/distribution facilities.

4.  At all times mentioned herein, the common policies and practices of Defendant and/or DOES were a direct cause of Defendant's and/or DOES' failure to comply with California's wage and hours laws, Wage Orders, and/or the California Labor Code, as set forth more fully within.

5.  For at least four (4) years prior to the filing of this action and through to the present, Defendant and/or DOES have had a consistent policy and/or practice of not paying

Plaintiffs and all non-exempt, hourly workers for all of the hours they worked.

6.    For at least four (4) years prior to the filing of this action and through to the present, Defendant and/or DOES have had a continuous and widespread policy of not paying Plaintiffs and those similarly situated for all hours they worked, including before clocking in for their work shift, after clocking out for their work shift, and during unpaid meal periods. Further, Defendant and/or DOES have had a continuous and widespread policy to shave the time Plaintiffs and those similarly situated worked (referred to as "time shaving").

7.    For at least four (4) years prior to the filing of this action and through to the present, Defendant and/or DOES have had a consistent policy and/or practice of failing to provide all straight time and overtime wages owed to all non-exempt, hourly workers, as mandated under the California Labor Code and the implementing rules and regulations of the Industrial Welfare Commission's ("IWC") California Wage Orders.

8.    For at least four (4) years prior to the filing of this action and through to the present, Defendant and/or DOES have had a consistent policy of requiring non-exempt, hourly workers within the State of California, including Plaintiffs, to work through meal periods and work at least five (5) hours without a meal period and failing to pay such employees one (1) hour of pay at the employees' regular rate of compensation for each workday that the meal period is not provided, or other compensation, as required by California's state wage and hour laws, and automatically deducting a half hours pay from their wages.

9.    For at least four (4) years prior to filing of this action and through the present, Defendant and/or DOES did not have a policy of allowing its non-exempt, hourly workers working shifts of ten (10) or more hours in a day to take a second meal period of not less than thirty (30) minutes as required by the applicable Wage Order of the IWC.

10.    For at least four (4) years prior to the filing of this action and through to the present, Defendant and/or DOES have had a consistent policy of requiring non-exempt, hourly workers within the State of California, including Plaintiffs, to work over ten (10) hours

1   without providing an additional, uninterrupted meal period of thirty (30) minutes and

2   failing to pay such employees one (1) hour of pay at the employees' regular rate of

3   compensation for each workday that the meal period is not provided, or other

4   compensation, as required by California's state wage and hour laws.

5   11.    For at least four (4) years prior to the filing of this action and through to the present,

6   Defendant and/or DOES have had a consistent policy and/or practice of requiring its non-

7   exempt, hourly workers within the State of California, including Plaintiffs, to work for over

8   four hours, or a major fraction thereof, without a 10 minute rest period, and failing to pay

9   such employees one (1) hour of pay at the employees' regular rate of compensation for

10   each workday that the rest period is not provide, or other compensation, as required by

11   California's state wage and hour laws.

12   12.    For at least four (4) years prior to the filing of this action and through to the present,

13   Defendant and/or DOES and/or their officers and/or managing agents have had a consistent

14   policy and/or practice of willfully failing to provide to Plaintiffs and its non-exempt, hourly

15   workers, accurate itemized employee wage statements.

16   13.    For at least four (4) years prior to the filing of this action and through to the present,

17   Defendant and/or DOES and/or their officers and/or managing agents have had a consistent

18   policy and/or practice of willfully failing to timely pay wages owed to Plaintiffs and those

19   non-exempt, hourly workers who left Defendant and/or DOES employ or who were

20   terminated.

21   14.    For at least four (4) years prior to the filing of this action and through to the present,

22   Defendant and/or DOES and/or their officers and/or managing agents have had a consistent

23   policy and/or practice of willfully failing to pay all wages due to Plaintiffs and its non-

24   exempt, hourly workers twice during each month and willfully failing to pay all overtime

25   wages due to Plaintiffs and its non-exempt, hourly workers no later than the payday for the

26   next regular payroll period.

27   15.    For at least four (4) years prior to the filing of this action and through to the present,

28

Defendant and/or DOES, by failing to lawfully pay Plaintiffs and those similarly situated all the wages they are owed, engaged in false, unfair, fraudulent and deceptive business practices within the meaning of the Business and Professions Code section 17200, et seq.

16.   Throughout the statutory period, Defendant's and/or DOES' employees, including Plaintiffs and similarly situated non-exempt, hourly workers were not provided all straight time and overtime wages owed, meal periods and rest periods, or compensation in lieu thereof, as mandated under the California Labor Code, and the implementing rules and regulations of the Industrial Welfare Commissions ("IWC") California Wage Orders.

17.   Throughout the statutory period, Defendant and/or DOES employees, including Plaintiffs and similarly situated non-exempt, hourly workers were not provided with accurate and itemized employee wage statements.

18.   Defendant and/or DOES failed to comply with Labor Code section 226, subdivision (a), by itemizing in wage statements all hourly compensation and accurately reporting total hours worked by Plaintiffs and the members of the proposed class. Plaintiff and members of the proposed class are entitled to penalties not to exceed $4,000 for each employee pursuant to Labor Code section 226(b).

19.   Defendant and/or DOES have failed to comply with IWC Wage Order 7-2001(7) by failing to maintain accurate time records showing hourly compensation, when the worker begins and ends each work day and total daily hours worked by itemizing in wage statements and accurately reporting total hours worked by Plaintiffs and members of the proposed class.

20.   Defendant's and/or DOES' failure to retain accurate records of total hours worked by Plaintiffs and the proposed class was willful and deliberate, was a continuous breach of Defendant's and/or DOES' duty owed to Plaintiffs and the proposed class.

21.   Throughout the statutory period, Defendant's and/or DOES' workers, including Plaintiffs and similarly situated non-exempt, hourly workers, were not timely paid all wages owed to them at the time of termination.

22.   Defendant and/or DOES are and were aware that Plaintiffs and members of the proposed

1    class were not paid all straight time and overtime wages owed, nor provided meal and rest

2    periods. Defendant's and/or DOES' denial of wages and other compensation due to

3    Plaintiffs and members of the proposed class was willful and deliberate.

4  23.    Throughout the statutory period, Defendant's and/or DOES' workers, including Plaintiffs

5    and similarly situated non-exempt, hourly workers, were not paid all wages due twice

6    during each month, and were not paid all overtime wages due no later than the payday for

7    the next regular payroll period.

8  24.    Defendant and/or DOES are and were aware that Plaintiffs and members of the proposed

9    class were not paid all wages due twice during each month and were not paid all overtime

10    wages due no later than the payday for the next regular payroll period. Defendant's and/or

11    DOES' untimely payment of wages, overtime wages, and other compensation due to

12    Plaintiffs and members of the proposed class was willful and deliberate.

13  25.    Defendant and/or DOES, each and collectively, controlled the wages, hours, and working

14    conditions of Plaintiffs and the proposed class, creating a joint-employer relationship over

15    Plaintiffs and the proposed class.

16  26.    Plaintiffs, on behalf of themselves and all of Defendant ULTA BEAUTY COSMETICS,

17    LLC's and/or DOES' non-exempt, hourly workers, brings this action pursuant to California

18    Labor Code sections 201, 203, 204, 210, 218, 218.5, 223, 224, 226, subd. (b), 226.7. 510,

19    512, 515, 558, 1194, 1197, and California Code of Regulations, Title 8, section 11090,

20    seeking unpaid wages, overtime, meal and rest period compensation, penalties, injunctive

21    and other equitable relief, relief under the Labor Code Private Attorneys General Act of

22    2004 ("PAGA"), and reasonable attorneys' fees and costs.

23  27.    Plaintiffs, on behalf of themselves and all putative Class members made up of Defendant's

24    and/or DOES' non-exempt, hourly workers, pursuant to California Business and

25    Professions Code sections 17200-17208, also seeks injunctive relief, restitution, and

26    disgorgement of all benefits Defendant and/or DOES enjoyed from their failure to pay all

27    straight time wages, overtime wages, and meal and rest period compensation.

28

I.    **VENUE**

28.    Venue as to each Defendant, ULTA BEAUTY COSMETICS, LLC, and/or DOES, is proper in this judicial district, pursuant to Code of Civil Procedure section 395. Defendant and/or DOES conduct business and commit Labor Code violations within Kern County, and each Defendant and/or DOE is within California for service of process purposes. The unlawful acts alleged herein have a direct effect on Plaintiff and those similarly situated within the State of California and within Kern County. Defendant and/or DOES employ numerous Class members who work in Kern County, in California.

II.    **PARTIES**

**A.    Plaintiffs**.

29.    At all relevant times, herein, Plaintiffs are and were residents of California. At all relevant times, herein, they were employed and performed services for Defendant and/or DOES within the last four (4) years as non-exempt, hourly workers, working either directly for Defendant and/or DOES, or through staffing agencies and/or other third-party entities, in Defendant's and/or DOES' warehouse/distribution facilities in California.

30.    Plaintiff SHAHARA HANSBER was a full-time employee for ULTA BEAUTY COSMETICS, LLC and/or DOES and regularly worked approximately five days per week and more than ten hours in a day — which, on information and belief, includes the workweeks of October 6-12, 2019; October 13-19, 2019; October 20-26, 2019; October 27 – November 2, 2019; and November 3-9, 2019.

31.    Plaintiff Nang Chan was a full-time employee for ULTA BEAUTY COSMETICS, LLC and/or DOES and regularly worked approximately five days per week and more than ten hours in a day — which, on information and belief, includes the workweeks of March 25-31, 2018; April 1-7, 2018; April 8-14, 2018; April 15-21, 2018; April 22-28, 2018; April 29 – May 5, 2018: May 6-12, 2018; May 13-19, 2018; May 20-26, 2018; May 27 – June 2, 2018; June 3-9, 2018; June 10-16, 2018; June 17-23, 2018; June 24-30, 2018; July 8-14, 2018; July 15-21, 2018; July 22-28, 2018; July 29 – August 4, 2018; August 5-11, 2018;

1    August 12-18, 2018; August 19-25, 2018; August 26 – September 1, 2018; September 2-

2    8, 2018; September 9-15, 2018; September 16-22, 2018; September 23-29, 2018;

3    September 30 – October 6, 2018; October 7-13, 2018; October 14-20, 2018; October 21-

4    27, 2018; October 28 – November 3, 2018; November 4-10, 2018; November 11-17, 2018;

5    November 25 – December 1, 2018; December 2-8, 2018; December 9-15, 2018; December

6    16-22, 2018; January 6-12, 2019; January 13-19, 2019; January 20-26, 2019; January 27 –

7    February 2, 2019; February 3-9, 2019; February 10-16, 2019; February 17-23, 2019;

8    February 24 – March 2, 2019; March 3-9, 2019; March 10-16, 2019; March 17-23, 2019;

9    March 24-30, 2019; March 31 – April 6, 2019; April 7-13, 2019; April 14-20, 2019; April

10   21-27, 2019; April 28 – May 4, 2019; May 5-11, 2019; May 12-18, 2019; May 19-25,

11   2019; May 26 – June 1, 2019; June 2-8, 2019; June 9-15, 2019; June 16-22, 2019; June 23-

12   29, 2019; July 7-13, 2019; July 14-20, 2019; July 21-27, 2019; July 28 – August 3, 2019;

13   August 4-10, 2019; August 11-17, 2019; August 18-24, 2019; August 25-31, 2019;

14   September 1-7, 2019; September 8-14, 2019; September 15-21, 2019; September 22-28,

15   2019; September 29 – October 5, 2019; October 6-12, 2019; October 13-19, 2019; October

16   20-26, 2019; October 27 – November 2, 2019; November 3-9, 2019; November 10-16,

17   2019; November 17-23, 2019; December 1-7, 2019; December 8-14, 2019; December 9-

18   21, 2019; January 5-11, 2020; January 12-18, 2020; January 19-25, 2020; January 26 –

19   February 1, 2020; February 2-8, 2020; February 9-15, 2020; February 16-22, 2020;

20   February 23-29, 2020; March 1-7, 2020; March 8-14, 2020; March 15-21, 2020; March

21   22-28, 2020; March 29 – April 4, 2020; April 5-11, 2020; April 12-18, 2020; April 19-25,

22   2020; April 26 – May 2, 2020; May 3-9, 2020; May 10-16, 2020; May 17-23, 2020; May

23   24-30, 2020; May 31 – June 6, 2020; June 7-13, 2020; June 14-20, 2020; and June 21-27,

24   2020.

25   32.   Plaintiff Jesus Moreno was a full-time employee for ULTA BEAUTY COSMETICS, LLC

26   and/or DOES and regularly worked approximately four days per week and more than ten

27   hours in a day — which, on information and belief, includes the workweeks of April 7-13,

28

1    2019; April 14-20, 2019; and April 21-27, 2019.

2    33.    On January 15, 2020, Plaintiffs filed a Notice of Labor Code Violations Pursuant to Labor

3    Code Section 2699.3 with the Labor and Workforce Development Agency ("LWDA"). To

4    date, Plaintiffs have not received notice that the LWDA will be taking action in response

5    to Plaintiffs' Notice.

6    34.    On information and belief, Plaintiffs and all other members of the proposed class

7    experienced Defendant's and/or DOES' common company policies of failing to pay all

8    straight time and overtime wages owed.

9    35.    On information and belief, Plaintiffs and all other members of the proposed class

10    experienced Defendant's and/or DOES' common company policies of illegally deducting

11    wages from non-exempt, hourly workers for meal periods during which they were

12    performing work.

13    36.    On information and belief, Plaintiffs and all other members of the proposed class

14    experienced Defendant's and/or DOES' common company policies and/or practices of

15    failing to pay all straight time and overtime wages owed, and failing to provide compliant

16    meal periods to non-exempt, hourly workers before the end of their fifth hour of work or a

17    second meal period before the end of the tenth hour or work, or compensation in lieu

18    thereof.

19    37.    On information and belief, Plaintiffs and all other members of the proposed class

20    experienced Defendant's and/or DOES' common company policies of failing to provide

21    ten (10) minute paid rest breaks to non-exempt, hourly workers whom worked four (4)

22    hours or major fractions thereof.

23    38.    On information and belief, Plaintiffs and all other members of the proposed class

24    experienced Defendant's and/or DOES' common company policies of failing to provide

25    non-exempt, hourly workers with accurate itemized wage statements. On information and

26    belief, Defendant's and/or DOES' failure to provide to their non-exempt, hourly workers,

27    including Plaintiffs, with accurate itemized wage statements was willful.

28

39.    On information and belief, Plaintiffs and all other members of the proposed class experienced Defendant's and/or DOES' common company policies of failing to timely compensate non-exempt, hourly workers all wages owed upon termination. On information and belief, Defendant's and/or DOES' failure to pay, in a timely manner, compensation owed to non-exempt, hourly workers, including Plaintiffs, upon termination of their employment with Defendant and/or DOES was willful.

40.    On information and belief, Plaintiffs and all other members of the proposed class experienced Defendant's and/or DOES' common company policies of failing to pay all wages due to Plaintiffs and its non-exempt, hourly workers twice during each month and failing to pay all overtime wages due to Plaintiffs and its non-exempt, hourly workers no later than the payday for the next regular payroll period. On information and belief, Defendant's and/or DOES' failure to pay all wages owed twice during each month and all overtime wages owed no later than the payday for the next regular payroll period to non-exempt, hourly workers, including Plaintiffs, was willful.

41.    On information and belief, Plaintiffs and all other members of the proposed class experienced Defendant's and/or DOES' fraudulent and deceptive business practices within the meaning of the Business and Professions Code section 17200, et seq.

42.    Plaintiffs and the proposed class are covered by, inter alia, California IWC Occupational Wage Order No. 7-2001, and Title 8, California Code of Regulations, § 11090.

**B.    Defendants**.

43.    At all relevant times herein, Defendant and/or DOES engage in the ownership and operation of facilities which are used to provide of cosmetics and beauty products to Defendant's and/or DOES' customers in the State of California.

44.    ULTA BEAUTY COSMETICS, LLC claims to "to do beauty differently" by bringing "the best the beauty world had to offer in makeup, fragrance, skincare and haircare, together in one place" and "revolutionizing the beauty experience for all." THE BEAUTIFUL JOURNEY, https://careers.ulta.com/, (Last visited April 13, 2020).

45.    ULTA BEAUTY COSMETICS, LLC boasts they "are driving industry leading results, leading through a shared set of values, and together becoming the most loved and admired beauty destination" ULTA BEAUTY & YOU, https://careers.ulta.com/, (Last visited April 13, 2020). These "industry leading results" come on the backs of their workers, as ULTA BEAUTY COSMETICS, LLC does not pay all these workers for all their time worked, falling far short of any purported high standards ULTA BEAUTY COSMETICS, LLC holds, and certainly exposing the claim of being "the most loved and admired beauty destination" as a lie built by denying their workers the respect they deserve.

46.    On information and belief, Defendant and/or DOES exercised control over the wages, hours, and/or working conditions of Plaintiffs and members of the proposed class throughout the liability period.

47.    Defendant's and/or DOES' principal place of business is in the State of California.

48.    The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1-100, inclusive, are presently unknown to Plaintiffs, who therefore sues these Defendants by such fictitious names under Code of Civil Procedure section 474. Plaintiffs are informed and believes, and based thereon alleges, that each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiffs will seek leave of court to amend this Complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES when such identities become known.

49.    Plaintiffs are informed and believes, and based thereon alleges, that each Defendant and/or DOE acted in all respects pertinent to this action as the agent of the other Defendants and/or DOES, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendants and/or DOES are legally attributable to the other Defendants and/or DOES.

**III.    CLASS ACTION ALLEGATIONS**

50.    Plaintiffs brings this action on behalf of themselves and all others similarly situated as a

SECOND AMENDED CLASS ACTION COMPLAINT 11

1    class action pursuant to section 382 of the California Code of Civil Procedure. Plaintiffs

2    seek to represent a Class composed of and defined as follows:

3

4         All non-exempt, hourly workers who were employed and/or

5         performed services for Defendant and/or DOES, either directly for

6         Defendant and/or DOES, or through staffing agencies and/or other

7         third-party entities, in Defendant's and/or DOES'

8         warehouse/distribution facilities within the State of California

9         during the period of the relevant statute of limitations. ("Class

10        Members").

11

12    Plaintiffs also seeks to represent subclasses composed of and defined as follows:

13

14        All Class Members who worked one (1) or more shifts in excess of

15        five (5) hours.

16

17        All Class Members who worked one (1) or more shifts in excess of

18        six (6) hours.

19

20        All Class Members who worked one (1) or more shifts in excess of

21        ten (10) hours.

22

23        All Class Members who worked one (1) or more shifts in excess of

24        twelve (12) hours.

25

26        All Class Members who worked one (1) or more shifts in excess of

27        three (3) hour and one-half hours, but less than or equal to six (6)

28

1    hours.

2

3    All Class Members who worked one (1) or more shifts in excess of

4    six (6) hours, but less than or equal to ten (10) hours.

5

6    All Class Members who separated their employment from

7    Defendant.

8

9    All Class Members who worked one (1) or more shifts in which they

10    received a wage statement for the corresponding pay period.

11

12    All Class Members who were deducted wages for meal periods.

13

14    51.    Plaintiffs reserve the right under rule 1855, subdivision (b), California Rules of Court, to

15    amend or modify the Class description with greater specificity or further division into

16    subclasses or limitation to particular issues.

17    52.    This action has been brought and may properly be maintained as a class action under the

18    provisions of section 382 of the California Code of Civil Procedure because there is a well-

19    defined community of interest in the litigation and the proposed Class is easily

20    ascertainable.

21    **A.    <u>Numerosity</u>**.

22    53.    The potential members of the Class and subclasses as defined are so numerous that joinder

23    of all the members of the Class is impracticable. While the precise number of Class and

24    subclass members has not been determined at this time, Plaintiff is informed and believes

25    that Defendant and/or DOES currently employ, and during the liability period employed,

26    over one hundred (100) employees, all in the State of California, in positions as hourly

27    non-exempt workers.

28

54. Accounting for employee turnover during the relevant periods increases this number substantially. Upon information and belief, Plaintiffs allege Defendant's and/or DOES' employment records will provide information as to the number and location of all Class members. Joinder of all members of the proposed Class is not practicable.

**B.    Commonality.**

55. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

       (1)    Whether Defendant and/or DOES violated the Labor Code and/or applicable IWC Wage Orders in failing to pay its non-exempt workers all earned wages at the regular rate for all hours worked.

       (2)    Whether Defendant's and/or DOES' uniform policies and/or practices whereby non-exempt workers were pressured and/or incentivized to forego taking meal and/or rest periods.

       (3)    Whether Defendant and/or DOES violated Labor Code section 226.7, IWC Wage Order No. 7-2001 or other applicable IWC Wage Orders, and/or California Code of Regulations, Title 8, section 11090, by failing to authorize, permit, and/or provide rest periods to its hourly, non-exempt workers for every four (4) hours or major fraction thereof worked and/or failing to pay said workers one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period was not authorized, permitted and/or provided.

       (4)    Whether Defendant and/or DOES willfully failed to pay, in a timely manner, wages owed to members of the proposed Class who left Defendant's and/or DOES' employ or who were terminated.

       (5)    Whether Defendant and/or DOES violated Labor Code section 203, which provides for the assessment of a penalty against the

employer, by willfully failing to timely pay all wages owed to workers who left Defendant's and/or DOES' employ or who were terminated.

    (6)    Whether Defendant and/or DOES had uniform policies and/or practices of failing to provide workers accurate and itemized wage statements.

    (7)    Whether Defendant and/or DOES had uniform policies and/or practices of failing to timely pay all wages owed to workers who left Defendant's and/or DOES' employ or who were terminated.

    (8)    Whether Defendant and/or DOES had uniform policies and/or practices of failing to timely pay all wages and overtime wages owed to workers.

56.    The answer to each of these respective questions will generate a common answer capable of resolving class-wide liability in one stroke.

57.    Said common questions predominate over any individualized issues and/or questions affecting only individual members.

**C.**    **Typicality**.

58.    The claims of the named Plaintiffs are typical of the claims of the proposed class. Plaintiffs and all members of the proposed class sustained injuries and damages arising out of and caused by Defendant's and/or DOES' common course of conduct in violation of laws and regulations that have the force and effect of law and statutes as alleged.

59.    Plaintiffs were subjected to the same uniform policies and/or practices complained of herein that affected all such employees. Thus, as Plaintiffs were subjected to the same unlawful policies and practices as all hourly non-exempt workers, her claims are typical of the class they seek to represent.

**D.**    **Adequacy of Representation**.

60.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.

61.    Plaintiffs are ready and willing to take the time necessary to help litigate this case.

62.    Plaintiffs have no conflicts that will disallow them to fairly and adequately represent and protect the interests of the members of the Class.

63.    Counsel who represent Plaintiffs are competent and experienced in litigating large employment class actions.

64.    Specifically, David Mara, Esq., Marcus J. Bradley, Esq., James R. Hawkins, Esq. and Isandra Fernandez are California lawyers in good standing.

65.    Counsel who represent Plaintiffs are competent and experienced in litigating large employment class actions.

66.    The Mara Law Firm has been named class counsel in numerous cases and Mr. Mara's practice is primarily focused on representing classes, large and small, on the basis of California Labor Code and IWC Wage Order Violations similar to those alleged herein. Mr. Mara is frequently called upon to and does author amicus briefs on behalf of the Consumer Attorneys of California on cases in the appellate courts and Supreme Court of California involving important issues relating to those alleged herein.

67.    Mara Law Firm, PC, Bradley/Grombacher, LLP, and James Hawkins APLC have the resources to take this case to trial and judgment, if necessary.

68.    Mara Law Firm, PC, Bradley/Grombacher, LLP, and James Hawkins APLC have the experience, ability, and ways and means to vigorously prosecute this case.

**E.        Superiority of Class Action.**

69.    A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Each member of the Class has been damaged and is entitled to recovery by reason of Defendant's and/or DOES' illegal policies and/or practices of failing to pay all straight time and overtime wages owed, failing to permit or authorize rest periods, failing to provide meal periods, knowingly and intentionally failing

1    to comply with wage statement requirements, failing to pay all wages due at termination,

2    and failing to timely pay all wages and overtime wages due.

3   70.   Class action treatment will allow those similarly situated persons to litigate their claims in

4    the manner that is most efficient and economical for the parties and the judicial system.

5    Plaintiffs are unaware of any difficulties that are likely to be encountered in the

6    management of this action that would preclude its maintenance as a class action.

7   71.   Because such common questions predominate over any individualized issues and/or

8    questions affecting only individual members, class resolution is superior to other methods

9    for fair and efficient adjudication.

10  **IV.   CAUSES OF ACTION**

11  **FIRST CAUSE OF ACTION AGAINST DEFENDANT AND/OR DOES: Failure to
12  Pay All Straight Time Wages**

13  72.   Plaintiffs and those similarly situated Class members hereby incorporate by reference each

14    and every other paragraph in this Complaint herein as if fully plead.

15  73.   Defendant and/or DOES have had a continuous policy of not paying Plaintiffs and those

16    similarly situated for all hours worked.

17  74.   It is fundamental that an employer must pay its employees for all time worked. California

18    Labor Code sections 218 and 218.5 provides a right of action for nonpayment of wages.

19    Labor Code section 223 prohibits the pay of less than a statutory or contractual wage scale.

20    Labor Code section 1197 prohibits the payment of less than the minimum wage. Labor

21    Code section 1194 states that an employee receiving less than the legal minimum wage is

22    entitled to recover in a civil action the unpaid balance of the full amount of this minimum

23    wage. Labor Code section 224 only permits deductions from wages when the employer is

24    required or empowered to do so by state or federal law or when the deduction is expressly

25    authorized in writing by the employee for specified purposes that do not have the effect of

26    reducing the agreed upon wage.

27  75.   Plaintiffs and those similarly situated Class members were employed and performed

28    services for Defendant and/or DOES at all relevant times. Defendant and/or DOES were

1    required to compensate Plaintiffs for all hours worked and were prohibited from making

2    deductions that had the effect of reducing the agreed upon wage.

3    76.    Defendant and/or DOES have a continuous and consistent policy of mandating workers

4    waiting in lines to get through security and at the timeclock all before workers are clocked

5    in for the day, i.e., getting compensated.

6    77.    Additionally, workers are not free of control and duty for the entire time they are clocked

7    out for lunch. Necessarily, workers exiting the facility will have to go through security and

8    wait in line to clock in upon their return. Thus, part of the time they are clocked out is time

9    they are under the compensable control of Defendant and/or DOES. Likewise, workers

10    taking their lunch on the premises in the break rooms, have to walk the distances away

11    from the break room to get to the time clock to clock in, which means they are necessarily

12    controlled in their actions for a portion of their unpaid meal period time.

13    78.    Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES have a continuous and

14    consistent policy and/or practice of not paying Plaintiffs and non-exempt, hourly workers

15    for all time worked, including before Plaintiffs and non-exempt, hourly workers clock-in

16    for work shifts, and after they clock-out at the end of the day. For example, throughout the

17    statutory period, in every workweek during the relevant statute of limitations—which, on

18    information and belief, includes the workweeks of October 6-12, 2019; October 13-19,

19    2019; October 20-26, 2019; October 27 – November 2, 2019; and November 3-9, 2019—

20    it took Ms. Hansber approximately five minutes to wait in the line to get through security

21    at the entrance of the facility when arriving to start her shift. However, Ms. Hansber and

22    non-exempt, hourly workers have not been paid for the time spent getting through security,

23    security procedures which are mandated by ULTA BEAUTY COSMETICS, LLC and/or

24    DOES, as explained in ULTA BEAUTY COSMETICS, LLC's and/or DOES' orientation

25    process, and directed by their supervisors, including Ms. Hansber's supervisor, Stuart.

26    Pursuant to Defendant ULTA BEAUTY COSMETICS, LLC's and/or DOES' policy—as

27    explained to Ms. Hansber during her orientation with ULTA BEAUTY COSMETICS,

28

LLC and/or DOES and enforced by her supervisor, Stuart — Ms. Hansber was required to wait in line and go through ULTA BEAUTY COSMETICS, LLC's and/or DOES' security procedures before clocking in to start her shift. As a result, Ms. Hansber and non-exempt, hourly workers never receive[d] the wages for the time they had to spend going through ULTA BEAUTY COSMETICS, LLC's and/or DOES' mandatory security procedures. These harassing security protocols, which included intrusive bag searches, would take Ms. Hansber approximately five minutes to complete prior to the start of her shift. The waiting time Ms. Hansber and non-exempt, hourly workers as they go through security is not counted as compensable time worked even though they remain subject to the control of their employer, thereby denying Ms. Hansber and the non-exempt, hourly workers compensation for all hours worked.

79.   As alleged herein, and pursuant to the policies and practices she was taught during her orientation with ULTA BEAUTY COSMETICS, LLC and/or DOES, as well as the instruction of her supervisor, Stuart, Ms. Hansber was not permitted to skip the security line and procedures where all the non-exempt, hourly workers had to wait to enter and exit the facility, and was instructed she was to clock in for work only after having gone through the security protocols. Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES failed to compensate Ms. Hansber at her regular rate of pay for the approximately five minutes she spent waiting in line to enter the facility to start her shift and going through security while clocked out in every workweek during the relevant statute of limitations— which, on information and belief, includes the workweeks of October 6-12, 2019; October 13-19, 2019; October 20-26, 2019; October 27 – November 2, 2019; and November 3-9, 2019 — and, on information and belief, similarly failed to compensate all the other non-exempt, hourly workers who were also forced through these security procedures while off the clock.

80.   Similarly, Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES have a continuous and consistent policy and/or practice of not paying Plaintiffs and non-exempt,

hourly workers for all time worked, including before Plaintiffs and non-exempt, hourly workers clock-in for work shifts, and after they clock-out at the end of the day. For example, throughout the statutory period, in every workweek during the relevant statute of limitations—which, on information and belief, includes the workweeks of March 25-31, 2018; April 1-7, 2018; April 8-14, 2018; April 15-21, 2018; April 22-28, 2018; April 29 – May 5, 2018: May 6-12, 2018; May 13-19, 2018; May 20-26, 2018; May 27 – June 2, 2018; June 3-9, 2018; June 10-16, 2018; June 17-23, 2018; June 24-30, 2018; July 8-14, 2018; July 15-21, 2018; July 22-28, 2018; July 29 – August 4, 2018; August 5-11, 2018; August 12-18, 2018; August 19-25, 2018; August 26 – September 1, 2018; September 2-8, 2018; September 9-15, 2018; September 16-22, 2018; September 23-29, 2018; September 30 – October 6, 2018; October 7-13, 2018; October 14-20, 2018; October 21-27, 2018; October 28 – November 3, 2018; November 4-10, 2018; November 11-17, 2018; November 25 – December 1, 2018; December 2-8, 2018; December 9-15, 2018; December 16-22, 2018; January 6-12, 2019; January 13-19, 2019; January 20-26, 2019; January 27 – February 2, 2019; February 3-9, 2019; February 10-16, 2019; February 17-23, 2019; February 24 – March 2, 2019; March 3-9, 2019; March 10-16, 2019; March 17-23, 2019; March 24-30, 2019; March 31 – April 6, 2019; April 7-13, 2019; April 14-20, 2019; April 21-27, 2019; April 28 – May 4, 2019; May 5-11, 2019; May 12-18, 2019; May 19-25, 2019; May 26 – June 1, 2019; June 2-8, 2019; June 9-15, 2019; June 16-22, 2019; June 23-29, 2019; July 7-13, 2019; July 14-20, 2019; July 21-27, 2019; July 28 – August 3, 2019; August 4-10, 2019; August 11-17, 2019; August 18-24, 2019; August 25-31, 2019; September 1-7, 2019; September 8-14, 2019; September 15-21, 2019; September 22-28, 2019; September 29 – October 5, 2019; October 6-12, 2019; October 13-19, 2019; October 20-26, 2019; October 27 – November 2, 2019; November 3-9, 2019; November 10-16, 2019; November 17-23, 2019; December 1-7, 2019; December 8-14, 2019; December 9-21, 2019; January 5-11, 2020; January 12-18, 2020; January 19-25, 2020; January 26 – February 1, 2020; February 2-8, 2020; February 9-15, 2020; February 16-22, 2020;

1  February 23-29, 2020; March 1-7, 2020; March 8-14, 2020; March 15-21, 2020; March
2  22-28, 2020; March 29 – April 4, 2020; April 5-11, 2020; April 12-18, 2020; April 19-25,
3  2020; April 26 – May 2, 2020; May 3-9, 2020; May 10-16, 2020; May 17-23, 2020; May
4  24-30, 2020; May 31 – June 6, 2020; June 7-13, 2020; June 14-20, 2020; and June 21-27,
5  2020—it took Mr. Chan approximately three to five minutes to wait in the line to get
6  through security at the entrance of the facility when arriving to start his shift. However,
7  Mr. Chan and non-exempt, hourly workers have not been paid for the time spent getting
8  through security, security procedures which are mandated by ULTA BEAUTY
9  COSMETICS, LLC and/or DOES, as was explained in by their supervisors, including Mr.
10  Chan's supervisors, Laura Valequez, Adrian Olivares, and Alma (last name unknown),
11  who trained him on and enforced ULTA BEAUTY COSMETICS, LLC's and/or DOES'
12  policies and procedures. Pursuant to Defendant ULTA BEAUTY COSMETICS, LLC's
13  and/or DOES' policy—as explained to Mr. Chan during his training with his supervisors,
14  Laura Valequez, Adrian Olivares, and Alma (last name unknown), while working for
15  ULTA BEAUTY COSMETICS, LLC and/or DOES — Mr. Chan was required to wait in
16  line and go through ULTA BEAUTY COSMETICS, LLC's and/or DOES' security
17  procedures before clocking in to start his shift. As a result, Mr. Chan and non-exempt,
18  hourly workers never receive[d] the wages for the time they had to spend going through
19  ULTA BEAUTY COSMETICS, LLC's and/or DOES' mandatory security procedures.
20  These harassing security protocols, which included intrusive bag searches, would take Mr.
21  Chan approximately three to five minutes to complete prior to the start of his shift. The
22  waiting time Mr. Chan and non-exempt, hourly workers as they go through security is not
23  counted as compensable time worked even though they remain subject to the control of
24  their employer, thereby denying Mr. Chan and the non-exempt, hourly workers
25  compensation for all hours worked.

26  81.  As alleged herein, and pursuant to the policies and practices he was taught during his
27  training with his supervisors Laura Valequez, Adrian Olivares, and Alma (last name

unknown) while working for ULTA BEAUTY COSMETICS, LLC and/or DOES, Mr. Chan was not permitted to skip the security line and procedures where all the non-exempt, hourly workers had to wait to enter and exit the facility, and was instructed he was to clock in for work only after having gone through the security protocols. Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES failed to compensate Mr. Chan at his regular rate of pay for the approximately three to five minutes he spent waiting in line to enter the facility to start his shift and going through security while clocked out in every workweek during the relevant statute of limitations—which, on information and belief, includes the workweeks of March 25-31, 2018; April 1-7, 2018; April 8-14, 2018; April 15-21, 2018; April 22-28, 2018; April 29 – May 5, 2018: May 6-12, 2018; May 13-19, 2018; May 20-26, 2018; May 27 – June 2, 2018; June 3-9, 2018; June 10-16, 2018; June 17-23, 2018; June 24-30, 2018; July 8-14, 2018; July 15-21, 2018; July 22-28, 2018; July 29 – August 4, 2018; August 5-11, 2018; August 12-18, 2018; August 19-25, 2018; August 26 – September 1, 2018; September 2-8, 2018; September 9-15, 2018; September 16-22, 2018; September 23-29, 2018; September 30 – October 6, 2018; October 7-13, 2018; October 14-20, 2018; October 21-27, 2018; October 28 – November 3, 2018; November 4-10, 2018; November 11-17, 2018; November 25 – December 1, 2018; December 2-8, 2018; December 9-15, 2018; December 16-22, 2018; January 6-12, 2019; January 13-19, 2019; January 20-26, 2019; January 27 – February 2, 2019; February 3-9, 2019; February 10-16, 2019; February 17-23, 2019; February 24 – March 2, 2019; March 3-9, 2019; March 10-16, 2019; March 17-23, 2019; March 24-30, 2019; March 31 – April 6, 2019; April 7-13, 2019; April 14-20, 2019; April 21-27, 2019; April 28 – May 4, 2019; May 5-11, 2019; May 12-18, 2019; May 19-25, 2019; May 26 – June 1, 2019; June 2-8, 2019; June 9-15, 2019; June 16-22, 2019; June 23-29, 2019; July 7-13, 2019; July 14-20, 2019; July 21-27, 2019; July 28 – August 3, 2019; August 4-10, 2019; August 11-17, 2019; August 18-24, 2019; August 25-31, 2019; September 1-7, 2019; September 8-14, 2019; September 15-21, 2019; September 22-28, 2019; September 29 – October 5, 2019; October 6-12, 2019; October 13-

1    19, 2019; October 20-26, 2019; October 27 – November 2, 2019; November 3-9, 2019;

2    November 10-16, 2019; November 17-23, 2019; December 1-7, 2019; December 8-14,

3    2019; December 9-21, 2019; January 5-11, 2020; January 12-18, 2020; January 19-25,

4    2020; January 26 – February 1, 2020; February 2-8, 2020; February 9-15, 2020; February

5    16-22, 2020; February 23-29, 2020; March 1-7, 2020; March 8-14, 2020; March 15-21,

6    2020; March 22-28, 2020; March 29 – April 4, 2020; April 5-11, 2020; April 12-18, 2020;

7    April 19-25, 2020; April 26 – May 2, 2020; May 3-9, 2020; May 10-16, 2020; May 17-23,

8    2020; May 24-30, 2020; May 31 – June 6, 2020; June 7-13, 2020; June 14-20, 2020; and

9    June 21-27, 2020 — and, on information and belief, similarly failed to compensate all the

10   other non-exempt, hourly workers who were also forced through these security procedures

11   while off the clock.

12   82.    In addition, throughout the statutory period, in every workweek during the relevant statute

13          of limitations—which, on information and belief, includes the workweeks of April 7-13,

14          2019; April 14-20, 2019; and April 21-27, 2019—it took Mr. Moreno approximately five

15          minutes to wait in the line to get through security at the entrance of the facility when

16          arriving to start his shift. However, Mr. Moreno and non-exempt, hourly workers have not

17          been paid for the time spent getting through security, security procedures which are

18          mandated by ULTA BEAUTY COSMETICS, LLC and/or DOES, which Mr. Moreno

19          believes was explained to him and enforced by his supervisor, whom Mr. Moreno recalls

20          being a gentleman named Nigel. Pursuant to Defendant ULTA BEAUTY COSMETICS,

21          LLC's and/or DOES' policy—as explained to Mr. Moreno and enforced by his supervisor

22          at ULTA BEAUTY COSMETICS, LLC's and/or DOES' facility — Mr. Moreno was

23          required to wait in line and go through ULTA BEAUTY COSMETICS, LLC's and/or

24          DOES' security procedures before clocking in to start his shift. As a result, Mr. Moreno

25          and non-exempt, hourly workers never receive[d] the wages for the time they had to spend

26          going through ULTA BEAUTY COSMETICS, LLC's and/or DOES' mandatory security

27          procedures. These harassing security protocols, which included intrusive bag searches,

28

1   would take Mr. Moreno approximately five minutes to complete prior to the start of his

2   shift. The waiting time Mr. Moreno and non-exempt, hourly workers as they go through

3   security is not counted as compensable time worked even though they remain subject to

4   the control of their employer, thereby denying Mr. Moreno and the non-exempt, hourly

5   workers compensation for all hours worked.

6   83.   As alleged herein, and pursuant to the policies and practices he was taught from and that

7   were enforced by his supervisor at ULTA BEAUTY COSMETICS, LLC's and/or DOES'

8   facility, Mr. Moreno was not permitted to skip the security line and procedures where all

9   the non-exempt, hourly workers had to wait to enter and exit the facility and was instructed

10  he was to clock in for work only after having gone through the security protocols.

11  Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES failed to compensate Mr.

12  Moreno at his regular rate of pay for the approximately five minutes he spent waiting in

13  line to enter the facility to start his shift and going through security while clocked out in

14  every workweek during the relevant statute of limitations—which, on information and

15  belief, includes the workweeks of April 7-13, 2019; April 14-20, 2019; and April 21-27,

16  2019 — and, on information and belief, similarly failed to compensate all the other non-

17  exempt, hourly workers who were also forced through these security procedures while off

18  the clock.

19  84.   Furthermore, throughout the statutory period, in every workweek during the relevant

20  statute of limitations—which, on information and belief, includes the workweeks of

21  October 6-12, 2019; October 13-19, 2019; October 20-26, 2019; October 27 – November

22  2, 2019; and November 3-9, 2019—it took Ms. Hansber approximately three minutes to

23  travel to the breakroom at the start of her meal periods and approximately three minutes to

24  travel from the breakroom back to her workstation at the conclusion of her meal periods.

25  However, Ms. Hansber and non-exempt, hourly workers have not been paid for this time

26  as directed through ULTA BEAUTY COSMETICS, LLC's and/or DOES' orientation

27  process, and directed by their supervisors, including Ms. Hansber's supervisor, Stuart. In

28

order to reach the breakroom for her meal periods, Ms. Hansber would have to travel through ULTA BEAUTY COSMETICS, LLC's and/or DOES' massive facility, which would take Ms. Hansber approximately three minutes to do when starting her meal periods, and approximately another three minutes when she would leave the breakroom to end her meal periods. This travel time was performed while Ms. Hansber was clocked out for her 30-minute meal period, as ULTA BEAUTY COSMETICS, LLC's and/or DOES' policy — as explained to Ms. Hansber during her orientation with ULTA BEAUTY COSMETICS, LLC and/or DOES and enforced by her supervisor, Stuart — required her to clock out for her meal period prior to traveling to the breakroom to take a meal period and to clock back in after traveling back from the breakroom at the end of her meal period. As a result, Ms. Hansber and non-exempt, hourly workers never receive[d] their wages for the spent to and from the breakroom during their unpaid meal periods. The time Ms. Hansber and non-exempt, hourly workers as they travel to and from the breakroom during their unpaid meal periods is not counted as compensable time worked even though they remain subject to the control of their employer, thereby denying Ms. Hansber and the non-exempt, hourly workers compensation for all hours worked.

85.    As alleged herein, and pursuant to the policies and practices she was taught during her orientation with ULTA BEAUTY COSMETICS, LLC and/or DOES, as well as the instruction of her supervisor, Stuart, Ms. Hansber was required to clock out before traveling to the break room to begin a meal period to clock back in to work after traveling back from the break room to end a meal period. Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES failed to compensate Ms. Hansber at her regular rate of pay for the approximately six minutes she spent traveling to and from the breakroom during her unpaid meal periods every workweek during the relevant statute of limitations—which, on information and belief, includes the workweeks of October 6-12, 2019; October 13-19, 2019; October 20-26, 2019; October 27 – November 2, 2019; and November 3-9, 2019 — and, on information and belief, similarly failed to compensate all the other non-exempt,

1    hourly workers who were also forced to travel to and from the breakroom while off the

2    clock for their meal periods.

3    86.    Similarly, throughout the statutory period, in every workweek during the relevant statute

4    of limitations—which, on information and belief, includes the workweeks of March 25-31,

5    2018; April 1-7, 2018; April 8-14, 2018; April 15-21, 2018; April 22-28, 2018; April 29 –

6    May 5, 2018: May 6-12, 2018; May 13-19, 2018; May 20-26, 2018; May 27 – June 2,

7    2018; June 3-9, 2018; June 10-16, 2018; June 17-23, 2018; June 24-30, 2018; July 8-14,

8    2018; July 15-21, 2018; July 22-28, 2018; July 29 – August 4, 2018; August 5-11, 2018;

9    August 12-18, 2018; August 19-25, 2018; August 26 – September 1, 2018; September 2-

10   8, 2018; September 9-15, 2018; September 16-22, 2018; September 23-29, 2018;

11   September 30 – October 6, 2018; October 7-13, 2018; October 14-20, 2018; October 21-

12   27, 2018; October 28 – November 3, 2018; November 4-10, 2018; November 11-17, 2018;

13   November 25 – December 1, 2018; December 2-8, 2018; December 9-15, 2018; December

14   16-22, 2018; January 6-12, 2019; January 13-19, 2019; January 20-26, 2019; January 27 –

15   February 2, 2019; February 3-9, 2019; February 10-16, 2019; February 17-23, 2019;

16   February 24 – March 2, 2019; March 3-9, 2019; March 10-16, 2019; March 17-23, 2019;

17   March 24-30, 2019; March 31 – April 6, 2019; April 7-13, 2019; April 14-20, 2019; April

18   21-27, 2019; April 28 – May 4, 2019; May 5-11, 2019; May 12-18, 2019; May 19-25,

19   2019; May 26 – June 1, 2019; June 2-8, 2019; June 9-15, 2019; June 16-22, 2019; June 23-

20   29, 2019; July 7-13, 2019; July 14-20, 2019; July 21-27, 2019; July 28 – August 3, 2019;

21   August 4-10, 2019; August 11-17, 2019; August 18-24, 2019; August 25-31, 2019;

22   September 1-7, 2019; September 8-14, 2019; September 15-21, 2019; September 22-28,

23   2019; September 29 – October 5, 2019; October 6-12, 2019; October 13-19, 2019; October

24   20-26, 2019; October 27 – November 2, 2019; November 3-9, 2019; November 10-16,

25   2019; November 17-23, 2019; December 1-7, 2019; December 8-14, 2019; December 9-

26   21, 2019; January 5-11, 2020; January 12-18, 2020; January 19-25, 2020; January 26 –

27   February 1, 2020; February 2-8, 2020; February 9-15, 2020; February 16-22, 2020;

28

February 23-29, 2020; March 1-7, 2020; March 8-14, 2020; March 15-21, 2020; March 22-28, 2020; March 29 – April 4, 2020; April 5-11, 2020; April 12-18, 2020; April 19-25, 2020; April 26 – May 2, 2020; May 3-9, 2020; May 10-16, 2020; May 17-23, 2020; May 24-30, 2020; May 31 – June 6, 2020; June 7-13, 2020; June 14-20, 2020; and June 21-27, 2020—it took Mr. Chan approximately three minutes to travel to the breakroom at the start of his meal periods and approximately three minutes to travel from the breakroom back to his workstation at the conclusion of his meal periods. However, Mr. Chan and non-exempt, hourly workers have not been paid for this time as directed by their supervisors whilst working for ULTA BEAUTY COSMETICS, LLC and/or DOES, including Mr. Chan's supervisors, Laura Valequez, Adrian Olivares, and Alma (last name unknown). In order to reach the breakroom for his meal periods, Mr. Chan would have to travel through ULTA BEAUTY COSMETICS, LLC's and/or DOES' massive facility, which would take Mr. Chan approximately three minutes to do when starting his meal periods, and approximately another three minutes when he would leave the breakroom to end his meal periods. This travel time was performed while Mr. Chan was clocked out for his 30-minute meal period, as ULTA BEAUTY COSMETICS, LLC's and/or DOES' policy — as explained to Mr. Chan during his training on ULTA BEAUTY COSMETICS, LLC's and/or DOES' policies and procedures with, and enforced by, his supervisors, Laura Valequez, Adrian Olivares, and Alma (last name unknown) — required him to clock out for his meal period prior to traveling to the breakroom to take a meal period and to clock back in after traveling back from the breakroom at the end of his meal period. As a result, Mr. Chan and non-exempt, hourly workers never receive[d] their wages for the spent to and from the breakroom during their unpaid meal periods. The time Mr. Chan and non-exempt, hourly workers as they travel to and from the breakroom during their unpaid meal periods is not counted as compensable time worked even though they remain subject to the control of their employer, thereby denying Mr. Chan and the non-exempt, hourly workers compensation for all hours worked.

87.    As alleged herein, and pursuant to the policies and practices he was taught during his training with his supervisors Laura Valequez, Adrian Olivares, and Alma (last name unknown) while working for ULTA BEAUTY COSMETICS, LLC and/or DOES, Mr. Chan was required to clock out before traveling to the break room to begin a meal period to clock back in to work after traveling back from the break room to end a meal period. Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES failed to compensate Mr. Chan at his regular rate of pay for the approximately six minutes he spent traveling to and from the breakroom during his unpaid meal periods every workweek during the relevant statute of limitations—which, on information and belief, includes the workweeks of March 25-31, 2018; April 1-7, 2018; April 8-14, 2018; April 15-21, 2018; April 22-28, 2018; April 29 – May 5, 2018: May 6-12, 2018; May 13-19, 2018; May 20-26, 2018; May 27 – June 2, 2018; June 3-9, 2018; June 10-16, 2018; June 17-23, 2018; June 24-30, 2018; July 8-14, 2018; July 15-21, 2018; July 22-28, 2018; July 29 – August 4, 2018; August 5-11, 2018; August 12-18, 2018; August 19-25, 2018; August 26 – September 1, 2018; September 2-8, 2018; September 9-15, 2018; September 16-22, 2018; September 23-29, 2018; September 30 – October 6, 2018; October 7-13, 2018; October 14-20, 2018; October 21-27, 2018; October 28 – November 3, 2018; November 4-10, 2018; November 11-17, 2018; November 25 – December 1, 2018; December 2-8, 2018; December 9-15, 2018; December 16-22, 2018; January 6-12, 2019; January 13-19, 2019; January 20-26, 2019; January 27 – February 2, 2019; February 3-9, 2019; February 10-16, 2019; February 17-23, 2019; February 24 – March 2, 2019; March 3-9, 2019; March 10-16, 2019; March 17-23, 2019; March 24-30, 2019; March 31 – April 6, 2019; April 7-13, 2019; April 14-20, 2019; April 21-27, 2019; April 28 – May 4, 2019; May 5-11, 2019; May 12-18, 2019; May 19-25, 2019; May 26 – June 1, 2019; June 2-8, 2019; June 9-15, 2019; June 16-22, 2019; June 23-29, 2019; July 7-13, 2019; July 14-20, 2019; July 21-27, 2019; July 28 – August 3, 2019; August 4-10, 2019; August 11-17, 2019; August 18-24, 2019; August 25-31, 2019; September 1-7, 2019; September 8-14, 2019; September 15-21, 2019; September 22-28,

1    2019; September 29 – October 5, 2019; October 6-12, 2019; October 13-19, 2019; October

2    20-26, 2019; October 27 – November 2, 2019; November 3-9, 2019; November 10-16,

3    2019; November 17-23, 2019; December 1-7, 2019; December 8-14, 2019; December 9-

4    21, 2019; January 5-11, 2020; January 12-18, 2020; January 19-25, 2020; January 26 –

5    February 1, 2020; February 2-8, 2020; February 9-15, 2020; February 16-22, 2020;

6    February 23-29, 2020; March 1-7, 2020; March 8-14, 2020; March 15-21, 2020; March

7    22-28, 2020; March 29 – April 4, 2020; April 5-11, 2020; April 12-18, 2020; April 19-25,

8    2020; April 26 – May 2, 2020; May 3-9, 2020; May 10-16, 2020; May 17-23, 2020; May

9    24-30, 2020; May 31 – June 6, 2020; June 7-13, 2020; June 14-20, 2020; and June 21-27,

10   2020— and, on information and belief, similarly failed to compensate all the other non-

11   exempt, hourly workers who were also forced to travel to and from the breakroom while

12   off the clock for their meal periods.

13   88.   In addition, throughout the statutory period, in every workweek during the relevant statute

14   of limitations—which, on information and belief, includes the workweeks of April 7-13,

15   2019; April 14-20, 2019; and April 21-27, 2019—it took Mr. Moreno approximately two

16   to four minutes to travel to the breakroom at the start of his meal periods and approximately

17   two to four minutes to travel from the breakroom back to his workstation at the conclusion

18   of his meal periods. However, Mr. Moreno and non-exempt, hourly workers have not been

19   paid for this time as directed by their supervisors, including Mr. Moreno's supervisor. In

20   order to reach the breakroom for his meal periods, Mr. Moreno would have to travel

21   through ULTA BEAUTY COSMETICS, LLC's and/or DOES' massive facility, which

22   would take Mr. Moreno approximately two to four minutes to do when starting his meal

23   periods, and approximately another two to four minutes when he would leave the

24   breakroom to end his meal periods. This travel time was performed while Mr. Moreno was

25   clocked out for his 30-minute meal period, as ULTA BEAUTY COSMETICS, LLC's

26   and/or DOES' policy — as explained enforced by his supervisor — required him to clock

27   out for his meal period prior to traveling to the breakroom to take a meal period and to

28

1    clock back in after traveling back from the breakroom at the end of his meal period. As a

2    result, Mr. Moreno and non-exempt, hourly workers never receive[d] their wages for the

3    spent to and from the breakroom during their unpaid meal periods. The time Mr. Moreno

4    and non-exempt, hourly workers as they travel to and from the breakroom during their

5    unpaid meal periods is not counted as compensable time worked even though they remain

6    subject to the control of their employer, thereby denying Mr. Moreno and the non-exempt,

7    hourly workers compensation for all hours worked.

8    89.   As alleged herein, and pursuant to the policies and practices he was taught from and that

9          were enforced by his supervisor at ULTA BEAUTY COSMETICS, LLC's and/or DOES'

10         facility, Mr. Moreno was required to clock out before traveling to the break room to begin

11         a meal period to clock back in to work after traveling back from the break room to end a

12         meal period. Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES failed to

13         compensate Mr. Moreno at his regular rate of pay for the approximately two to four minutes

14         he spent traveling each way to and from the breakroom during his unpaid meal periods

15         every workweek during the relevant statute of limitations—which, on information and

16         belief, includes the workweeks of April 7-13, 2019; April 14-20, 2019; and April 21-27,

17         2019 — and, on information and belief, similarly failed to compensate all the other non-

18         exempt, hourly workers who were also forced to travel to and from the breakroom while

19         off the clock for their meal periods.

20    90.   Defendant and/or DOES have a continuous and consistent policy of shaving the time

21         Plaintiffs and those similarly situated work (referred to as "time shaving").

22    91.   Thus, Defendant and/or DOES shave/steal earned wages from Plaintiffs and each and every

23         member of the Class each and every day they work. Defendant and/or DOES have not paid

24         Plaintiffs and the members of the Class all straight time wages owed.

25    92.   Plaintiffs and the Class members are informed and believe and thereon allege that as a

26         direct result of Defendant's and/or DOES' uniform policies and/or practices, Plaintiffs and

27         the Class members have suffered, and continue to suffer, substantial unpaid wages, and

28

lost interest on such wages, and expenses and attorneys' fees in seeking to compel Defendant and/or DOES to fully perform their obligations under state law, all to their respective damage in amounts, according to proof at trial.

93.    As a direct result of Defendant's and/or DOES' policy of illegal wage theft, Plaintiffs and those similarly situated have been damaged in an amount to be proven at trial.

94.    WHEREFORE, Plaintiffs and the Class they seek to represent request relief as described below.

**SECOND CAUSE OF ACTION AGAINST DEFENDANT AND/OR DOES: Failure to Pay All Overtime Wages**

95.    Plaintiffs and those similarly situated Class members hereby incorporate by reference each and every other paragraph in this Complaint herein as if fully plead.

96.    It is fundamental that an employer must pay its employees for all time worked. California Labor Code sections 218 and 218.5 provides a right of action for nonpayment of wages. Labor Code section 223 prohibits the pay of less than a statutory or contractual wage scale. Labor Code section 1197 prohibits the payment of less than the minimum wage. Labor Code section 224 only permits deductions from wages when the employer is required or empowered to do so by state or federal law or when the deduction is expressly authorized in writing by the employee for specified purposes that do not have the effect of reducing the agreed upon wage.

97.    Defendant and/or DOES failed to pay overtime when workers worked over eight (8) hours per day and when employees worked over forty (40) hours per week.

98.    Plaintiffs and those similarly situated Class members were employed by and performed services for Defendant and/or DOES at all relevant times. Defendant and/or DOES were required to compensate Plaintiffs for all overtime hours worked and were prohibited from making deductions that had the effect of reducing the agreed upon wage.

99.    Defendant and/or DOES have a continuous and consistent policy of mandating workers waiting in lines to get through security and at the timeclock all before employees are clocked in for the day, i.e., getting compensated. Plaintiffs and Class and subclass members

1    frequently work over eight daily and forty weekly hours, and, therefore, this compensable

2    time is owed at the overtime rates of Plaintiffs and Class Members and subclass members.

3  100.  Additionally, workers are not free of control and duty for the entire time they are clocked

4    out for lunch. Necessarily, workers exiting the facility will have to wait in line to get

5    through security and wait in line to clock back in upon their return. Thus, part of the time

6    they are clocked out is time they are under the compensable control of Defendant and/or

7    DOES. Likewise, workers taking their lunch on the premises in the break rooms, have to

8    walk the distances away from the break room to get to the time clock to clock in, which

9    means they are necessarily controlled in their actions for a portion of their unpaid meal

10   period time. Plaintiffs and Class and subclass members frequently work over eight daily

11   and forty weekly hours, and, therefore, this compensable time is owed at the overtime rates

12   of Plaintiffs and Class Members and subclass members.

13  101.  Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES have a continuous and

14   consistent policy and/or practice of not paying Plaintiffs and non-exempt, hourly workers

15   for all overtime worked, including before Plaintiffs and non-exempt, hourly workers clock-

16   in for work shifts, and after they clock-out at the end of the day. For example, throughout

17   the statutory period, in every workweek during the relevant statute of limitations—which,

18   on information and belief, includes the workweeks of October 6-12, 2019; October 13-19,

19   2019; October 20-26, 2019; October 27 – November 2, 2019; and November 3-9, 2019—

20   it took Ms. Hansber approximately five minutes to wait in the line to get through security

21   at the entrance of the facility when arriving to start her shift. However, Ms. Hansber and

22   non-exempt, hourly workers have not been paid for the time spent getting through security,

23   security procedures which are mandated by ULTA BEAUTY COSMETICS, LLC and/or

24   DOES, as explained in ULTA BEAUTY COSMETICS, LLC's and/or DOES' orientation

25   process, and directed by their supervisors, including Ms. Hansber's supervisor, Stuart.

26   Pursuant to Defendant ULTA BEAUTY COSMETICS, LLC's and/or DOES' policy—as

27   explained to Ms. Hansber during her orientation with ULTA BEAUTY COSMETICS,

28

LLC and/or DOES and enforced by her supervisor, Stuart — Ms. Hansber was required to wait in line and go through ULTA BEAUTY COSMETICS, LLC's and/or DOES' security procedures before clocking in to start her shift. As a result, Ms. Hansber and non-exempt, hourly workers never receive[d] the wages for the time they had to spend going through ULTA BEAUTY COSMETICS, LLC's and/or DOES' mandatory security procedures. These harassing security protocols, which included intrusive bag searches, would take Ms. Hansber approximately five minutes to complete prior to the start of her shift. The waiting time Ms. Hansber and non-exempt, hourly workers as they go through security is not counted as compensable time worked even though they remain subject to the control of their employer, thereby denying Ms. Hansber and the non-exempt, hourly workers compensation for all hours worked.

102.    As alleged herein, and pursuant to the policies and practices she was taught during her orientation with ULTA BEAUTY COSMETICS, LLC and/or DOES, as well as the instruction of her supervisor, Stuart, Ms. Hansber was not permitted to skip the security line and procedures where all the non-exempt, hourly workers had to wait to enter and exit the facility, and was instructed she was to clock in for work only after having gone through the security protocols. Ms. Hansber was a full-time employee for ULTA BEAUTY COSMETICS, LLC and/or DOES and regularly worked approximately five days per week and more than ten hours in a day. As Ms. Hansber regularly worked more than ten hours in a day, each instance where ULTA BEAUTY COSMETICS, LLC and/or DOES failed to pay Ms. Hansber for the time she spent subjected to ULTA BEAUTY COSMETICS, LLC's and/or DOES' security protocols would have been required to be compensated at the overtime rate. Thus, Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES failed to compensate Ms. Hansber at her overtime rate of pay for the approximately five minutes she spent waiting in line to enter the facility to start her shift and going through security while clocked out in every workweek during the relevant statute of limitations— which, on information and belief, includes the workweeks of October 6-12, 2019; October

1  13-19, 2019; October 20-26, 2019; October 27 – November 2, 2019; and November 3-9,

2  2019 — and, on information and belief, similarly failed to compensate all the other non-

3  exempt, hourly workers who were also forced through these security procedures while off

4  the clock.

5  103.  Similarly, Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES have a

6  continuous and consistent policy and/or practice of not paying Plaintiffs and non-exempt,

7  hourly workers for all time worked, including before Plaintiffs and non-exempt, hourly

8  workers clock-in for work shifts, and after they clock-out at the end of the day. For

9  example, throughout the statutory period, in every workweek during the relevant statute of

10  limitations—which, on information and belief, includes the workweeks of March 25-31,

11  2018; April 1-7, 2018; April 8-14, 2018; April 15-21, 2018; April 22-28, 2018; April 29 –

12  May 5, 2018: May 6-12, 2018; May 13-19, 2018; May 20-26, 2018; May 27 – June 2,

13  2018; June 3-9, 2018; June 10-16, 2018; June 17-23, 2018; June 24-30, 2018; July 8-14,

14  2018; July 15-21, 2018; July 22-28, 2018; July 29 – August 4, 2018; August 5-11, 2018;

15  August 12-18, 2018; August 19-25, 2018; August 26 – September 1, 2018; September 2-

16  8, 2018; September 9-15, 2018; September 16-22, 2018; September 23-29, 2018;

17  September 30 – October 6, 2018; October 7-13, 2018; October 14-20, 2018; October 21-

18  27, 2018; October 28 – November 3, 2018; November 4-10, 2018; November 11-17, 2018;

19  November 25 – December 1, 2018; December 2-8, 2018; December 9-15, 2018; December

20  16-22, 2018; January 6-12, 2019; January 13-19, 2019; January 20-26, 2019; January 27 –

21  February 2, 2019; February 3-9, 2019; February 10-16, 2019; February 17-23, 2019;

22  February 24 – March 2, 2019; March 3-9, 2019; March 10-16, 2019; March 17-23, 2019;

23  March 24-30, 2019; March 31 – April 6, 2019; April 7-13, 2019; April 14-20, 2019; April

24  21-27, 2019; April 28 – May 4, 2019; May 5-11, 2019; May 12-18, 2019; May 19-25,

25  2019; May 26 – June 1, 2019; June 2-8, 2019; June 9-15, 2019; June 16-22, 2019; June 23-

26  29, 2019; July 7-13, 2019; July 14-20, 2019; July 21-27, 2019; July 28 – August 3, 2019;

27  August 4-10, 2019; August 11-17, 2019; August 18-24, 2019; August 25-31, 2019;

28

1  September 1-7, 2019; September 8-14, 2019; September 15-21, 2019; September 22-28,

2  2019; September 29 – October 5, 2019; October 6-12, 2019; October 13-19, 2019; October

3  20-26, 2019; October 27 – November 2, 2019; November 3-9, 2019; November 10-16,

4  2019; November 17-23, 2019; December 1-7, 2019; December 8-14, 2019; December 9-

5  21, 2019; January 5-11, 2020; January 12-18, 2020; January 19-25, 2020; January 26 –

6  February 1, 2020; February 2-8, 2020; February 9-15, 2020; February 16-22, 2020;

7  February 23-29, 2020; March 1-7, 2020; March 8-14, 2020; March 15-21, 2020; March

8  22-28, 2020; March 29 – April 4, 2020; April 5-11, 2020; April 12-18, 2020; April 19-25,

9  2020; April 26 – May 2, 2020; May 3-9, 2020; May 10-16, 2020; May 17-23, 2020; May

10  24-30, 2020; May 31 – June 6, 2020; June 7-13, 2020; June 14-20, 2020; and June 21-27,

11  2020—it took Mr. Chan approximately three to five minutes to wait in the line to get

12  through security at the entrance of the facility when arriving to start his shift. However,

13  Mr. Chan and non-exempt, hourly workers have not been paid for the time spent getting

14  through security, security procedures which are mandated by ULTA BEAUTY

15  COSMETICS, LLC and/or DOES, as was explained in by their supervisors, including Mr.

16  Chan's supervisors, Laura Valequez, Adrian Olivares, and Alma (last name unknown),

17  who trained him on and enforced ULTA BEAUTY COSMETICS, LLC's and/or DOES'

18  policies and procedures. Pursuant to Defendant ULTA BEAUTY COSMETICS, LLC's

19  and/or DOES' policy—as explained to Mr. Chan during his training with his supervisors,

20  Laura Valequez, Adrian Olivares, and Alma (last name unknown), while working for

21  ULTA BEAUTY COSMETICS, LLC and/or DOES — Mr. Chan was required to wait in

22  line and go through ULTA BEAUTY COSMETICS, LLC's and/or DOES' security

23  procedures before clocking in to start his shift. As a result, Mr. Chan and non-exempt,

24  hourly workers never receive[d] the wages for the time they had to spend going through

25  ULTA BEAUTY COSMETICS, LLC's and/or DOES' mandatory security procedures.

26  These harassing security protocols, which included intrusive bag searches, would take Mr.

27  Chan approximately three to five minutes to complete prior to the start of his shift. The

28

SECOND AMENDED CLASS ACTION COMPLAINT 35

1    waiting time Mr. Chan and non-exempt, hourly workers as they go through security is not

2    counted as compensable time worked even though they remain subject to the control of

3    their employer, thereby denying Mr. Chan and the non-exempt, hourly workers

4    compensation for all hours worked.

5    104.    As alleged herein, and pursuant to the policies and practices he was taught during his

6    training with his supervisors Laura Valequez, Adrian Olivares, and Alma (last name

7    unknown) while working for ULTA BEAUTY COSMETICS, LLC and/or DOES, Mr.

8    Chan was not permitted to skip the security line and procedures where all the non-exempt,

9    hourly workers had to wait to enter and exit the facility, and was instructed he was to clock

10   in for work only after having gone through the security protocols. Mr. Chan was a full-time

11   employee for ULTA BEAUTY COSMETICS, LLC and/or DOES and regularly worked

12   approximately five days per week and more than ten hours in a day. As Mr. Chan regularly

13   worked more than ten hours in a day, each instance where ULTA BEAUTY COSMETICS,

14   LLC and/or DOES failed to pay Mr. Chan for the time he spent subjected to ULTA

15   BEAUTY COSMETICS, LLC's and/or DOES' security protocols would have been

16   required to be compensated at the overtime rate. Thus, Defendant ULTA BEAUTY

17   COSMETICS, LLC and/or DOES failed to compensate Mr. Chan at his overtime rate of

18   pay for the approximately three to five minutes he spent waiting in line to enter the facility

19   to start his shift and going through security while clocked out in every workweek during

20   the relevant statute of limitations—which, on information and belief, includes the

21   workweeks of March 25-31, 2018; April 1-7, 2018; April 8-14, 2018; April 15-21, 2018;

22   April 22-28, 2018; April 29 – May 5, 2018: May 6-12, 2018; May 13-19, 2018; May 20-

23   26, 2018; May 27 – June 2, 2018; June 3-9, 2018; June 10-16, 2018; June 17-23, 2018;

24   June 24-30, 2018; July 8-14, 2018; July 15-21, 2018; July 22-28, 2018; July 29 – August

25   4, 2018; August 5-11, 2018; August 12-18, 2018; August 19-25, 2018; August 26 –

26   September 1, 2018; September 2-8, 2018; September 9-15, 2018; September 16-22, 2018;

27   September 23-29, 2018; September 30 – October 6, 2018; October 7-13, 2018; October 14-

28

20, 2018; October 21-27, 2018; October 28 – November 3, 2018; November 4-10, 2018; November 11-17, 2018; November 25 – December 1, 2018; December 2-8, 2018; December 9-15, 2018; December 16-22, 2018; January 6-12, 2019; January 13-19, 2019; January 20-26, 2019; January 27 – February 2, 2019; February 3-9, 2019; February 10-16, 2019; February 17-23, 2019; February 24 – March 2, 2019; March 3-9, 2019; March 10-16, 2019; March 17-23, 2019; March 24-30, 2019; March 31 – April 6, 2019; April 7-13, 2019; April 14-20, 2019; April 21-27, 2019; April 28 – May 4, 2019; May 5-11, 2019; May 12-18, 2019; May 19-25, 2019; May 26 – June 1, 2019; June 2-8, 2019; June 9-15, 2019; June 16-22, 2019; June 23-29, 2019; July 7-13, 2019; July 14-20, 2019; July 21-27, 2019; July 28 – August 3, 2019; August 4-10, 2019; August 11-17, 2019; August 18-24, 2019; August 25-31, 2019; September 1-7, 2019; September 8-14, 2019; September 15-21, 2019; September 22-28, 2019; September 29 – October 5, 2019; October 6-12, 2019; October 13-19, 2019; October 20-26, 2019; October 27 – November 2, 2019; November 3-9, 2019; November 10-16, 2019; November 17-23, 2019; December 1-7, 2019; December 8-14, 2019; December 9-21, 2019; January 5-11, 2020; January 12-18, 2020; January 19-25, 2020; January 26 – February 1, 2020; February 2-8, 2020; February 9-15, 2020; February 16-22, 2020; February 23-29, 2020; March 1-7, 2020; March 8-14, 2020; March 15-21, 2020; March 22-28, 2020; March 29 – April 4, 2020; April 5-11, 2020; April 12-18, 2020; April 19-25, 2020; April 26 – May 2, 2020; May 3-9, 2020; May 10-16, 2020; May 17-23, 2020; May 24-30, 2020; May 31 – June 6, 2020; June 7-13, 2020; June 14-20, 2020; and June 21-27, 2020 — and, on information and belief, similarly failed to compensate all the other non-exempt, hourly workers who were also forced through these security procedures while off the clock.

105.  In addition, throughout the statutory period, in every workweek during the relevant statute of limitations—which, on information and belief, includes the workweeks of April 7-13, 2019; April 14-20, 2019; and April 21-27, 2019—it took Mr. Moreno approximately five minutes to wait in the line to get through security at the entrance of the facility when

1    arriving to start his shift. However, Mr. Moreno and non-exempt, hourly workers have not

2    been paid for the time spent getting through security, security procedures which are

3    mandated by ULTA BEAUTY COSMETICS, LLC and/or DOES, which Mr. Moreno

4    believes was explained to him and enforced by his supervisor. Pursuant to Defendant

5    ULTA BEAUTY COSMETICS, LLC's and/or DOES' policy—as explained to Mr.

6    Moreno and enforced by his supervisor at ULTA BEAUTY COSMETICS, LLC's and/or

7    DOES' facility — Mr. Moreno was required to wait in line and go through ULTA

8    BEAUTY COSMETICS, LLC's and/or DOES' security procedures before clocking in to

9    start his shift. As a result, Mr. Moreno and non-exempt, hourly workers never receive[d]

10   the wages for the time they had to spend going through ULTA BEAUTY COSMETICS,

11   LLC's and/or DOES' mandatory security procedures. These harassing security protocols,

12   which included intrusive bag searches, would take Mr. Moreno approximately five minutes

13   to complete prior to the start of his shift. The waiting time Mr. Moreno and non-exempt,

14   hourly workers as they go through security is not counted as compensable time worked

15   even though they remain subject to the control of their employer, thereby denying Mr.

16   Moreno and the non-exempt, hourly workers compensation for all hours worked.

17   106.   As alleged herein, and pursuant to the policies and practices he was taught from and that

18          were enforced by his supervisor at ULTA BEAUTY COSMETICS, LLC's and/or DOES'

19          facility, Mr. Moreno was not permitted to skip the security line and procedures where all

20          the non-exempt, hourly workers had to wait to enter and exit the facility and was instructed

21          he was to clock in for work only after having gone through the security protocols. Mr.

22          Moreno was a full-time employee for ULTA BEAUTY COSMETICS, LLC and/or DOES

23          and regularly worked approximately four days per week and more than ten hours in a day.

24          As Mr. Moreno regularly worked more than ten hours in a day, each instance where ULTA

25          BEAUTY COSMETICS, LLC and/or DOES failed to pay Mr. Moreno for the time he

26          spent subjected to ULTA BEAUTY COSMETICS, LLC's and/or DOES' security

27          protocols would have been required to be compensated at the overtime rate. Thus,

28

1    Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES failed to compensate Mr.

2    Moreno at his overtime rate of pay for the approximately five minutes he spent waiting in

3    line to enter the facility to start his shift and going through security while clocked out in

4    every workweek during the relevant statute of limitations—which, on information and

5    belief, includes the workweeks of April 7-13, 2019; April 14-20, 2019; and April 21-27,

6    2019 — and, on information and belief, similarly failed to compensate all the other non-

7    exempt, hourly workers who were also forced through these security procedures while off

8    the clock.

9    107.  Furthermore, throughout the statutory period, in every workweek during the relevant

10    statute of limitations—which, on information and belief, includes the workweeks of

11    October 6-12, 2019; October 13-19, 2019; October 20-26, 2019; October 27 – November

12    2, 2019; and November 3-9, 2019—it took Ms. Hansber approximately three minutes to

13    travel to the breakroom at the start of her meal periods and approximately three minutes to

14    travel from the breakroom back to her workstation at the conclusion of her meal periods.

15    However, Ms. Hansber and non-exempt, hourly workers have not been paid for this time

16    as directed through ULTA BEAUTY COSMETICS, LLC's and/or DOES' orientation

17    process, and directed by their supervisors, including Ms. Hansber's supervisor, Stuart. In

18    order to reach the breakroom for her meal periods, Ms. Hansber would have to travel

19    through ULTA BEAUTY COSMETICS, LLC's and/or DOES' massive facility, which

20    would take Ms. Hansber approximately three minutes to do when starting her meal periods,

21    and approximately another three minutes when she would leave the breakroom to end her

22    meal periods. This travel time was performed while Ms. Hansber was clocked out for her

23    30-minute meal period, as ULTA BEAUTY COSMETICS, LLC's and/or DOES' policy

24    — as explained to Ms. Hansber during her orientation with ULTA BEAUTY

25    COSMETICS, LLC and/or DOES and enforced by her supervisor, Stuart — required her

26    to clock out for her meal period prior to traveling to the breakroom to take a meal period

27    and to clock back in after traveling back from the breakroom at the end of her meal period.

28

As a result, Ms. Hansber and non-exempt, hourly workers never receive[d] their wages for the spent to and from the breakroom during their unpaid meal periods. The time Ms. Hansber and non-exempt, hourly workers as they travel to and from the breakroom during their unpaid meal periods is not counted as compensable time worked even though they remain subject to the control of their employer, thereby denying Ms. Hansber and the non-exempt, hourly workers compensation for all hours worked.

108.    As alleged herein, and pursuant to the policies and practices she was taught during her orientation with ULTA BEAUTY COSMETICS, LLC and/or DOES, as well as the instruction of her supervisor, Stuart, Ms. Hansber was required to clock out before traveling to the break room to begin a meal period to clock back in to work after traveling back from the break room to end a meal period. As Ms. Hansber regularly worked more than ten hours in a day, each instance where ULTA BEAUTY COSMETICS, LLC and/or DOES failed to pay Ms. Hansber for the time she spent traveling to and from the breakroom while on her unpaid meal period would have been required to be compensated at the overtime rate. Thus, Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES failed to compensate Ms. Hansber at her overtime rate of pay for the approximately six minutes she spent traveling to and from the breakroom during her unpaid meal periods every workweek during the relevant statute of limitations—which, on information and belief, includes the workweeks of October 6-12, 2019; October 13-19, 2019; October 20-26, 2019; October 27 – November 2, 2019; and November 3-9, 2019 — and, on information and belief, similarly failed to compensate all the other non-exempt, hourly workers who were also forced to travel to and from the breakroom while off the clock for their meal periods.

109.    Similarly, throughout the statutory period, in every workweek during the relevant statute of limitations—which, on information and belief, includes the workweeks of March 25-31, 2018; April 1-7, 2018; April 8-14, 2018; April 15-21, 2018; April 22-28, 2018; April 29 – May 5, 2018: May 6-12, 2018; May 13-19, 2018; May 20-26, 2018; May 27 – June 2, 2018; June 3-9, 2018; June 10-16, 2018; June 17-23, 2018; June 24-30, 2018; July 8-14,

2018; July 15-21, 2018; July 22-28, 2018; July 29 – August 4, 2018; August 5-11, 2018; August 12-18, 2018; August 19-25, 2018; August 26 – September 1, 2018; September 2-8, 2018; September 9-15, 2018; September 16-22, 2018; September 23-29, 2018; September 30 – October 6, 2018; October 7-13, 2018; October 14-20, 2018; October 21-27, 2018; October 28 – November 3, 2018; November 4-10, 2018; November 11-17, 2018; November 25 – December 1, 2018; December 2-8, 2018; December 9-15, 2018; December 16-22, 2018; January 6-12, 2019; January 13-19, 2019; January 20-26, 2019; January 27 – February 2, 2019; February 3-9, 2019; February 10-16, 2019; February 17-23, 2019; February 24 – March 2, 2019; March 3-9, 2019; March 10-16, 2019; March 17-23, 2019; March 24-30, 2019; March 31 – April 6, 2019; April 7-13, 2019; April 14-20, 2019; April 21-27, 2019; April 28 – May 4, 2019; May 5-11, 2019; May 12-18, 2019; May 19-25, 2019; May 26 – June 1, 2019; June 2-8, 2019; June 9-15, 2019; June 16-22, 2019; June 23-29, 2019; July 7-13, 2019; July 14-20, 2019; July 21-27, 2019; July 28 – August 3, 2019; August 4-10, 2019; August 11-17, 2019; August 18-24, 2019; August 25-31, 2019; September 1-7, 2019; September 8-14, 2019; September 15-21, 2019; September 22-28, 2019; September 29 – October 5, 2019; October 6-12, 2019; October 13-19, 2019; October 20-26, 2019; October 27 – November 2, 2019; November 3-9, 2019; November 10-16, 2019; November 17-23, 2019; December 1-7, 2019; December 8-14, 2019; December 9-21, 2019; January 5-11, 2020; January 12-18, 2020; January 19-25, 2020; January 26 – February 1, 2020; February 2-8, 2020; February 9-15, 2020; February 16-22, 2020; February 23-29, 2020; March 1-7, 2020; March 8-14, 2020; March 15-21, 2020; March 22-28, 2020; March 29 – April 4, 2020; April 5-11, 2020; April 12-18, 2020; April 19-25, 2020; April 26 – May 2, 2020; May 3-9, 2020; May 10-16, 2020; May 17-23, 2020; May 24-30, 2020; May 31 – June 6, 2020; June 7-13, 2020; June 14-20, 2020; and June 21-27, 2020—it took Mr. Chan approximately three minutes to travel to the breakroom at the start of his meal periods and approximately three minutes to travel from the breakroom back to his workstation at the conclusion of his meal periods. However, Mr. Chan and non-exempt,

1  hourly workers have not been paid for this time as directed by their supervisors whilst

2  working for ULTA BEAUTY COSMETICS, LLC and/or DOES, including Mr. Chan's

3  supervisors, Laura Valequez, Adrian Olivares, and Alma (last name unknown). In order to

4  reach the breakroom for his meal periods, Mr. Chan would have to travel through ULTA

5  BEAUTY COSMETICS, LLC's and/or DOES' massive facility, which would take Mr.

6  Chan approximately three minutes to do when starting his meal periods, and approximately

7  another three minutes when he would leave the breakroom to end his meal periods. This

8  travel time was performed while Mr. Chan was clocked out for his 30-minute meal period,

9  as ULTA BEAUTY COSMETICS, LLC's and/or DOES' policy — as explained to Mr.

10 Chan during his training on ULTA BEAUTY COSMETICS, LLC's and/or DOES' policies

11 and procedures with, and enforced by, his supervisors, Laura Valequez, Adrian Olivares,

12 and Alma (last name unknown) — required him to clock out for his meal period prior to

13 traveling to the breakroom to take a meal period and to clock back in after traveling back

14 from the breakroom at the end of his meal period. As a result, Mr. Chan and non-exempt,

15 hourly workers never receive[d] their wages for the spent to and from the breakroom during

16 their unpaid meal periods. The time Mr. Chan and non-exempt, hourly workers as they

17 travel to and from the breakroom during their unpaid meal periods is not counted as

18 compensable time worked even though they remain subject to the control of their employer,

19 thereby denying Mr. Chan and the non-exempt, hourly workers compensation for all hours

20 worked.

21 110.  As alleged herein, and pursuant to the policies and practices he was taught during his

22 training with his supervisors Laura Valequez, Adrian Olivares, and Alma (last name

23 unknown) while working for ULTA BEAUTY COSMETICS, LLC and/or DOES, Mr.

24 Chan was required to clock out before traveling to the break room to begin a meal period

25 to clock back in to work after traveling back from the break room to end a meal period. As

26 Mr. Chan regularly worked more than ten hours in a day, each instance where ULTA

27 BEAUTY COSMETICS, LLC and/or DOES failed to pay Mr. Chan for the time he spent

28

1    traveling to and from the breakroom while on his unpaid meal period would have been

2    required to be compensated at the overtime rate. Thus, Defendant ULTA BEAUTY

3    COSMETICS, LLC and/or DOES failed to compensate Mr. Chan at his overtime rate of

4    pay for the approximately six minutes he spent traveling to and from the breakroom during

5    his unpaid meal periods every workweek during the relevant statute of limitations—which,

6    on information and belief, includes the workweeks of March 25-31, 2018; April 1-7, 2018;

7    April 8-14, 2018; April 15-21, 2018; April 22-28, 2018; April 29 – May 5, 2018: May 6-

8    12, 2018; May 13-19, 2018; May 20-26, 2018; May 27 – June 2, 2018; June 3-9, 2018;

9    June 10-16, 2018; June 17-23, 2018; June 24-30, 2018; July 8-14, 2018; July 15-21, 2018;

10    July 22-28, 2018; July 29 – August 4, 2018; August 5-11, 2018; August 12-18, 2018;

11    August 19-25, 2018; August 26 – September 1, 2018; September 2-8, 2018; September 9-

12    15, 2018; September 16-22, 2018; September 23-29, 2018; September 30 – October 6,

13    2018; October 7-13, 2018; October 14-20, 2018; October 21-27, 2018; October 28 –

14    November 3, 2018; November 4-10, 2018; November 11-17, 2018; November 25 –

15    December 1, 2018; December 2-8, 2018; December 9-15, 2018; December 16-22, 2018;

16    January 6-12, 2019; January 13-19, 2019; January 20-26, 2019; January 27 – February 2,

17    2019; February 3-9, 2019; February 10-16, 2019; February 17-23, 2019; February 24 –

18    March 2, 2019; March 3-9, 2019; March 10-16, 2019; March 17-23, 2019; March 24-30,

19    2019; March 31 – April 6, 2019; April 7-13, 2019; April 14-20, 2019; April 21-27, 2019;

20    April 28 – May 4, 2019; May 5-11, 2019; May 12-18, 2019; May 19-25, 2019; May 26 –

21    June 1, 2019; June 2-8, 2019; June 9-15, 2019; June 16-22, 2019; June 23-29, 2019; July

22    7-13, 2019; July 14-20, 2019; July 21-27, 2019; July 28 – August 3, 2019; August 4-10,

23    2019; August 11-17, 2019; August 18-24, 2019; August 25-31, 2019; September 1-7, 2019;

24    September 8-14, 2019; September 15-21, 2019; September 22-28, 2019; September 29 –

25    October 5, 2019; October 6-12, 2019; October 13-19, 2019; October 20-26, 2019; October

26    27 – November 2, 2019; November 3-9, 2019; November 10-16, 2019; November 17-23,

27    2019; December 1-7, 2019; December 8-14, 2019; December 9-21, 2019; January 5-11,

28

1   2020; January 12-18, 2020; January 19-25, 2020; January 26 – February 1, 2020; February

2   2-8, 2020; February 9-15, 2020; February 16-22, 2020; February 23-29, 2020; March 1-7,

3   2020; March 8-14, 2020; March 15-21, 2020; March 22-28, 2020; March 29 – April 4,

4   2020; April 5-11, 2020; April 12-18, 2020; April 19-25, 2020; April 26 – May 2, 2020;

5   May 3-9, 2020; May 10-16, 2020; May 17-23, 2020; May 24-30, 2020; May 31 – June 6,

6   2020; June 7-13, 2020; June 14-20, 2020; and June 21-27, 2020 — and, on information

7   and belief, similarly failed to compensate all the other non-exempt, hourly workers who

8   were also forced to travel to and from the breakroom while off the clock for their meal

9   periods

10  111.    In addition, throughout the statutory period, in every workweek during the relevant statute

11  of limitations—which, on information and belief, includes the workweeks of April 7-13,

12  2019; April 14-20, 2019; and April 21-27, 2019—it took Mr. Moreno approximately two

13  to four minutes to travel to the breakroom at the start of his meal periods and approximately

14  two to four minutes to travel from the breakroom back to his workstation at the conclusion

15  of his meal periods. However, Mr. Moreno and non-exempt, hourly workers have not been

16  paid for this time as directed by their supervisors, including Mr. Moreno's supervisor. In

17  order to reach the breakroom for his meal periods, Mr. Moreno would have to travel

18  through ULTA BEAUTY COSMETICS, LLC's and/or DOES' massive facility, which

19  would take Mr. Moreno approximately two to four minutes to do when starting his meal

20  periods, and approximately another two to four minutes when he would leave the

21  breakroom to end his meal periods. This travel time was performed while Mr. Moreno was

22  clocked out for his 30-minute meal period, as ULTA BEAUTY COSMETICS, LLC's

23  and/or DOES' policy — as explained enforced by his supervisor — required him to clock

24  out for his meal period prior to traveling to the breakroom to take a meal period and to

25  clock back in after traveling back from the breakroom at the end of his meal period. As a

26  result, Mr. Moreno and non-exempt, hourly workers never receive[d] their wages for the

27  spent to and from the breakroom during their unpaid meal periods. The time Mr. Moreno

28

SECOND AMENDED CLASS ACTION COMPLAINT 44

and non-exempt, hourly workers as they travel to and from the breakroom during their unpaid meal periods is not counted as compensable time worked even though they remain subject to the control of their employer, thereby denying Mr. Moreno and the non-exempt, hourly workers compensation for all hours worked.

112.    As alleged herein, and pursuant to the policies and practices he was taught from and that were enforced by his supervisor at ULTA BEAUTY COSMETICS, LLC's and/or DOES' facility, Mr. Moreno was required to clock out before traveling to the break room to begin a meal period to clock back in to work after traveling back from the break room to end a meal period. As Mr. Moreno regularly worked more than ten hours in a day, each instance where ULTA BEAUTY COSMETICS, LLC and/or DOES failed to pay Mr. Moreno for the time he spent traveling to and from the breakroom while on his unpaid meal period would have been required to be compensated at the overtime rate. Thus, Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES failed to compensate Mr. Moreno at his overtime rate of pay for the approximately two to four minutes he spent traveling each way to and from the breakroom during his unpaid meal periods every workweek during the relevant statute of limitations—which, on information and belief, includes the workweeks of April 7-13, 2019; April 14-20, 2019; and April 21-27, 2019 — and, on information and belief, similarly failed to compensate all the other non-exempt, hourly workers who were also forced to travel to and from the breakroom while off the clock for their meal periods.

113.    Defendant and/or DOES failed to pay for the overtime that was due, pursuant to IWC Wage Order No. 7-2001, item 3(A).

114.    Plaintiffs and the Class members are informed and believe and thereon allege that as a direct result of Defendant's and/or DOES' uniform policies and/or practices, Plaintiffs and the Class members have suffered, and continue to suffer, substantial unpaid overtime wages, and lost interest on such overtime wages, and expenses and attorneys' fees in seeking to compel Defendant and/or DOES to fully perform their obligations under state law, all to their respective damage in amounts according to proof at time of trial. Defendant

1  and/or DOES committed the acts alleged herein knowingly and willfully, with the wrongful

2  and deliberate intention on injuring Plaintiffs and the Class members. Defendant and/or

3  DOES acted with malice or in conscious disregard of Plaintiffs' and the Class Member's

4  rights. In addition to compensation, Plaintiffs are also entitled to any penalties allowed by

5  law.

6  115.  WHEREFORE, Plaintiffs and the Class they seek to represent request relief as described

7  below.

8  **THIRD CAUSE OF ACTION AGAINST DEFENDANT AND/OR DOES: Failure to**
**Provide Meal Periods, or Compensation in Lieu Thereof (Lab. Code §§ 226.7, 512,**
9  **IWC Wage Order No. 7-2001(11); Cal. Code Regs., tit. 8, § 11090)**

10  116.  Plaintiffs and those similarly situated Class members hereby incorporate by reference each

11  and every other paragraph in this Complaint herein as if fully plead.

12  117.  Under California Labor Code section 512 and IWC Wage Order No. 4, no employer shall

13  employ any person for a work period of more than five (5) hours without providing a meal

14  period of not less than thirty (30) minutes. During this meal periods of not less than thirty

15  (30) minutes, the employee is to be completely free of the employer's control and must not

16  perform any work for the employer. If the employee does perform work for the employer

17  during the thirty (30) minute meal period, the employee has not been provided a meal

18  period in accordance with the law. Also, the employee is to be compensated for any work

19  performed during the thirty (30) minute meal period.

20  118.  In addition, an employer may not employ an employee for a work period of more than ten

21  (10) hours per day without providing the employee with another meal period of less than

22  thirty (30) minutes.

23  119.  Workers do not get an entire 30-minutes for meal periods wherein they are free of employer

24  control and duties, because part of their time must be spent waiting in line to get through

25  security and waiting in line to clock back in before the 30-minutes are through. Thus,

26  pursuant to Defendant's and/or DOES' uniformly applicable policies of only providing 30-

27  minute meal periods, workers cannot be said to receive or be provided with full and

28

1    complete 30-minute meal periods wherein they are free from employer mandated controls

2    and duties.

3    120.    Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES have a continuous and

4    consistent policy and/or practice of not providing meal periods to Plaintiffs and non-

5    exempt, hourly workers compliant with California law. Throughout the statutory period, in

6    every workweek during the relevant statute of limitations—which, on information and

7    belief, includes the workweeks of October 6-12, 2019; October 13-19, 2019; October 20-

8    26, 2019; October 27 – November 2, 2019; and November 3-9, 2019— ULTA BEAUTY

9    COSMETICS, LLC and/or DOES did not provide Ms. Hansber and non-exempt, hourly

10    workers with duty-free meal periods of at least thirty minutes in length.  Pursuant to ULTA

11    BEAUTY COSMETICS, LLC's and/or DOES' policy—as explained to Ms. Hansber

12    during her orientation with ULTA BEAUTY COSMETICS, LLC and/or DOES and

13    enforced by her supervisor, Stuart — Ms. Hansber was only provided thirty minutes for a

14    meal period starting from when she left her workstation and ending when she returned to

15    her workstation at the end of her meal period. If Ms. Hansber wanted to maximize the

16    amount of time she could spend free to enjoy her lunch, Ms. Hansber would be forced

17    stayed inside the facility. If she left the facility during her meal period, she would have to

18    subject herself to ULTA BEAUTY COSMETICS, LLC's and/or DOES' harassing

19    mandatory security protocols, as explained to her during her orientation with ULTA

20    BEAUTY COSMETICS, LLC and/or DOES and enforced by her supervisor, Stuart, which

21    included intrusive bag searches, which would take roughly five minutes each way. Thus,

22    if Ms. Hansber wanted to avail herself of being free to enjoy her full lunch outside of ULTA

23    BEAUTY COSMETICS, LLC's and/or DOES' premises, she could only do so if she

24    sacrificed part of her time subject to ULTA BEAUTY COSMETICS, LLC's and/or DOES'

25    security protocols. As a result, Ms. Hansber and non-exempt, hourly workers never

26    receive[d] a full thirty-minute meal period in which they were free to leave the premises

27    and spend entirely outside of ULTA BEAUTY COSMETICS, LLC's and/or DOES'

28

1    control.

2    121.    As alleged herein, and pursuant to the policies and practices she was taught during her

3    orientation with ULTA BEAUTY COSMETICS, LLC and/or DOES, as well as the

4    instruction of her supervisor, Stuart, Ms. Hansber was not permitted to skip the security

5    line and procedures where all the non-exempt, hourly workers had to wait to enter and exit

6    the facility during her meal periods, and was only provided thirty minutes for a meal period

7    starting from when she left her workstation and ending when she returned to her

8    workstation at the end of her meal period. Ms. Hansber was a full-time employee for ULTA

9    BEAUTY COSMETICS, LLC and/or DOES and regularly worked approximately five

10    days per week and more than ten hours in a day. As Ms. Hansber regularly worked more

11    than five hours in a day, Ms. Hansber was regularly entitled to a meal period during her

12    shift. Thus, Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES failed to

13    provide Ms. Hansber with a duty-free, thirty-minute meal period in compliance with

14    California law in every workweek during the relevant statute of limitations—which, on

15    information and belief, includes the workweeks of October 6-12, 2019; October 13-19,

16    2019; October 20-26, 2019; October 27 – November 2, 2019; and November 3-9, 2019—

17    and, on information and belief, similarly failed to provide all the other non-exempt, hourly

18    workers with compliant meal periods when they worked shifts over five hours in length.

19    122.    Similarly, throughout the statutory period, in every workweek during the relevant statute

20    of limitations—which, on information and belief, includes the workweeks of March 25-31,

21    2018; April 1-7, 2018; April 8-14, 2018; April 15-21, 2018; April 22-28, 2018; April 29 –

22    May 5, 2018: May 6-12, 2018; May 13-19, 2018; May 20-26, 2018; May 27 – June 2,

23    2018; June 3-9, 2018; June 10-16, 2018; June 17-23, 2018; June 24-30, 2018; July 8-14,

24    2018; July 15-21, 2018; July 22-28, 2018; July 29 – August 4, 2018; August 5-11, 2018;

25    August 12-18, 2018; August 19-25, 2018; August 26 – September 1, 2018; September 2-

26    8, 2018; September 9-15, 2018; September 16-22, 2018; September 23-29, 2018;

27    September 30 – October 6, 2018; October 7-13, 2018; October 14-20, 2018; October 21-

28

27, 2018; October 28 – November 3, 2018; November 4-10, 2018; November 11-17, 2018; November 25 – December 1, 2018; December 2-8, 2018; December 9-15, 2018; December 16-22, 2018; January 6-12, 2019; January 13-19, 2019; January 20-26, 2019; January 27 – February 2, 2019; February 3-9, 2019; February 10-16, 2019; February 17-23, 2019; February 24 – March 2, 2019; March 3-9, 2019; March 10-16, 2019; March 17-23, 2019; March 24-30, 2019; March 31 – April 6, 2019; April 7-13, 2019; April 14-20, 2019; April 21-27, 2019; April 28 – May 4, 2019; May 5-11, 2019; May 12-18, 2019; May 19-25, 2019; May 26 – June 1, 2019; June 2-8, 2019; June 9-15, 2019; June 16-22, 2019; June 23-29, 2019; July 7-13, 2019; July 14-20, 2019; July 21-27, 2019; July 28 – August 3, 2019; August 4-10, 2019; August 11-17, 2019; August 18-24, 2019; August 25-31, 2019; September 1-7, 2019; September 8-14, 2019; September 15-21, 2019; September 22-28, 2019; September 29 – October 5, 2019; October 6-12, 2019; October 13-19, 2019; October 20-26, 2019; October 27 – November 2, 2019; November 3-9, 2019; November 10-16, 2019; November 17-23, 2019; December 1-7, 2019; December 8-14, 2019; December 9-21, 2019; January 5-11, 2020; January 12-18, 2020; January 19-25, 2020; January 26 – February 1, 2020; February 2-8, 2020; February 9-15, 2020; February 16-22, 2020; February 23-29, 2020; March 1-7, 2020; March 8-14, 2020; March 15-21, 2020; March 22-28, 2020; March 29 – April 4, 2020; April 5-11, 2020; April 12-18, 2020; April 19-25, 2020; April 26 – May 2, 2020; May 3-9, 2020; May 10-16, 2020; May 17-23, 2020; May 24-30, 2020; May 31 – June 6, 2020; June 7-13, 2020; June 14-20, 2020; and June 21-27, 2020— ULTA BEAUTY COSMETICS, LLC and/or DOES did not provide Mr. Chan and non-exempt, hourly workers with duty-free meal periods of at least thirty minutes in length. Pursuant to ULTA BEAUTY COSMETICS, LLC's and/or DOES' policy—as explained to Mr. Chan during ULTA BEAUTY COSMETICS, LLC's and/or DOES' training with his supervisors, Laura Valequez, Adrian Olivares, and Alma (last name unknown) — Mr. Chan was only provided thirty minutes for a meal period starting from when he left his workstation and ending when he returned to his workstation at the end of

his meal period. If Mr. Chan wanted to maximize the amount of time he could spend free to enjoy his lunch, Mr. Chan would be forced stayed inside the facility. If he left the facility during his meal period, he would have to subject himself to ULTA BEAUTY COSMETICS, LLC's and/or DOES' harassing mandatory security protocols, as explained to him during his training on ULTA BEAUTY COSMETICS, LLC's and/or DOES' policies and procedures, and enforced by his supervisors, Laura Valequez, Adrian Olivares, and Alma (last name unknown), which included intrusive bag searches, which would take roughly five minutes each way. Thus, if Mr. Chan wanted to avail himself of being free to enjoy his full lunch outside of ULTA BEAUTY COSMETICS, LLC's and/or DOES' premises, he could only do so if he sacrificed part of his time subject to ULTA BEAUTY COSMETICS, LLC's and/or DOES' security protocols. As a result, Mr. Chan and non-exempt, hourly workers never receive[d] a full thirty-minute meal period in which they were free to leave the premises and spend entirely outside of ULTA BEAUTY COSMETICS, LLC's and/or DOES' control.

123.    As alleged herein, and pursuant to the policies and practices he was taught during his training with his supervisors while working for ULTA BEAUTY COSMETICS, LLC and/or DOES, Laura Valequez, Adrian Olivares, and Alma (last name unknown), Mr. Chan was not permitted to skip the security line and procedures where all the non-exempt, hourly workers had to wait to enter and exit the facility during his meal periods, and was only provided thirty minutes for a meal period starting from when he left his workstation and ending when he returned to his workstation at the end of his meal period. Mr. Chan was a full-time employee for ULTA BEAUTY COSMETICS, LLC and/or DOES and regularly worked approximately five days per week and more than ten hours in a day. As Mr. Chan regularly worked more than five hours in a day, Mr. Chan was regularly entitled to a meal period during his shift. Thus, Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES failed to provide Mr. Chan with a duty-free, thirty-minute meal period in compliance with California law in every workweek during the relevant statute of

limitations—which, on information and belief, includes the workweeks of March 25-31, 2018; April 1-7, 2018; April 8-14, 2018; April 15-21, 2018; April 22-28, 2018; April 29 – May 5, 2018: May 6-12, 2018; May 13-19, 2018; May 20-26, 2018; May 27 – June 2, 2018; June 3-9, 2018; June 10-16, 2018; June 17-23, 2018; June 24-30, 2018; July 8-14, 2018; July 15-21, 2018; July 22-28, 2018; July 29 – August 4, 2018; August 5-11, 2018; August 12-18, 2018; August 19-25, 2018; August 26 – September 1, 2018; September 2-8, 2018; September 9-15, 2018; September 16-22, 2018; September 23-29, 2018; September 30 – October 6, 2018; October 7-13, 2018; October 14-20, 2018; October 21-27, 2018; October 28 – November 3, 2018; November 4-10, 2018; November 11-17, 2018; November 25 – December 1, 2018; December 2-8, 2018; December 9-15, 2018; December 16-22, 2018; January 6-12, 2019; January 13-19, 2019; January 20-26, 2019; January 27 – February 2, 2019; February 3-9, 2019; February 10-16, 2019; February 17-23, 2019; February 24 – March 2, 2019; March 3-9, 2019; March 10-16, 2019; March 17-23, 2019; March 24-30, 2019; March 31 – April 6, 2019; April 7-13, 2019; April 14-20, 2019; April 21-27, 2019; April 28 – May 4, 2019; May 5-11, 2019; May 12-18, 2019; May 19-25, 2019; May 26 – June 1, 2019; June 2-8, 2019; June 9-15, 2019; June 16-22, 2019; June 23-29, 2019; July 7-13, 2019; July 14-20, 2019; July 21-27, 2019; July 28 – August 3, 2019; August 4-10, 2019; August 11-17, 2019; August 18-24, 2019; August 25-31, 2019; September 1-7, 2019; September 8-14, 2019; September 15-21, 2019; September 22-28, 2019; September 29 – October 5, 2019; October 6-12, 2019; October 13-19, 2019; October 20-26, 2019; October 27 – November 2, 2019; November 3-9, 2019; November 10-16, 2019; November 17-23, 2019; December 1-7, 2019; December 8-14, 2019; December 9-21, 2019; January 5-11, 2020; January 12-18, 2020; January 19-25, 2020; January 26 – February 1, 2020; February 2-8, 2020; February 9-15, 2020; February 16-22, 2020; February 23-29, 2020; March 1-7, 2020; March 8-14, 2020; March 15-21, 2020; March 22-28, 2020; March 29 – April 4, 2020; April 5-11, 2020; April 12-18, 2020; April 19-25, 2020; April 26 – May 2, 2020; May 3-9, 2020; May 10-16, 2020; May 17-23, 2020; May

1    24-30, 2020; May 31 – June 6, 2020; June 7-13, 2020; June 14-20, 2020; and June 21-27,

2    2020 — and, on information and belief, similarly failed to provide all the other non-exempt,

3    hourly workers with compliant meal periods when they worked shifts over five hours in

4    length.

5    124.    In addition, throughout the statutory period, in every workweek during the relevant statute

6    of limitations—which, on information and belief, includes the workweeks of April 7-13,

7    2019; April 14-20, 2019; and April 21-27, 2019 — ULTA BEAUTY COSMETICS, LLC

8    and/or DOES did not provide Mr. Moreno and non-exempt, hourly workers with duty-free

9    meal periods of at least thirty minutes in length. Pursuant to ULTA BEAUTY

10   COSMETICS, LLC's and/or DOES' policy— which Mr. Moreno believes was explained

11   to him and enforced by his supervisor — Mr. Moreno was only provided thirty minutes for

12   a meal period starting from when he left his workstation and ending when he returned to

13   his workstation at the end of his meal period. If Mr. Moreno wanted to maximize the

14   amount of time he could spend free to enjoy his lunch, Mr. Moreno would be forced stayed

15   inside the facility. If he left the facility during his meal period, he would have to subject

16   himself to ULTA BEAUTY COSMETICS, LLC's and/or DOES' harassing mandatory

17   security protocols, as explained to Mr. Moreno and enforced by his supervisor at ULTA

18   BEAUTY COSMETICS, LLC's and/or DOES' facility, which included intrusive bag

19   searches, which would take roughly five minutes each way. Thus, if Mr. Moreno wanted

20   to avail himself of being free to enjoy his full lunch outside of ULTA BEAUTY

21   COSMETICS, LLC's and/or DOES' premises, he could only do so if he sacrificed part of

22   his time subject to ULTA BEAUTY COSMETICS, LLC's and/or DOES' security

23   protocols. As a result, Mr. Moreno and non-exempt, hourly workers never receive[d] a full

24   thirty-minute meal period in which they were free to leave the premises and spend entirely

25   outside of ULTA BEAUTY COSMETICS, LLC's and/or DOES' control.

26   125.    As alleged herein, and pursuant to the policies and practices he was taught from and that

27   were enforced by his supervisor at ULTA BEAUTY COSMETICS, LLC's and/or DOES'

28

facility, Mr. Moreno was not permitted to skip the security line and procedures where all the non-exempt, hourly workers had to wait to enter and exit the facility during his meal periods, and was only provided thirty minutes for a meal period starting from when he left his workstation and ending when he returned to his workstation at the end of his meal period. Mr. Moreno was a full-time employee for ULTA BEAUTY COSMETICS, LLC and/or DOES and regularly worked approximately four days per week and more than ten hours in a day. As Mr. Moreno regularly worked more than five hours in a day, Mr. Moreno was regularly entitled to a meal period during his shift. Thus, Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES failed to provide Mr. Moreno with a duty-free, thirty-minute meal period in compliance with California law in every workweek during the relevant statute of limitations—which, on information and belief, includes the workweeks of April 7-13, 2019; April 14-20, 2019; and April 21-27, 2019— and, on information and belief, similarly failed to provide all the other non-exempt, hourly workers with compliant meal periods when they worked shifts over five hours in length.

126. Furthermore, throughout the statutory period, in every workweek during the relevant statute of limitations—which, on information and belief, includes the workweeks of October 6-12, 2019; October 13-19, 2019; October 20-26, 2019; October 27 – November 2, 2019; and November 3-9, 2019— ULTA BEAUTY COSMETICS, LLC and/or DOES did not provide Ms. Hansber and non-exempt, hourly workers with duty-free meal periods of at least thirty minutes in length.  Pursuant to ULTA BEAUTY COSMETICS, LLC's and/or DOES' policy—as explained to Ms. Hansber during her orientation with ULTA BEAUTY COSMETICS, LLC and/or DOES and enforced by her supervisor, Stuart — Ms. Hansber was only provided thirty minutes for a meal period starting from when she left her workstation and ending when she returned to her workstation at the end of her meal period. In order to reach the breakroom to take her meal periods, Ms. Hansber would have to travel through ULTA BEAUTY COSMETICS, LLC's and/or DOES' massive facility, which would take Ms. Hansber approximately three minutes to do when starting her meal periods,

1    and approximately another three minutes when she would leave the breakroom to end her

2    meal periods. This travel time was performed while Ms. Hansber was clocked out for her

3    30-minute meal period, as ULTA BEAUTY COSMETICS, LLC's and/or DOES' policy

4    — as explained to Ms. Hansber during her orientation with ULTA BEAUTY

5    COSMETICS, LLC and/or DOES and enforced by her supervisor, Stuart — required her

6    to clock out for her meal period prior to traveling to the breakroom to take a meal period

7    and to clock back in after traveling back from the breakroom at the end of her meal period.

8    Because Ms. Hansber was only authorized and permitted to take a thirty minute meal

9    period, inclusive of the travel time to and from the breakroom—as explained to Ms.

10   Hansber during her orientation with ULTA BEAUTY COSMETICS, LLC and/or DOES

11   and enforced by her supervisor, Stuart —the time she would be provided for a meal period

12   would end up being closer to approximately twenty-four minutes or so, instead of thirty.

13   As a result, Ms. Hansber and non-exempt, hourly workers never receive[d] a full thirty-

14   minute meal period in which they were free to spend entirely outside of ULTA BEAUTY

15   COSMETICS, LLC's and/or DOES' control.

16   127.   As alleged herein, and pursuant to the policies and practices she was taught during her

17   orientation with ULTA BEAUTY COSMETICS, LLC and/or DOES, as well as the

18   instruction of her supervisor, Stuart, Ms. Hansber was required to clock out before traveling

19   to the break room to begin a meal period to clock back in to work after traveling back from

20   the break room to end a meal period. Ms. Hansber was a full-time employee for ULTA

21   BEAUTY COSMETICS, LLC and/or DOES  and regularly worked approximately five

22   days per week and more than ten hours in a day. As Ms. Hansber regularly worked more

23   than five hours in a day, Ms. Hansber was regularly entitled to a meal period during her

24   shift. Thus, Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES  failed to

25   provide Ms. Hansber with a duty-free, thirty-minute meal period in compliance with

26   California law in every workweek during the relevant statute of limitations—which, on

27   information and belief, includes the workweeks of October 6-12, 2019; October 13-19,

28

1  2019; October 20-26, 2019; October 27 – November 2, 2019; and November 3-9, 2019—

2  and, on information and belief, similarly failed to provide all the other non-exempt, hourly

3  workers with compliant meal periods when they worked shifts over five hours in length.

4  128.  Similarly, throughout the statutory period, in every workweek during the relevant statute

5  of limitations—which, on information and belief, includes the workweeks of March 25-31,

6  2018; April 1-7, 2018; April 8-14, 2018; April 15-21, 2018; April 22-28, 2018; April 29 –

7  May 5, 2018: May 6-12, 2018; May 13-19, 2018; May 20-26, 2018; May 27 – June 2,

8  2018; June 3-9, 2018; June 10-16, 2018; June 17-23, 2018; June 24-30, 2018; July 8-14,

9  2018; July 15-21, 2018; July 22-28, 2018; July 29 – August 4, 2018; August 5-11, 2018;

10  August 12-18, 2018; August 19-25, 2018; August 26 – September 1, 2018; September 2-

11  8, 2018; September 9-15, 2018; September 16-22, 2018; September 23-29, 2018;

12  September 30 – October 6, 2018; October 7-13, 2018; October 14-20, 2018; October 21-

13  27, 2018; October 28 – November 3, 2018; November 4-10, 2018; November 11-17, 2018;

14  November 25 – December 1, 2018; December 2-8, 2018; December 9-15, 2018; December

15  16-22, 2018; January 6-12, 2019; January 13-19, 2019; January 20-26, 2019; January 27 –

16  February 2, 2019; February 3-9, 2019; February 10-16, 2019; February 17-23, 2019;

17  February 24 – March 2, 2019; March 3-9, 2019; March 10-16, 2019; March 17-23, 2019;

18  March 24-30, 2019; March 31 – April 6, 2019; April 7-13, 2019; April 14-20, 2019; April

19  21-27, 2019; April 28 – May 4, 2019; May 5-11, 2019; May 12-18, 2019; May 19-25,

20  2019; May 26 – June 1, 2019; June 2-8, 2019; June 9-15, 2019; June 16-22, 2019; June 23-

21  29, 2019; July 7-13, 2019; July 14-20, 2019; July 21-27, 2019; July 28 – August 3, 2019;

22  August 4-10, 2019; August 11-17, 2019; August 18-24, 2019; August 25-31, 2019;

23  September 1-7, 2019; September 8-14, 2019; September 15-21, 2019; September 22-28,

24  2019; September 29 – October 5, 2019; October 6-12, 2019; October 13-19, 2019; October

25  20-26, 2019; October 27 – November 2, 2019; November 3-9, 2019; November 10-16,

26  2019; November 17-23, 2019; December 1-7, 2019; December 8-14, 2019; December 9-

27  21, 2019; January 5-11, 2020; January 12-18, 2020; January 19-25, 2020; January 26 –

28

February 1, 2020; February 2-8, 2020; February 9-15, 2020; February 16-22, 2020; February 23-29, 2020; March 1-7, 2020; March 8-14, 2020; March 15-21, 2020; March 22-28, 2020; March 29 – April 4, 2020; April 5-11, 2020; April 12-18, 2020; April 19-25, 2020; April 26 – May 2, 2020; May 3-9, 2020; May 10-16, 2020; May 17-23, 2020; May 24-30, 2020; May 31 – June 6, 2020; June 7-13, 2020; June 14-20, 2020; and June 21-27, 2020— ULTA BEAUTY COSMETICS, LLC and/or DOES did not provide Mr. Chan and non-exempt, hourly workers with duty-free meal periods of at least thirty minutes in length.  Pursuant to ULTA BEAUTY COSMETICS, LLC's and/or DOES' policy—as explained to Mr. Chan during ULTA BEAUTY COSMETICS, LLC's and/or DOES' training with his supervisors, Laura Valequez, Adrian Olivares, and Alma (last name unknown) — Mr. Chan was only provided thirty minutes for a meal period starting from when he left his workstation and ending when he returned to his workstation at the end of his meal period. In order to reach the breakroom to take his meal periods, Mr. Chan would have to travel through ULTA BEAUTY COSMETICS, LLC's and/or DOES' massive facility, which would take Mr. Chan approximately three minutes to do when starting his meal periods, and approximately another three minutes when he would leave the breakroom to end his meal periods. This travel time was performed while Mr. Chan was clocked out for his 30-minute meal period, as ULTA BEAUTY COSMETICS, LLC's and/or DOES' policy — as explained to Mr. Chan during his training on ULTA BEAUTY COSMETICS, LLC's and/or DOES' policies and procedures with, and enforced by, his supervisors, Laura Valequez, Adrian Olivares, and Alma (last name unknown) — required him to clock out for his meal period prior to traveling to the breakroom to take a meal period and to clock back in after traveling back from the breakroom at the end of his meal period. Because Mr. Chan was only authorized and permitted to take a thirty minute meal period, inclusive of the travel time to and from the breakroom—as explained to Mr. Chan during his training on ULTA BEAUTY COSMETICS, LLC's and/or DOES' policies and procedures with his supervisors, Laura Valequez, Adrian Olivares, and Alma (last name

1    unknown) —the time he would be provided for a meal period would end up being closer

2    to approximately twenty-four minutes or so, instead of thirty.  As a result, Mr. Chan and

3    non-exempt, hourly workers never receive[d] a full thirty-minute meal period in which they

4    were free to spend entirely outside of ULTA BEAUTY COSMETICS, LLC's and/or

5    DOES' control.

6    129.    As alleged herein, and pursuant to the policies and practices he was taught during his

7    training with his supervisors while working for ULTA BEAUTY COSMETICS, LLC

8    and/or DOES, Laura Valequez, Adrian Olivares, and Alma (last name unknown), Mr. Chan

9    was required to clock out before traveling to the break room to begin a meal period to clock

10    back in to work after traveling back from the break room to end a meal period. Mr. Chan

11    was a full-time employee for ULTA BEAUTY COSMETICS, LLC and/or DOES and

12    regularly worked approximately five days per week and more than ten hours in a day. As

13    Mr. Chan regularly worked more than five hours in a day, Mr. Chan was regularly entitled

14    to a meal period during his shift. Thus, Defendant ULTA BEAUTY COSMETICS, LLC

15    and/or DOES  failed to provide Mr. Chan with a duty-free, thirty-minute meal period in

16    compliance with California law in every workweek during the relevant statute of

17    limitations—which, on information and belief, includes the workweeks of March 25-31,

18    2018; April 1-7, 2018; April 8-14, 2018; April 15-21, 2018; April 22-28, 2018; April 29 –

19    May 5, 2018: May 6-12, 2018; May 13-19, 2018; May 20-26, 2018; May 27 – June 2,

20    2018; June 3-9, 2018; June 10-16, 2018; June 17-23, 2018; June 24-30, 2018; July 8-14,

21    2018; July 15-21, 2018; July 22-28, 2018; July 29 – August 4, 2018; August 5-11, 2018;

22    August 12-18, 2018; August 19-25, 2018; August 26 – September 1, 2018; September 2-

23    8, 2018; September 9-15, 2018; September 16-22, 2018; September 23-29, 2018;

24    September 30 – October 6, 2018; October 7-13, 2018; October 14-20, 2018; October 21-

25    27, 2018; October 28 – November 3, 2018; November 4-10, 2018; November 11-17, 2018;

26    November 25 – December 1, 2018; December 2-8, 2018; December 9-15, 2018; December

27    16-22, 2018; January 6-12, 2019; January 13-19, 2019; January 20-26, 2019; January 27 –

28

1    February 2, 2019; February 3-9, 2019; February 10-16, 2019; February 17-23, 2019;

2    February 24 – March 2, 2019; March 3-9, 2019; March 10-16, 2019; March 17-23, 2019;

3    March 24-30, 2019; March 31 – April 6, 2019; April 7-13, 2019; April 14-20, 2019; April

4    21-27, 2019; April 28 – May 4, 2019; May 5-11, 2019; May 12-18, 2019; May 19-25,

5    2019; May 26 – June 1, 2019; June 2-8, 2019; June 9-15, 2019; June 16-22, 2019; June 23-

6    29, 2019; July 7-13, 2019; July 14-20, 2019; July 21-27, 2019; July 28 – August 3, 2019;

7    August 4-10, 2019; August 11-17, 2019; August 18-24, 2019; August 25-31, 2019;

8    September 1-7, 2019; September 8-14, 2019; September 15-21, 2019; September 22-28,

9    2019; September 29 – October 5, 2019; October 6-12, 2019; October 13-19, 2019; October

10   20-26, 2019; October 27 – November 2, 2019; November 3-9, 2019; November 10-16,

11   2019; November 17-23, 2019; December 1-7, 2019; December 8-14, 2019; December 9-

12   21, 2019; January 5-11, 2020; January 12-18, 2020; January 19-25, 2020; January 26 –

13   February 1, 2020; February 2-8, 2020; February 9-15, 2020; February 16-22, 2020;

14   February 23-29, 2020; March 1-7, 2020; March 8-14, 2020; March 15-21, 2020; March

15   22-28, 2020; March 29 – April 4, 2020; April 5-11, 2020; April 12-18, 2020; April 19-25,

16   2020; April 26 – May 2, 2020; May 3-9, 2020; May 10-16, 2020; May 17-23, 2020; May

17   24-30, 2020; May 31 – June 6, 2020; June 7-13, 2020; June 14-20, 2020; and June 21-27,

18   2020— and, on information and belief, similarly failed to provide all the other non-exempt,

19   hourly workers with compliant meal periods when they worked shifts over five hours in

20   length.

21   130.    In addition, throughout the statutory period, in every workweek during the relevant statute

22          of limitations—which, on information and belief, includes the workweeks of April 7-13,

23          2019; April 14-20, 2019; and April 21-27, 2019— ULTA BEAUTY COSMETICS, LLC

24          and/or DOES did not provide Mr. Moreno and non-exempt, hourly workers with duty-free

25          meal periods of at least thirty minutes in length. Pursuant to ULTA BEAUTY

26          COSMETICS, LLC's and/or DOES' policy— as explained enforced by his supervisor —

27          Mr. Moreno was only provided thirty minutes for a meal period starting from when he left

28

1  his workstation and ending when he returned to his workstation at the end of his meal

2  period. In order to reach the breakroom to take his meal periods, Mr. Moreno would have

3  to travel through ULTA BEAUTY COSMETICS, LLC's and/or DOES' massive facility,

4  which would take Mr. Moreno approximately two to four minutes to do when starting his

5  meal periods, and approximately another two to four minutes when he would leave the

6  breakroom to end his meal periods. This travel time was performed while Mr. Moreno was

7  clocked out for his 30-minute meal period, as ULTA BEAUTY COSMETICS, LLC's

8  and/or DOES' policy — as explained enforced by his supervisor — required him to clock

9  out for his meal period prior to traveling to the breakroom to take a meal period and to

10  clock back in after traveling back from the breakroom at the end of his meal period.

11  Because Mr. Moreno was only authorized and permitted to take a thirty minute meal

12  period, inclusive of the travel time to and from the breakroom—as explained to Mr.

13  Moreno during his orientation with ULTA BEAUTY COSMETICS, LLC and/or DOES

14  and enforced by his supervisor, Stuart —the time he would be provided for a meal period

15  would end up being closer to approximately twenty-six to twenty-two minutes or so,

16  instead of thirty.  As a result, Mr. Moreno and non-exempt, hourly workers never receive[d]

17  a full thirty-minute meal period in which they were free to spend entirely outside of ULTA

18  BEAUTY COSMETICS, LLC's and/or DOES' control.

19  131.  As alleged herein, and pursuant to the policies and practices he was taught from and that

20  were enforced by his supervisor at ULTA BEAUTY COSMETICS, LLC's and/or DOES'

21  facility, Mr. Moreno was required to clock out before traveling to the break room to begin

22  a meal period to clock back in to work after traveling back from the break room to end a

23  meal period. Mr. Moreno was a full-time employee for ULTA BEAUTY COSMETICS,

24  LLC and/or DOES and regularly worked approximately four days per week and more than

25  ten hours in a day. As Mr. Moreno regularly worked more than five hours in a day, Ms.

26  Hansber was regularly entitled to a meal period during his shift. Thus, Defendant ULTA

27  BEAUTY COSMETICS, LLC and/or DOES  failed to provide Mr. Moreno with a duty-

28

1   free, thirty-minute meal period in compliance with California law in every workweek
2   during the relevant statute of limitations—which, on information and belief, includes the
3   workweeks of April 7-13, 2019; April 14-20, 2019; and April 21-27, 2019— and, on
4   information and belief, similarly failed to provide all the other non-exempt, hourly workers
5   with compliant meal periods when they worked shifts over five hours in length.

6   132.   Under California Labor Code section 226.7, if the employer does not provide an employee
7          a meal period in accordance with the above requirements, the employer shall pay the
8          employee one (1) hour of pay at the employee's regular rate of compensation for each
9          workday that the meal period is not provided.

10  133.   Defendant and/or DOES failed to provide thirty (30) minute, uninterrupted meal periods to
11         its hourly, non-exempt workers who worked for work periods of more than five (5)
12         consecutive hours. As such, Defendant and/or DOES non-exempt workers were required
13         to work over five (5) consecutive hours at a time without being provided a thirty (30)
14         minute uninterrupted meal period within that time.

15  134.   Defendant and/or DOES failed to provide thirty (30) minute, uninterrupted meal periods to
16         its Non-Exempt workers for every five (5) continuous hours worked.

17  135.   Defendant's and/or DOES' business model is such that Non-Exempt workers were
18         assigned too much work and insufficient help due to chronic understaffing to be able to
19         take meal periods. Thus, Non-Exempt workers are not able to take meal periods.

20  136.   Throughout the statutory period, Defendant's and/or DOES had a pattern and practice of
21         assigning too much work to be completed in too short of time frames, resulting in Plaintiffs
22         and those similarly situated not being able to take meal periods.

23  137.   Throughout the statutory period, Defendant and/or DOES maintained security policies and
24         practices, whereby Class Members were not provided control-free, off-premises meal
25         periods and/or were incentivized to forego control-free, off-premises meal periods.

26  138.   Defendant and/or DOES would not permit Plaintiffs and the Class to take 30-minute meal
27         periods unless specifically scheduled by Defendant and/or DOES or unless Plaintiffs and

28

the Class were expressly told to by Defendant and/or DOES. This routinely resulted in Plaintiffs and the Class members not being able to take a meal period, if at all, until after the fifth hour.

139.  Defendant and/or DOES did not have a policy of providing a second meal period before the end of the tenth hour.

140.  Failing to provide compensation for such unprovided or improperly provided meal periods, as alleged above, Defendant and/or DOES willfully violated the provisions of Labor Code sections 226.7, 512, and IWC Wage Order No. 7.

141.  As a result of the unlawful acts of Defendant and/or DOES, Plaintiffs and the Class they seek to represent have been deprived of premium wages, in amounts to be determined at trial, and are entitled to recovery of such amounts, plus interest and penalties thereon, attorneys' fees and costs, pursuant to Labor Code section 226.7, and IWC Wage Order No. 7-2001. Plaintiffs and the Class they seek to represent did not willfully waive their right to take meal periods through mutual consent with Defendant and/or DOES.

142.  WHEREFORE, Plaintiffs and the Class they seek to represent request relief as described below.

**FOURTH CAUSE OF ACTION AGAINST DEFENDANT AND/OR DOES: Failure to Authorize and Permit Rest Periods (Lab. Code § 226.7; IWC Wage Order No. 7-2001(12); Cal. Code Regs. Title 8 § 11090)**

143.  Plaintiffs and those similarly situated Class members hereby incorporate by reference each and every other paragraph in this Complaint herein, as if fully plead.

144.  Under IWC Wage Order No. 7, every employer shall authorize and permit all employees to take rest periods, "[t]he authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours worked or major fraction thereof." IWC Wage Order 7-2001(12). The time spent on rest periods "shall be counted as hours worked for which there shall be no deduction from wages." *Id.*

145.  Under California Labor Code section 226.7, if the employer does not provide an employee a rest period in accordance with the above requirements, the employer shall pay the

1    employee one (1) hour of pay at the employee's regular rate of compensation for each

2    workday that the rest period is not provided.

3    146.    At all relevant times, Defendant and/or DOES maintained policies and practices that failed

4    to authorize and/or permit rest period time based upon the total hours worked daily at the

5    rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof.

6    147.    In the alternative, Defendant and/or DOES business model was such that Non-Exempt

7    workers were assigned too much work with insufficient help due to chronic understaffing

8    whereby Plaintiffs and the Class had to work through their rest periods.

9    148.    Throughout the statutory period, Defendant and/or DOES had a pattern and practice of

10    assigning too much work to be completed in too short of time frames, resulting in Plaintiffs

11    and those similarly situated not being able to take rest periods.

12    149.    Throughout the statutory period, Defendant and/or DOES maintained security policies and

13    practices, whereby Class Members were not provided control-free, off-premises rest

14    periods and/or were incentivized to forego control-free, off-premises rest periods.

15    150.    Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES have a continuous and

16    consistent policy and/or practice of not providing rest periods to Plaintiffs and non-exempt,

17    hourly workers compliant with California law. Throughout the statutory period, in every

18    workweek during the relevant statute of limitations—which, on information and belief,

19    includes the workweeks of October 6-12, 2019; October 13-19, 2019; October 20-26, 2019;

20    October 27 – November 2, 2019; and November 3-9, 2019— ULTA BEAUTY

21    COSMETICS, LLC and/or DOES did not provide Ms. Hansber and non-exempt, hourly

22    workers with duty-free net ten minute paid rest periods for every four hours worked, or a

23    major fraction thereof.  Pursuant to ULTA BEAUTY COSMETICS, LLC's and/or DOES'

24    policy—as explained to Ms. Hansber during her orientation with ULTA BEAUTY

25    COSMETICS, LLC and/or DOES and enforced by her supervisor, Stuart — Ms. Hansber

26    was only provided ten minutes for a rest period starting from when she left her workstation

27    and ending when she returned to her workstation at the end of her rest period. If Ms.

28

1   Hansber wanted to maximize the amount of time she could spend free to enjoy her break,

2   Ms. Hansber would be forced stayed inside the facility. If she left the facility during her

3   rest period, she would have to subject herself to ULTA BEAUTY COSMETICS, LLC's

4   and/or DOES' harassing mandatory security protocols, as explained to her during her

5   orientation with Ulta Beauty and/or DOES and enforced by her supervisor, Stuart, which

6   included intrusive bag searches, which would take roughly five minutes each way. This

7   left Ms. Hansber with essentially zero time to go to her car, run errands, or conduct any

8   personal business during her rest periods. Thus, if Ms. Hansber wanted to avail herself of

9   being free to enjoy her full break outside of ULTA BEAUTY COSMETICS, LLC's and/or

10  DOES' premises, she could only do so if she sacrificed part of her time subject to ULTA

11  BEAUTY COSMETICS, LLC's and/or DOES' security protocols. As a result, Ms.

12  Hansber and non-exempt, hourly workers never receive[d] a rest period in which they were

13  free to leave the premises and spend entirely outside of ULTA BEAUTY COSMETICS,

14  LLC's and/or DOES' control.

15  151.  As alleged herein, and pursuant to the policies and practices she was taught during her

16  orientation with ULTA BEAUTY COSMETICS, LLC and/or DOES, as well as the

17  instruction of her supervisor, Stuart, Ms. Hansber was not permitted to skip the security

18  line and procedures where all the non-exempt, hourly workers had to wait to enter and exit

19  the facility during their rest periods. Ms. Hansber was a full-time employee for ULTA

20  BEAUTY COSMETICS, LLC and/or DOES and regularly worked approximately five

21  days per week and more than ten hours in a day. As Ms. Hansber regularly worked more

22  than three and a half hours in a day, Ms. Hansber was regularly entitled to a rest period

23  during her shift. Thus, Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES

24  failed to provide Ms. Hansber with a duty-free, net 10 minute rest period in compliance

25  with California law in every workweek during the relevant statute of limitations—which,

26  on information and belief, includes the workweeks of October 6-12, 2019; October 13-19,

27  2019; October 20-26, 2019; October 27 – November 2, 2019; and November 3-9, 2019—

28

1   and, on information and belief, similarly failed to provide all the other non-exempt, hourly

2   workers with compliant rest periods when they worked shifts over three and a half hours

3   in length.

4   152.   Similarly, throughout the statutory period, in every workweek during the relevant statute

5          of limitations—which, on information and belief, includes the workweeks of March 25-31,

6          2018; April 1-7, 2018; April 8-14, 2018; April 15-21, 2018; April 22-28, 2018; April 29 –

7          May 5, 2018: May 6-12, 2018; May 13-19, 2018; May 20-26, 2018; May 27 – June 2,

8          2018; June 3-9, 2018; June 10-16, 2018; June 17-23, 2018; June 24-30, 2018; July 8-14,

9          2018; July 15-21, 2018; July 22-28, 2018; July 29 – August 4, 2018; August 5-11, 2018;

10         August 12-18, 2018; August 19-25, 2018; August 26 – September 1, 2018; September 2-

11         8, 2018; September 9-15, 2018; September 16-22, 2018; September 23-29, 2018;

12         September 30 – October 6, 2018; October 7-13, 2018; October 14-20, 2018; October 21-

13         27, 2018; October 28 – November 3, 2018; November 4-10, 2018; November 11-17, 2018;

14         November 25 – December 1, 2018; December 2-8, 2018; December 9-15, 2018; December

15         16-22, 2018; January 6-12, 2019; January 13-19, 2019; January 20-26, 2019; January 27 –

16         February 2, 2019; February 3-9, 2019; February 10-16, 2019; February 17-23, 2019;

17         February 24 – March 2, 2019; March 3-9, 2019; March 10-16, 2019; March 17-23, 2019;

18         March 24-30, 2019; March 31 – April 6, 2019; April 7-13, 2019; April 14-20, 2019; April

19         21-27, 2019; April 28 – May 4, 2019; May 5-11, 2019; May 12-18, 2019; May 19-25,

20         2019; May 26 – June 1, 2019; June 2-8, 2019; June 9-15, 2019; June 16-22, 2019; June 23-

21         29, 2019; July 7-13, 2019; July 14-20, 2019; July 21-27, 2019; July 28 – August 3, 2019;

22         August 4-10, 2019; August 11-17, 2019; August 18-24, 2019; August 25-31, 2019;

23         September 1-7, 2019; September 8-14, 2019; September 15-21, 2019; September 22-28,

24         2019; September 29 – October 5, 2019; October 6-12, 2019; October 13-19, 2019; October

25         20-26, 2019; October 27 – November 2, 2019; November 3-9, 2019; November 10-16,

26         2019; November 17-23, 2019; December 1-7, 2019; December 8-14, 2019; December 9-

27         21, 2019; January 5-11, 2020; January 12-18, 2020; January 19-25, 2020; January 26 –

28

SECOND AMENDED CLASS ACTION COMPLAINT 64

1   February 1, 2020; February 2-8, 2020; February 9-15, 2020; February 16-22, 2020;

2   February 23-29, 2020; March 1-7, 2020; March 8-14, 2020; March 15-21, 2020; March

3   22-28, 2020; March 29 – April 4, 2020; April 5-11, 2020; April 12-18, 2020; April 19-25,

4   2020; April 26 – May 2, 2020; May 3-9, 2020; May 10-16, 2020; May 17-23, 2020; May

5   24-30, 2020; May 31 – June 6, 2020; June 7-13, 2020; June 14-20, 2020; and June 21-27,

6   2020— ULTA BEAUTY COSMETICS, LLC and/or DOES did not provide Mr. Chan and

7   non-exempt, hourly workers with duty-free net ten minute paid rest periods for every four

8   hours worked, or a major fraction thereof.  Pursuant to ULTA BEAUTY COSMETICS,

9   LLC's and/or DOES' policy—as explained to Mr. Chan during ULTA BEAUTY

10  COSMETICS, LLC's and/or DOES' training with his supervisors, Laura Valequez, Adrian

11  Olivares, and Alma (last name unknown) — Mr. Chan was only provided ten minutes for

12  a rest period starting from when he left his workstation and ending when he returned to his

13  workstation at the end of his rest period. If Mr. Chan wanted to maximize the amount of

14  time he could spend free to enjoy his break, Mr. Chan would be forced stayed inside the

15  facility. If he left the facility during his rest period, he would have to subject herself to

16  ULTA BEAUTY COSMETICS, LLC's and/or DOES' harassing mandatory security

17  protocols, as explained to him during his training on ULTA BEAUTY COSMETICS,

18  LLC's and/or DOES' policies and procedures, and enforced by his supervisors, Laura

19  Valequez, Adrian Olivares, and Alma (last name unknown), which included intrusive bag

20  searches, which would take roughly five minutes each way. This did not leave Mr. Chan

21  with any time to go to his car, run errands, or conduct any personal business during his rest

22  periods. Thus, if Mr. Chan wanted to avail himself of being free to enjoy his full break

23  outside of ULTA BEAUTY COSMETICS, LLC's and/or DOES' premises, he could only

24  do so if he sacrificed part of his time subject to ULTA BEAUTY COSMETICS, LLC's

25  and/or DOES' security protocols. As a result, Mr. Chan and non-exempt, hourly workers

26  never receive[d] a rest period in which they were free to leave the premises and spend

27  entirely outside of ULTA BEAUTY COSMETICS, LLC's and/or DOES' control.

28

153.    As alleged herein, and pursuant to the policies and practices he was taught during his training with his supervisors while working for ULTA BEAUTY COSMETICS, LLC and/or DOES, Laura Valequez, Adrian Olivares, and Alma (last name unknown), Mr. Chan was not permitted to skip the security line and procedures where all the non-exempt, hourly workers had to wait to enter and exit the facility during their rest periods. Mr. Chan was a full-time employee for ULTA BEAUTY COSMETICS, LLC and/or DOES and regularly worked approximately five days per week and more than ten hours in a day. As Mr. Chan regularly worked more than three and a half hours in a day, Mr. Chan was regularly entitled to a rest period during his shift. Thus, Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES failed to provide Mr. Chan with a duty-free, net 10 minute rest period in compliance with California law in every workweek during the relevant statute of limitations—which, on information and belief, includes the workweeks of March 25-31, 2018; April 1-7, 2018; April 8-14, 2018; April 15-21, 2018; April 22-28, 2018; April 29 – May 5, 2018: May 6-12, 2018; May 13-19, 2018; May 20-26, 2018; May 27 – June 2, 2018; June 3-9, 2018; June 10-16, 2018; June 17-23, 2018; June 24-30, 2018; July 8-14, 2018; July 15-21, 2018; July 22-28, 2018; July 29 – August 4, 2018; August 5-11, 2018; August 12-18, 2018; August 19-25, 2018; August 26 – September 1, 2018; September 2-8, 2018; September 9-15, 2018; September 16-22, 2018; September 23-29, 2018; September 30 – October 6, 2018; October 7-13, 2018; October 14-20, 2018; October 21-27, 2018; October 28 – November 3, 2018; November 4-10, 2018; November 11-17, 2018; November 25 – December 1, 2018; December 2-8, 2018; December 9-15, 2018; December 16-22, 2018; January 6-12, 2019; January 13-19, 2019; January 20-26, 2019; January 27 – February 2, 2019; February 3-9, 2019; February 10-16, 2019; February 17-23, 2019; February 24 – March 2, 2019; March 3-9, 2019; March 10-16, 2019; March 17-23, 2019; March 24-30, 2019; March 31 – April 6, 2019; April 7-13, 2019; April 14-20, 2019; April 21-27, 2019; April 28 – May 4, 2019; May 5-11, 2019; May 12-18, 2019; May 19-25, 2019; May 26 – June 1, 2019; June 2-8, 2019; June 9-15, 2019; June 16-22, 2019; June 23-

29, 2019; July 7-13, 2019; July 14-20, 2019; July 21-27, 2019; July 28 – August 3, 2019; August 4-10, 2019; August 11-17, 2019; August 18-24, 2019; August 25-31, 2019; September 1-7, 2019; September 8-14, 2019; September 15-21, 2019; September 22-28, 2019; September 29 – October 5, 2019; October 6-12, 2019; October 13-19, 2019; October 20-26, 2019; October 27 – November 2, 2019; November 3-9, 2019; November 10-16, 2019; November 17-23, 2019; December 1-7, 2019; December 8-14, 2019; December 9-21, 2019; January 5-11, 2020; January 12-18, 2020; January 19-25, 2020; January 26 – February 1, 2020; February 2-8, 2020; February 9-15, 2020; February 16-22, 2020; February 23-29, 2020; March 1-7, 2020; March 8-14, 2020; March 15-21, 2020; March 22-28, 2020; March 29 – April 4, 2020; April 5-11, 2020; April 12-18, 2020; April 19-25, 2020; April 26 – May 2, 2020; May 3-9, 2020; May 10-16, 2020; May 17-23, 2020; May 24-30, 2020; May 31 – June 6, 2020; June 7-13, 2020; June 14-20, 2020; and June 21-27, 2020— and, on information and belief, similarly failed to provide all the other non-exempt, hourly workers with compliant rest periods when they worked shifts over three and a half hours in length.

154.    In addition, throughout the statutory period, in every workweek during the relevant statute of limitations—which, on information and belief, includes the workweeks of April 7-13, 2019; April 14-20, 2019; and April 21-27, 2019— ULTA BEAUTY COSMETICS, LLC and/or DOES did not provide Mr. Moreno and non-exempt, hourly workers with duty-free net ten minute paid rest periods for every four hours worked, or a major fraction thereof. Pursuant to ULTA BEAUTY COSMETICS, LLC's and/or DOES' policy—which Mr. Moreno believes was explained to him and enforced by his supervisor — Mr. Moreno was only provided ten minutes for a rest period starting from when he left his workstation and ending when he returned to his workstation at the end of his rest period. If Mr. Moreno wanted to maximize the amount of time he could spend free to enjoy his break, Mr. Moreno would be forced stayed inside the facility. If he left the facility during his rest period, he would have to subject himself to ULTA BEAUTY COSMETICS, LLC's and/or

1    DOES' harassing mandatory security protocols, as explained to Mr. Moreno and enforced

2    by his supervisor at ULTA BEAUTY COSMETICS, LLC's and/or DOES' facility, which

3    included d intrusive bag searches, which would take roughly five minutes each way. This

4    left Mr. Moreno with no time to go to his car, run errands, or conduct any personal business

5    during his rest periods. Thus, if Mr. Moreno wanted to avail himself of being free to enjoy

6    his full break outside of ULTA BEAUTY COSMETICS, LLC's and/or DOES' premises,

7    he could only do so if he sacrificed part of his time subject to ULTA BEAUTY

8    COSMETICS, LLC's and/or DOES' security protocols. As a result, Mr. Moreno and non-

9    exempt, hourly workers never receive[d] a rest period in which they were free to leave the

10   premises and spend entirely outside of ULTA BEAUTY COSMETICS, LLC's and/or

11   DOES' control.

12   155.    As alleged herein, and pursuant to the policies and practices he was taught from and that

13   were enforced by his supervisor at ULTA BEAUTY COSMETICS, LLC's and/or DOES'

14   facility, Mr. Moreno was not permitted to skip the security line and procedures where all

15   the non-exempt, hourly workers had to wait to enter and exit the facility during their rest

16   periods. Mr. Moreno was a full-time employee for ULTA BEAUTY COSMETICS, LLC

17   and/or DOES and regularly worked approximately four days per week and more than ten

18   hours in a day. As Mr. Moreno regularly worked more than three and a half hours in a day,

19   Mr. Moreno was regularly entitled to a rest period during his shift. Thus, Defendant ULTA

20   BEAUTY COSMETICS, LLC and/or DOES failed to provide Mr. Moreno with a duty-

21   free, net 10 minute rest period in compliance with California law in every workweek during

22   the relevant statute of limitations—which, on information and belief, includes the

23   workweeks of April 7-13, 2019; April 14-20, 2019; and April 21-27, 2019— and, on

24   information and belief, similarly failed to provide all the other non-exempt, hourly workers

25   with compliant rest periods when they worked shifts over three and a half hours in length.

26   156.    Furthermore, throughout the statutory period, in every workweek during the relevant

27   statute of limitations—which, on information and belief, includes the workweeks of

28

1  October 6-12, 2019; October 13-19, 2019; October 20-26, 2019; October 27 – November

2  2, 2019; and November 3-9, 2019— ULTA BEAUTY COSMETICS, LLC and/or DOES

3  did not provide Ms. Hansber and non-exempt, hourly workers with duty-free net ten minute

4  paid rest periods for every four hours worked, or a major fraction thereof.  Pursuant to

5  ULTA BEAUTY COSMETICS, LLC's and/or DOES' policy—as explained to Ms.

6  Hansber during her orientation with ULTA BEAUTY COSMETICS, LLC and/or DOES

7  and enforced by her supervisor, Stuart — Ms. Hansber was only provided ten minutes for

8  a rest period starting from when she left her workstation and ending when she returned to

9  her workstation at the end of her rest period. In order to reach the breakroom to take her

10  rest periods, Ms. Hansber would have to travel through ULTA BEAUTY COSMETICS,

11  LLC's and/or DOES' massive facility, which would take Ms. Hansber approximately three

12  minutes to do when starting her rest periods, and approximately another three minutes

13  when she would leave the breakroom to end her rest periods. Because Ms. Hansber was

14  only authorized and permitted to take a ten minute rest period, inclusive of the travel time

15  to and from the breakroom—as explained to Ms. Hansber during her orientation with

16  ULTA BEAUTY COSMETICS, LLC and/or DOES and enforced by her supervisor, Stuart

17  —the time she would be provided for a rest period would end up being closer to

18  approximately four minutes or so, instead of ten.  As a result, Ms. Hansber and non-exempt,

19  hourly workers never receive[d] a full net ten-minute rest period in which they were free

20  to spend entirely outside of ULTA BEAUTY COSMETICS, LLC's and/or DOES' control.

21  157.    As alleged herein, and pursuant to the policies and practices she was taught during her

22  orientation with ULTA BEAUTY COSMETICS, LLC and/or DOES, as well as the

23  instruction of her supervisor, Stuart, Ms. Hansber was only provided ten minutes for a rest

24  period starting from when she left her workstation and ending when she returned to her

25  workstation at the end of her rest period. Ms. Hansber was a full-time employee for ULTA

26  BEAUTY COSMETICS, LLC and/or DOES and regularly worked approximately five

27  days per week and more than ten hours in a day. As Ms. Hansber regularly worked more

28

1    than three and a half hours in a day, Ms. Hansber was regularly entitled to a rest period

2    during her shift. Thus, Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES

3    failed to provide Ms. Hansber with a duty-free, net 10 minute rest period in compliance

4    with California law in every workweek during the relevant statute of limitations—which,

5    on information and belief, includes the workweeks of October 6-12, 2019; October 13-19,

6    2019; October 20-26, 2019; October 27 – November 2, 2019; and November 3-9, 2019—

7    and, on information and belief, similarly failed to provide all the other non-exempt, hourly

8    workers with compliant rest periods when they worked shifts over three and a half hours

9    in length.

10   158.    Similarly, throughout the statutory period, in every workweek during the relevant statute

11   of limitations—which, on information and belief, includes the workweeks of March 25-31,

12   2018; April 1-7, 2018; April 8-14, 2018; April 15-21, 2018; April 22-28, 2018; April 29 –

13   May 5, 2018: May 6-12, 2018; May 13-19, 2018; May 20-26, 2018; May 27 – June 2,

14   2018; June 3-9, 2018; June 10-16, 2018; June 17-23, 2018; June 24-30, 2018; July 8-14,

15   2018; July 15-21, 2018; July 22-28, 2018; July 29 – August 4, 2018; August 5-11, 2018;

16   August 12-18, 2018; August 19-25, 2018; August 26 – September 1, 2018; September 2-

17   8, 2018; September 9-15, 2018; September 16-22, 2018; September 23-29, 2018;

18   September 30 – October 6, 2018; October 7-13, 2018; October 14-20, 2018; October 21-

19   27, 2018; October 28 – November 3, 2018; November 4-10, 2018; November 11-17, 2018;

20   November 25 – December 1, 2018; December 2-8, 2018; December 9-15, 2018; December

21   16-22, 2018; January 6-12, 2019; January 13-19, 2019; January 20-26, 2019; January 27 –

22   February 2, 2019; February 3-9, 2019; February 10-16, 2019; February 17-23, 2019;

23   February 24 – March 2, 2019; March 3-9, 2019; March 10-16, 2019; March 17-23, 2019;

24   March 24-30, 2019; March 31 – April 6, 2019; April 7-13, 2019; April 14-20, 2019; April

25   21-27, 2019; April 28 – May 4, 2019; May 5-11, 2019; May 12-18, 2019; May 19-25,

26   2019; May 26 – June 1, 2019; June 2-8, 2019; June 9-15, 2019; June 16-22, 2019; June 23-

27   29, 2019; July 7-13, 2019; July 14-20, 2019; July 21-27, 2019; July 28 – August 3, 2019;

28

August 4-10, 2019; August 11-17, 2019; August 18-24, 2019; August 25-31, 2019;
September 1-7, 2019; September 8-14, 2019; September 15-21, 2019; September 22-28,
2019; September 29 – October 5, 2019; October 6-12, 2019; October 13-19, 2019; October
20-26, 2019; October 27 – November 2, 2019; November 3-9, 2019; November 10-16,
2019; November 17-23, 2019; December 1-7, 2019; December 8-14, 2019; December 9-
21, 2019; January 5-11, 2020; January 12-18, 2020; January 19-25, 2020; January 26 –
February 1, 2020; February 2-8, 2020; February 9-15, 2020; February 16-22, 2020;
February 23-29, 2020; March 1-7, 2020; March 8-14, 2020; March 15-21, 2020; March
22-28, 2020; March 29 – April 4, 2020; April 5-11, 2020; April 12-18, 2020; April 19-25,
2020; April 26 – May 2, 2020; May 3-9, 2020; May 10-16, 2020; May 17-23, 2020; May
24-30, 2020; May 31 – June 6, 2020; June 7-13, 2020; June 14-20, 2020; and June 21-27,
2020— ULTA BEAUTY COSMETICS, LLC and/or DOES did not provide Mr. Chan and
non-exempt, hourly workers with duty-free net ten minute paid rest periods for every four
hours worked, or a major fraction thereof.  Pursuant to ULTA BEAUTY COSMETICS,
LLC's and/or DOES' policy—as explained to Mr. Chan during ULTA BEAUTY
COSMETICS, LLC's and/or DOES' training with his supervisors, Laura Valequez, Adrian
Olivares, and Alma (last name unknown) — Mr. Chan was only provided ten minutes for
a rest period starting from when he left his workstation and ending when he returned to his
workstation at the end of his rest period. In order to reach the breakroom to take her rest
periods, Mr. Chan would have to travel through ULTA BEAUTY COSMETICS, LLC's
and/or DOES' massive facility, which would take Mr. Chan approximately three minutes
to do when starting his rest periods, and approximately another three minutes when he
would leave the breakroom to end his rest periods. Because Mr. Chan was only authorized
and permitted to take a ten minute rest period, inclusive of the travel time to and from the
breakroom— as explained to Mr. Chan during ULTA BEAUTY COSMETICS, LLC's
and/or DOES' training with his supervisors, Laura Valequez, Adrian Olivares, and Alma
(last name unknown) — the time he would be provided for a rest period would end up

1    being closer to approximately four minutes or so, instead of ten.  As a result, Mr. Chan and

2    non-exempt, hourly workers never receive[d] a full net ten-minute rest period in which

3    they were free to spend entirely outside of ULTA BEAUTY COSMETICS, LLC's and/or

4    DOES' control.

5    159.    As alleged herein, and pursuant to the policies and practices he was taught during his

6    training with his supervisors while working for ULTA BEAUTY COSMETICS, LLC

7    and/or DOES, Laura Valequez, Adrian Olivares, and Alma (last name unknown), Mr. Chan

8    was only provided ten minutes for a rest period starting from when he left his workstation

9    and ending when he returned to his workstation at the end of his rest period. Mr. Chan was

10    a full-time employee for ULTA BEAUTY COSMETICS, LLC and/or DOES and regularly

11    worked approximately five days per week and more than ten hours in a day. As Mr. Chan

12    regularly worked more than three and a half hours in a day, Mr. Chan was regularly entitled

13    to a rest period during his shift. Thus, Defendant ULTA BEAUTY COSMETICS, LLC

14    and/or DOES failed to provide Mr. Chan with a duty-free, net 10 minute rest period in

15    compliance with California law in every workweek during the relevant statute of

16    limitations—which, on information and belief, includes the workweeks of March 25-31,

17    2018; April 1-7, 2018; April 8-14, 2018; April 15-21, 2018; April 22-28, 2018; April 29 –

18    May 5, 2018: May 6-12, 2018; May 13-19, 2018; May 20-26, 2018; May 27 – June 2,

19    2018; June 3-9, 2018; June 10-16, 2018; June 17-23, 2018; June 24-30, 2018; July 8-14,

20    2018; July 15-21, 2018; July 22-28, 2018; July 29 – August 4, 2018; August 5-11, 2018;

21    August 12-18, 2018; August 19-25, 2018; August 26 – September 1, 2018; September 2-

22    8, 2018; September 9-15, 2018; September 16-22, 2018; September 23-29, 2018;

23    September 30 – October 6, 2018; October 7-13, 2018; October 14-20, 2018; October 21-

24    27, 2018; October 28 – November 3, 2018; November 4-10, 2018; November 11-17, 2018;

25    November 25 – December 1, 2018; December 2-8, 2018; December 9-15, 2018; December

26    16-22, 2018; January 6-12, 2019; January 13-19, 2019; January 20-26, 2019; January 27 –

27    February 2, 2019; February 3-9, 2019; February 10-16, 2019; February 17-23, 2019;

28

1    February 24 – March 2, 2019; March 3-9, 2019; March 10-16, 2019; March 17-23, 2019;

2    March 24-30, 2019; March 31 – April 6, 2019; April 7-13, 2019; April 14-20, 2019; April

3    21-27, 2019; April 28 – May 4, 2019; May 5-11, 2019; May 12-18, 2019; May 19-25,

4    2019; May 26 – June 1, 2019; June 2-8, 2019; June 9-15, 2019; June 16-22, 2019; June 23-

5    29, 2019; July 7-13, 2019; July 14-20, 2019; July 21-27, 2019; July 28 – August 3, 2019;

6    August 4-10, 2019; August 11-17, 2019; August 18-24, 2019; August 25-31, 2019;

7    September 1-7, 2019; September 8-14, 2019; September 15-21, 2019; September 22-28,

8    2019; September 29 – October 5, 2019; October 6-12, 2019; October 13-19, 2019; October

9    20-26, 2019; October 27 – November 2, 2019; November 3-9, 2019; November 10-16,

10   2019; November 17-23, 2019; December 1-7, 2019; December 8-14, 2019; December 9-

11   21, 2019; January 5-11, 2020; January 12-18, 2020; January 19-25, 2020; January 26 –

12   February 1, 2020; February 2-8, 2020; February 9-15, 2020; February 16-22, 2020;

13   February 23-29, 2020; March 1-7, 2020; March 8-14, 2020; March 15-21, 2020; March

14   22-28, 2020; March 29 – April 4, 2020; April 5-11, 2020; April 12-18, 2020; April 19-25,

15   2020; April 26 – May 2, 2020; May 3-9, 2020; May 10-16, 2020; May 17-23, 2020; May

16   24-30, 2020; May 31 – June 6, 2020; June 7-13, 2020; June 14-20, 2020; and June 21-27,

17   2020 — and, on information and belief, similarly failed to provide all the other non-exempt,

18   hourly workers with compliant rest periods when they worked shifts over three and a half

19   hours in length.

20   160.   In addition, throughout the statutory period, in every workweek during the relevant statute

21          of limitations—which, on information and belief, includes the workweeks of April 7-13,

22          2019; April 14-20, 2019; and April 21-27, 2019— ULTA BEAUTY COSMETICS, LLC

23          and/or DOES did not provide Mr. Moreno and non-exempt, hourly workers with duty-free

24          net ten minute paid rest periods for every four hours worked, or a major fraction

25          thereof.  Pursuant to ULTA BEAUTY COSMETICS, LLC's and/or DOES' policy— as

26          explained enforced by his supervisor — Mr. Moreno was only provided ten minutes for a

27          rest period starting from when he left his workstation and ending when he returned to his

28

SECOND AMENDED CLASS ACTION COMPLAINT 73

1    workstation at the end of his rest period. In order to reach the breakroom to take his rest

2    periods, Mr. Moreno would have to travel through ULTA BEAUTY COSMETICS, LLC's

3    and/or DOES' massive facility, which would take Mr. Moreno approximately two to four

4    minutes to do when starting his rest periods, and approximately another two to four minutes

5    when he would leave the breakroom to end his rest periods. Because Mr. Moreno was only

6    authorized and permitted to take a ten minute rest period, inclusive of the travel time to and

7    from the breakroom— as explained enforced by his supervisor — the time he would be

8    provided for a rest period would end up being closer to approximately two to six minutes

9    or so, instead of ten.  As a result, Mr. Moreno and non-exempt, hourly workers never

10   receive[d] a full net ten-minute rest period in which they were free to spend entirely outside

11   of ULTA BEAUTY COSMETICS, LLC's and/or DOES' control

12   161.  As alleged herein, and pursuant to the policies and practices he was taught from and that

13   were enforced by his supervisor at ULTA BEAUTY COSMETICS, LLC's and/or DOES'

14   facility, Mr. Moreno was only provided ten minutes for a rest period starting from when he

15   left his workstation and ending when he returned to his workstation at the end of his rest

16   period. Mr. Moreno was a full-time employee for ULTA BEAUTY COSMETICS, LLC

17   and/or DOES and regularly worked approximately four days per week and more than ten

18   hours in a day. As Mr. Moreno regularly worked more than three and a half hours in a day,

19   Mr. Moreno was regularly entitled to a rest period during his shift. Thus, Defendant ULTA

20   BEAUTY COSMETICS, LLC and/or DOES failed to provide Mr. Moreno with a duty-

21   free, net 10 minute rest period in compliance with California law in every workweek during

22   the relevant statute of limitations—which, on information and belief, includes the

23   workweeks of April 7-13, 2019; April 14-20, 2019; and April 21-27, 2019— and, on

24   information and belief, similarly failed to provide all the other non-exempt, hourly workers

25   with compliant rest periods when they worked shifts over three and a half hours in length.

26   162.  As a result of the unlawful acts of Defendant and/or DOES, Plaintiffs and the Class they

27   seek to represent have been deprived of premium wages, in amounts to be determined at

28

1    trial, and are entitled to recovery of such amounts, plus interest and penalties thereon,

2    attorneys' fees and costs, pursuant to Labor Code section 226.7, and IWC Wage Order No.

3    7-2001.

4    163.    WHEREFORE, Plaintiffs and the Class they seek to represent request relief as described

5    below.

6    **FIFTH CAUSE OF ACTION AGAINST DEFENDANT AND/OR DOES: Knowing

7    and Intentional Failure to Comply with Itemized Employee Wage Statement

     Provisions (Lab. Code §§ 226, 1174, 1175; IWC Wage Order No. 4; Cal. Code Regs.,

8    Title 8, § 11040)**

9    164.    Plaintiffs and those similarly situated Class members hereby incorporate by reference each

10   and every other paragraph in this Complaint herein as if fully plead.

11   165.    Labor Code section 226 subdivision (a) requires Defendant and/or DOES to, inter alia,

12   itemize in wage statements and accurately report the total hours worked and total wages

13   earned. Defendant and/or DOES have knowingly and intentionally failed to comply with

14   Labor Code section 226, subdivision (a), on each and every wage statement provided to

15   Plaintiffs and members of the proposed Class.

16   166.    Labor Code section 1174 requires Defendant and/or DOES to maintain and preserve, in a

17   centralized location, records showing the daily hours worked by and the wages paid to its

18   employees. Defendant and/or DOES have knowingly and intentionally failed to comply

19   with Labor Code section 1174. The failure of Defendant and/or DOES, and each of them,

20   to comply with Labor Code section 1174 is unlawful pursuant to Labor Code section 1175.

21   167.    Defendant and/or DOES failed to maintain accurate time records - as required by IWC

22   Wage Order No. 7, and Cal. Code Regs., Title 8 section 11090 - showing, among other

23   things, when the employee begins and ends each work period, the total daily hours worked

24   in itemized wage statements, total wages, bonuses and/or incentives earned, and all

25   deductions made.

26   168.    Defendant and/or DOES have knowingly and intentionally failed to provide Plaintiffs and

27   the Class members with accurate itemized wage statements which show: "(1) gross wages

28   earned, (2) total hours worked by the employee, . . . (4) all deductions, provided that all

1    deductions made on written orders of the employee may be aggregated and shown as one

2    item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is

3    paid, (7) the name of the employee and only the last four digits of his or her social security

4    number or an employee identification number other than a social security number, (8) the

5    name and address of the legal entity that is the employer and, if the employer is a farm

6    labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the

7    legal entity that secured the services of the employer, and (9) all applicable hourly rates in

8    effect during the pay period and the corresponding number of hours worked at each hourly

9    rate by the employee[.]" Labor Code section 226(a).

10   169.   Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES have a continuous and

11          consistent policy and/or practice of not providing Plaintiffs and non-exempt, hourly

12          workers with accurate, itemized wage statements in compliance with California law.

13          Throughout the statutory period, in every pay period during the relevant statute of

14          limitations—which, on information and belief, includes the pay periods which

15          encompassed the workweeks of October 6-12, 2019; October 13-19, 2019; October 20-26,

16          2019; October 27 – November 2, 2019; and November 3-9, 2019—Defendant ULTA

17          BEAUTY COSMETICS, LLC and/or DOES intentionally and willfully failed to provide

18          Ms. Hansber and non-exempt, hourly workers with complete and accurate wage statements

19          by failing to include the correct total number of hours worked by Ms. Hansber and non-

20          exempt, hourly workers and failing to include the correct hourly rate on their wage

21          statements as required under Labor Code § 226(a)(2) and (a)(9), which is entitled to a

22          presumption of injury under Labor Code § 226(e)(2)(B)(i). As a result, ULTA BEAUTY

23          COSMETICS, LLC and/or DOES never provided Ms. Hansber and non-exempt, hourly

24          workers with wage statements in compliance with California law.

25   170.   Similarly, throughout the statutory period, in every pay period during the relevant statute

26          of limitations—which, on information and belief, includes the pay periods which

27          encompassed the workweeks of March 25-31, 2018; April 1-7, 2018; April 8-14, 2018;

28

1    April 15-21, 2018; April 22-28, 2018; April 29 – May 5, 2018: May 6-12, 2018; May 13-

2    19, 2018; May 20-26, 2018; May 27 – June 2, 2018; June 3-9, 2018; June 10-16, 2018;

3    June 17-23, 2018; June 24-30, 2018; July 8-14, 2018; July 15-21, 2018; July 22-28, 2018;

4    July 29 – August 4, 2018; August 5-11, 2018; August 12-18, 2018; August 19-25, 2018;

5    August 26 – September 1, 2018; September 2-8, 2018; September 9-15, 2018; September

6    16-22, 2018; September 23-29, 2018; September 30 – October 6, 2018; October 7-13,

7    2018; October 14-20, 2018; October 21-27, 2018; October 28 – November 3, 2018;

8    November 4-10, 2018; November 11-17, 2018; November 25 – December 1, 2018;

9    December 2-8, 2018; December 9-15, 2018; December 16-22, 2018; January 6-12, 2019;

10   January 13-19, 2019; January 20-26, 2019; January 27 – February 2, 2019; February 3-9,

11   2019; February 10-16, 2019; February 17-23, 2019; February 24 – March 2, 2019; March

12   3-9, 2019; March 10-16, 2019; March 17-23, 2019; March 24-30, 2019; March 31 – April

13   6, 2019; April 7-13, 2019; April 14-20, 2019; April 21-27, 2019; April 28 – May 4, 2019;

14   May 5-11, 2019; May 12-18, 2019; May 19-25, 2019; May 26 – June 1, 2019; June 2-8,

15   2019; June 9-15, 2019; June 16-22, 2019; June 23-29, 2019; July 7-13, 2019; July 14-20,

16   2019; July 21-27, 2019; July 28 – August 3, 2019; August 4-10, 2019; August 11-17, 2019;

17   August 18-24, 2019; August 25-31, 2019; September 1-7, 2019; September 8-14, 2019;

18   September 15-21, 2019; September 22-28, 2019; September 29 – October 5, 2019; October

19   6-12, 2019; October 13-19, 2019; October 20-26, 2019; October 27 – November 2, 2019;

20   November 3-9, 2019; November 10-16, 2019; November 17-23, 2019; December 1-7,

21   2019; December 8-14, 2019; December 9-21, 2019; January 5-11, 2020; January 12-18,

22   2020; January 19-25, 2020; January 26 – February 1, 2020; February 2-8, 2020; February

23   9-15, 2020; February 16-22, 2020; February 23-29, 2020; March 1-7, 2020; March 8-14,

24   2020; March 15-21, 2020; March 22-28, 2020; March 29 – April 4, 2020; April 5-11, 2020;

25   April 12-18, 2020; April 19-25, 2020; April 26 – May 2, 2020; May 3-9, 2020; May 10-

26   16, 2020; May 17-23, 2020; May 24-30, 2020; May 31 – June 6, 2020; June 7-13, 2020;

27   June 14-20, 2020; and June 21-27, 2020—Defendant ULTA BEAUTY COSMETICS,

28

1   LLC and/or DOES intentionally and willfully failed to provide Mr. Chan and non-exempt,

2   hourly workers with complete and accurate wage statements by failing to include the

3   correct total number of hours worked by Mr. Chan and non-exempt, hourly workers and

4   failing to include the correct hourly rate on their wage statements as required under Labor

5   Code § 226(a)(2) and (a)(9), which is entitled to a presumption of injury under Labor Code

6   § 226(e)(2)(B)(i). As a result, ULTA BEAUTY COSMETICS, LLC and/or DOES never

7   provided Mr. Chan and non-exempt, hourly workers with wage statements in compliance

8   with California law

9   171.   In addition, throughout the statutory period, in every pay period during the relevant statute

10  of limitations—which, on information and belief, includes the pay periods which

11  encompassed the workweeks of April 7-13, 2019; April 14-20, 2019; and April 21-27,

12  2019—Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES intentionally and

13  willfully failed to provide Mr. Moreno and non-exempt, hourly workers with complete and

14  accurate wage statements by failing to include the correct total number of hours worked by

15  Mr. Moreno and non-exempt, hourly workers and failing to include the correct hourly rate

16  on their wage statements as required under Labor Code § 226(a)(2) and (a)(9), which is

17  entitled to a presumption of injury under Labor Code § 226(e)(2)(B)(i). As a result, ULTA

18  BEAUTY COSMETICS, LLC and/or DOES never provided Mr. Moreno and non-exempt,

19  hourly workers with wage statements in compliance with California law

20  172.   Furthermore, throughout the statutory period, in every pay period during the relevant

21  statute of limitations—which, on information and belief, includes the pay periods which

22  encompassed the workweeks of October 6-12, 2019; October 13-19, 2019; October 20-26,

23  2019; October 27 – November 2, 2019; and November 3-9, 2019—Ms. Hansber has

24  alleged that pursuant to Defendant ULTA BEAUTY COSMETICS, LLC's and/or DOES'

25  policy—as explained to Ms. Hansber during her orientation with ULTA BEAUTY

26  COSMETICS, LLC and/or DOES and enforced by her supervisor, Stuart — Ms. Hansber

27  was required to wait in line and go through ULTA BEAUTY COSMETICS, LLC and/or

28

DOES security procedures every day she worked before clocking in to start her shift and was required to spend time traveling through ULTA BEAUTY COSMETICS, LLC's and/or DOES' massive facility to and from the breakroom while off the clock during her unpaid meal periods. Ms. Hansber alleges that this time qualifies as "hours worked" under California law that were required to be listed on her wage statements, but despite working this additional time every day she worked, it was never present on her wage statements. Additionally, Ms. Hansber has alleged that as a result of Defendant ULTA BEAUTY COSMETICS, LLC's and/or DOES' unlawful meal and rest period policies —as explained to Ms. Hansber during her orientation with ULTA BEAUTY COSMETICS, LLC and/or DOES and enforced by her supervisor, Stuart — Ms. Hansber was never provided a fully thirty-minute meal period or a net ten-minute rest period in which she was free to leave the premises and spend entirely outside of ULTA BEAUTY COSMETICS, LLC's and/or DOES' control. Under Labor Code § 226.7, Ms. Hansber is entitled to premium wages for each shift she was not provided a complaint meal or rest period. Section 226.7 premiums constitute wages and are therefore required to be included in wage statements under Labor Code § 226. However, ULTA BEAUTY COSMETICS, LLC and/or DOES failed to include any such premiums on her wage statements. As a result, ULTA BEAUTY COSMETICS, LLC and/or DOES never provided Ms. Hansber and non-exempt, hourly workers with wage statements in compliance with California law.

173. Similarly, throughout the statutory period, in every pay period during the relevant statute of limitations— which, on information and belief, includes the pay periods which encompassed the workweeks of March 25-31, 2018; April 1-7, 2018; April 8-14, 2018; April 15-21, 2018; April 22-28, 2018; April 29 – May 5, 2018: May 6-12, 2018; May 13-19, 2018; May 20-26, 2018; May 27 – June 2, 2018; June 3-9, 2018; June 10-16, 2018; June 17-23, 2018; June 24-30, 2018; July 8-14, 2018; July 15-21, 2018; July 22-28, 2018; July 29 – August 4, 2018; August 5-11, 2018; August 12-18, 2018; August 19-25, 2018; August 26 – September 1, 2018; September 2-8, 2018; September 9-15, 2018; September

16-22, 2018; September 23-29, 2018; September 30 – October 6, 2018; October 7-13, 2018; October 14-20, 2018; October 21-27, 2018; October 28 – November 3, 2018; November 4-10, 2018; November 11-17, 2018; November 25 – December 1, 2018; December 2-8, 2018; December 9-15, 2018; December 16-22, 2018; January 6-12, 2019; January 13-19, 2019; January 20-26, 2019; January 27 – February 2, 2019; February 3-9, 2019; February 10-16, 2019; February 17-23, 2019; February 24 – March 2, 2019; March 3-9, 2019; March 10-16, 2019; March 17-23, 2019; March 24-30, 2019; March 31 – April 6, 2019; April 7-13, 2019; April 14-20, 2019; April 21-27, 2019; April 28 – May 4, 2019; May 5-11, 2019; May 12-18, 2019; May 19-25, 2019; May 26 – June 1, 2019; June 2-8, 2019; June 9-15, 2019; June 16-22, 2019; June 23-29, 2019; July 7-13, 2019; July 14-20, 2019; July 21-27, 2019; July 28 – August 3, 2019; August 4-10, 2019; August 11-17, 2019; August 18-24, 2019; August 25-31, 2019; September 1-7, 2019; September 8-14, 2019; September 15-21, 2019; September 22-28, 2019; September 29 – October 5, 2019; October 6-12, 2019; October 13-19, 2019; October 20-26, 2019; October 27 – November 2, 2019; November 3-9, 2019; November 10-16, 2019; November 17-23, 2019; December 1-7, 2019; December 8-14, 2019; December 9-21, 2019; January 5-11, 2020; January 12-18, 2020; January 19-25, 2020; January 26 – February 1, 2020; February 2-8, 2020; February 9-15, 2020; February 16-22, 2020; February 23-29, 2020; March 1-7, 2020; March 8-14, 2020; March 15-21, 2020; March 22-28, 2020; March 29 – April 4, 2020; April 5-11, 2020; April 12-18, 2020; April 19-25, 2020; April 26 – May 2, 2020; May 3-9, 2020; May 10-16, 2020; May 17-23, 2020; May 24-30, 2020; May 31 – June 6, 2020; June 7-13, 2020; June 14-20, 2020; and June 21-27, 2020—Mr. Chan has alleged that pursuant to Defendant ULTA BEAUTY COSMETICS, LLC's and/or DOES' policy— as explained to Mr. Chan during ULTA BEAUTY COSMETICS, LLC's and/or DOES' training with his supervisors, Laura Valequez, Adrian Olivares, and Alma (last name unknown) — Mr. Chan was required to wait in line and go through ULTA BEAUTY COSMETICS, LLC and/or DOES security procedures every day he worked before clocking in to start his shift

1   and was required to spend time traveling through ULTA BEAUTY COSMETICS, LLC's

2   and/or DOES' massive facility to and from the breakroom while off the clock during his

3   unpaid meal periods. Mr. Chan alleges that this time qualifies as "hours worked" under

4   California law that were required to be listed on his wage statements, but despite working

5   this additional time every day he worked, it was never present on his wage statements.

6   Additionally, Mr. Chan has alleged that as a result of Defendant ULTA BEAUTY

7   COSMETICS, LLC's and/or DOES' unlawful meal and rest period policies — as explained

8   to Mr. Chan during ULTA BEAUTY COSMETICS, LLC's and/or DOES' training with

9   his supervisors, Laura Valequez, Adrian Olivares, and Alma (last name unknown) — Mr.

10   Chan was never provided a fully thirty-minute meal period or a net ten-minute rest period

11   in which he was free to leave the premises and spend entirely outside of ULTA BEAUTY

12   COSMETICS, LLC's and/or DOES' control. Under Labor Code § 226.7, Mr. Chan is

13   entitled to premium wages for each shift he was not provided a complaint meal or rest

14   period. Section 226.7 premiums constitute wages and are therefore required to be included

15   in wage statements under Labor Code § 226. However, ULTA BEAUTY COSMETICS,

16   LLC and/or DOES failed to include any such premiums on his wage statements. As a result,

17   ULTA BEAUTY COSMETICS, LLC and/or DOES never provided Mr. Chan and non-

18   exempt, hourly workers with wage statements in compliance with California law.

19  174.  In addition, throughout the statutory period, in every pay period during the relevant statute

20   of limitations—which, on information and belief, includes the pay periods which

21   encompassed the workweeks of April 7-13, 2019; April 14-20, 2019; and April 21-27,

22   2019—Mr. Moreno has alleged that pursuant to Defendant ULTA BEAUTY

23   COSMETICS, LLC's and/or DOES' policy— which Mr. Moreno believes was explained

24   to him and enforced by his supervisor — Mr. Moreno was required to wait in line and go

25   through ULTA BEAUTY COSMETICS, LLC and/or DOES security procedures every day

26   he worked before clocking in to start his shift and was required to spend time traveling

27   through ULTA BEAUTY COSMETICS, LLC and/or DOES' massive facility to and

28

1    from the breakroom while off the clock during his unpaid meal periods. Mr. Moreno alleges

2    that this time qualifies as "hours worked" under California law that were required to be

3    listed on his wage statements, but despite working this additional time every day he

4    worked, it was never present on his wage statements. Additionally, Mr. Moreno has alleged

5    that as a result of Defendant ULTA BEAUTY COSMETICS, LLC's and/or DOES'

6    unlawful meal and rest period policies — as explained enforced by his supervisor — Mr.

7    Moreno was never provided a fully thirty-minute meal period or a net ten-minute rest

8    period in which he was free to leave the premises and spend entirely outside of ULTA

9    BEAUTY COSMETICS, LLC's and/or DOES' control. Under Labor Code § 226.7, Mr.

10   Moreno is entitled to premium wages for each shift he was not provided a complaint meal

11   or rest period. Section 226.7 premiums constitute wages and are therefore required to be

12   included  in wage statements under Labor  Code  §  226. However,  ULTA  BEAUTY

13   COSMETICS, LLC and/or DOES failed to include any such premiums on his wage

14   statements. As a result, ULTA BEAUTY COSMETICS, LLC and/or DOES never provided

15   Mr. Moreno and non-exempt, hourly workers with wage statements in compliance with

16   California law.

17   175.    As a direct result of Defendant and/or DOES unlawful acts, Plaintiffs and the Class they

18          intend to represent have been damaged and are entitled to recovery of such amounts, plus

19          interest thereon, attorneys' fees, and costs, pursuant to Labor Code section 226.

20   176.    WHEREFORE, Plaintiffs and the Class they seek to represent request relief as described

21          below.

22   **SIXTH CAUSE OF ACTION AGAINST DEFENDANT AND/OR DOES: Failure to**

23   **Pay All Wages Due at the Time of Termination from Employment (Lab. Code §§ 201-**
     **203)**

24   177.    Plaintiffs and those similarly situated Class members hereby incorporate by reference each

25          and every other paragraph in this Complaint herein as if fully plead.

26   178.    Plaintiffs terminated their employment with Defendant and/or DOES.

27   179.    Whether  Plaintiffs  voluntarily  or  involuntarily  terminated  their  employment  with

28

1    Defendant and/or DOES, Defendant and/or DOES did not timely pay them straight time

2    wages owed at the time of their termination.

3  180.   Whether Plaintiffs voluntarily or involuntarily terminated their employment with

4    Defendant and/or DOES, Defendant and/or DOES did not timely pay them overtime wages

5    owed at the time of their termination.

6  181.   Whether Plaintiffs voluntarily or involuntarily terminated their employment with

7    Defendant and/or DOES, Defendant and/or DOES did not timely pay them meal and/or

8    rest period premiums owed at the time of their termination.

9  182.   Numerous members of the Class are no longer employed by Defendant and/or DOES. They

10    were either fired or quit Defendant's and/or DOES' employ. Defendant and/or DOES did

11    not pay all timely wages owed at the time of their termination. Defendant and/or DOES

12    did not pay all premium wages owed at the time of their termination.

13  183.   Labor Code section 203 provides that, if an employer willfully fails to pay, without

14    abatement or reduction, in accordance with Labor Code sections 201, 201.5, 202 and 205.5,

15    any wages of an employee who is discharged or who quits, the wages of the employee shall

16    continue at the same rate, for up to thirty (30) days from the due date thereof, until paid or

17    until an action therefore is commenced.

18  184.   Defendant and/or DOES failed to pay Plaintiffs a sum certain at the time of their

19    termination or within seventy-two (72) hours of their resignation, and have failed to pay

20    those sums for thirty (30) days thereafter. Pursuant to the provisions of Labor Code section

21    203, Plaintiffs are entitled to a penalty in the amount of their daily wage, multiplied by

22    thirty (30) days.

23  185.   When Plaintiffs and those members of the Class who are former employees of Defendant

24    and/or DOES separated from Defendant's and/or DOES' employ, Defendant and/or DOES

25    willfully failed to pay all straight time wages, overtime wages, meal period premiums,

26    and/or rest period premiums owed at the time of termination.

27  186.   Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES have a continuous and

28

consistent policy and/or practice of not paying Plaintiffs and non-exempt, hourly workers all wages owed to them upon termination of their employment in compliance with California law. For example, Ms. Hansber's employment with ULTA BEAUTY COSMETICS, LLC and/or DOES ended in approximately November 2019. Throughout the statutory period, in every workweek during the relevant statute of limitations—which, on information and belief, includes the workweeks of October 6-12, 2019; October 13-19, 2019; October 20-26, 2019; October 27 – November 2, 2019; and November 3-9, 2019— Ms. Hansber has alleged that pursuant to Defendant ULTA BEAUTY COSMETICS, LLC's and/or DOES' policy—as explained to Ms. Hansber during her orientation with ULTA BEAUTY COSMETICS, LLC and/or DOES and enforced by her supervisor, Stuart — Ms. Hansber was required to wait in line and go through ULTA BEAUTY COSMETICS, LLC and/or DOES security procedures every day she worked before clocking in to start her shift and was required to spend time traveling through ULTA BEAUTY COSMETICS, LLC's and/or DOES' massive facility to and from the breakroom while off the clock during her unpaid meal periods. Ms. Hansber alleges that this time qualifies as "hours worked" under California law for which Ms. Hansber and non-exempt, hourly workers should have been compensated but were never paid wages for. Additionally, Ms. Hansber has alleged that as a result of Defendant ULTA BEAUTY COSMETICS, LLC's and/or DOES' unlawful meal and rest period policies —as explained to Ms. Hansber during her orientation with ULTA BEAUTY COSMETICS, LLC and/or DOES and enforced by her supervisor, Stuart — Ms. Hansber was never provided a fully thirty-minute meal period or a net ten-minute rest period in which she was free to leave the premises and spend entirely outside of ULTA BEAUTY COSMETICS, LLC's and/or DOES' control. Under Labor Code § 226.7, Ms. Hansber is entitled to premium wages for each shift she was not provided a complaint meal or rest period. Section 226.7 premiums constitute wages and are therefore required to be paid within seventy-two (72) hours of termination of employment. However, ULTA BEAUTY COSMETICS, LLC and/or DOES

1    have failed to pay any such wages to Ms. Hansber and non-exempt, hourly workers since
2    their respective employment ended. As a result, ULTA BEAUTY COSMETICS, LLC
3    and/or DOES have failed to pay Ms. Hansber and non-exempt, hourly workers all wages
4    that were due at the termination of their employment in compliance with California law.

5    187.    Similarly, Mr. Chan's employment with ULTA BEAUTY COSMETICS, LLC and/or
6    DOES ended on approximately July 2, 2020. Throughout the statutory period, in every
7    workweek during the relevant statute of limitations—which, on information and belief,
8    includes the workweeks of March 25-31, 2018; April 1-7, 2018; April 8-14, 2018; April
9    15-21, 2018; April 22-28, 2018; April 29 – May 5, 2018: May 6-12, 2018; May 13-19,
10   2018; May 20-26, 2018; May 27 – June 2, 2018; June 3-9, 2018; June 10-16, 2018; June
11   17-23, 2018; June 24-30, 2018; July 8-14, 2018; July 15-21, 2018; July 22-28, 2018; July
12   29 – August 4, 2018; August 5-11, 2018; August 12-18, 2018; August 19-25, 2018; August
13   26 – September 1, 2018; September 2-8, 2018; September 9-15, 2018; September 16-22,
14   2018; September 23-29, 2018; September 30 – October 6, 2018; October 7-13, 2018;
15   October 14-20, 2018; October 21-27, 2018; October 28 – November 3, 2018; November
16   4-10, 2018; November 11-17, 2018; November 25 – December 1, 2018; December 2-8,
17   2018; December 9-15, 2018; December 16-22, 2018; January 6-12, 2019; January 13-19,
18   2019; January 20-26, 2019; January 27 – February 2, 2019; February 3-9, 2019; February
19   10-16, 2019; February 17-23, 2019; February 24 – March 2, 2019; March 3-9, 2019; March
20   10-16, 2019; March 17-23, 2019; March 24-30, 2019; March 31 – April 6, 2019; April 7-
21   13, 2019; April 14-20, 2019; April 21-27, 2019; April 28 – May 4, 2019; May 5-11, 2019;
22   May 12-18, 2019; May 19-25, 2019; May 26 – June 1, 2019; June 2-8, 2019; June 9-15,
23   2019; June 16-22, 2019; June 23-29, 2019; July 7-13, 2019; July 14-20, 2019; July 21-27,
24   2019; July 28 – August 3, 2019; August 4-10, 2019; August 11-17, 2019; August 18-24,
25   2019; August 25-31, 2019; September 1-7, 2019; September 8-14, 2019; September 15-21,
26   2019; September 22-28, 2019; September 29 – October 5, 2019; October 6-12, 2019;
27   October 13-19, 2019; October 20-26, 2019; October 27 – November 2, 2019; November

28

3-9, 2019; November 10-16, 2019; November 17-23, 2019; December 1-7, 2019; December 8-14, 2019; December 9-21, 2019; January 5-11, 2020; January 12-18, 2020; January 19-25, 2020; January 26 – February 1, 2020; February 2-8, 2020; February 9-15, 2020; February 16-22, 2020; February 23-29, 2020; March 1-7, 2020; March 8-14, 2020; March 15-21, 2020; March 22-28, 2020; March 29 – April 4, 2020; April 5-11, 2020; April 12-18, 2020; April 19-25, 2020; April 26 – May 2, 2020; May 3-9, 2020; May 10-16, 2020; May 17-23, 2020; May 24-30, 2020; May 31 – June 6, 2020; June 7-13, 2020; June 14-20, 2020; and June 21-27, 2020—Mr. Chan has alleged that pursuant to Defendant ULTA BEAUTY COSMETICS, LLC's and/or DOES' policy— as explained to Mr. Chan during ULTA BEAUTY COSMETICS, LLC's and/or DOES' training with his supervisors, Laura Valequez, Adrian Olivares, and Alma (last name unknown) — Mr. Chan was required to wait in line and go through ULTA BEAUTY COSMETICS, LLC and/or DOES security procedures every day he worked before clocking in to start his shift and was required to spend time traveling through ULTA BEAUTY COSMETICS, LLC's and/or DOES' massive facility to and from the breakroom while off the clock during his unpaid meal periods. Mr. Chan alleges that this time qualifies as "hours worked" under California law for which Mr. Chan and non-exempt, hourly workers should have been compensated but were never paid wages for. Additionally, Mr. Chan has alleged that as a result of Defendant ULTA BEAUTY COSMETICS, LLC's and/or DOES' unlawful meal and rest period policies — as explained to Mr. Chan during ULTA BEAUTY COSMETICS, LLC's and/or DOES' training with his supervisors, Laura Valequez, Adrian Olivares, and Alma (last name unknown) — Mr. Chan was never provided a fully thirty-minute meal period or a net ten-minute rest period in which he was free to leave the premises and spend entirely outside of ULTA BEAUTY COSMETICS, LLC's and/or DOES' control. Under Labor Code § 226.7, Mr. Chan is entitled to premium wages for each shift he was not provided a complaint meal or rest period. Section 226.7 premiums constitute wages and are therefore required to be paid within seventy-two (72) hours of termination of employment. However,

1    ULTA BEAUTY COSMETICS, LLC and/or DOES have failed to pay any such wages to

2    Mr. Chan and non-exempt, hourly workers since their respective employment ended. As a

3    result, ULTA BEAUTY COSMETICS, LLC and/or DOES have failed to pay Mr. Chan

4    and non-exempt, hourly workers all wages that were due at the termination of their

5    employment in compliance with California law.

6    188.    In addition, Mr. Moreno's employment with ULTA BEAUTY COSMETICS, LLC and/or

7    DOES ended in approximately May 2019. Throughout the statutory period, in every

8    workweek during the relevant statute of limitations—which, on information and belief,

9    includes the workweeks of April 7-13, 2019; April 14-20, 2019; and April 21-27, 2019—

10    Mr. Moreno has alleged that pursuant to Defendant ULTA BEAUTY COSMETICS,

11    LLC's and/or DOES' policy— which Mr. Moreno believes was explained to him and

12    enforced by his supervisor — Mr. Moreno was required to wait in line and go through

13    ULTA BEAUTY COSMETICS, LLC and/or DOES security procedures every day he

14    worked before clocking in to start his shift and was required to spend time traveling through

15    ULTA BEAUTY COSMETICS, LLC's and/or DOES' massive facility to and from the

16    breakroom while off the clock during his unpaid meal periods. Mr. Moreno alleges that

17    this time qualifies as "hours worked" under California law for which Mr. Moreno and non-

18    exempt, hourly workers should have been compensated but were never paid wages for.

19    Additionally, Mr. Moreno has alleged that as a result of Defendant ULTA BEAUTY

20    COSMETICS, LLC's and/or DOES' unlawful meal and rest period policies — as explained

21    enforced by his supervisor — Mr. Moreno was never provided a fully thirty-minute meal

22    period or a net ten-minute rest period in which he was free to leave the premises and spend

23    entirely outside of ULTA BEAUTY COSMETICS, LLC's and/or DOES' control. Under

24    Labor Code § 226.7, Mr. Moreno is entitled to premium wages for each shift he was not

25    provided a complaint meal or rest period. Section 226.7 premiums constitute wages and

26    are therefore required to be paid within seventy-two (72) hours of termination of

27    employment. However, ULTA BEAUTY COSMETICS, LLC and/or DOES have failed to

28

1    pay any such wages to Mr. Moreno and non-exempt, hourly workers since their respective

2    employment ended. As a result, ULTA BEAUTY COSMETICS, LLC and/or DOES have

3    failed to pay Mr. Moreno and non-exempt, hourly workers all wages that were due at the

4    termination of their employment in compliance with California law

5    189.    Defendant and/or DOES failure to pay said wages to Plaintiffs and members of the Class

6    they seek to represent, was willful in that Defendant and/or DOES and each of them knew

7    the wages to be due, but failed to pay them.

8    190.    As a consequence of Defendant's and/or DOES' willful conduct in not paying wages owed

9    at the time of separation from employment, Plaintiffs and members of the proposed Class

10    are entitled to thirty (30) days' worth of wages as a penalty under Labor Code section 203,

11    together with interest thereon and attorneys' fees and costs.

12    191.    WHEREFORE, Plaintiffs and the Class they seek to represent request relief as described

13    below.

14    **SEVENTH CAUSE OF ACTION AGAINST DEFENDANT AND/OR DOES:**
**Irregular Pay Periods (Lab.  Code §§ 204; 210)**

15

16    192.    Plaintiffs and those similarly situated Class members hereby incorporate by reference each

17    and every other paragraph in this Complaint herein as if fully plead.

18    193.    All wages due to any employee are due and payable twice during each month and all

19    overtime wages must be paid no later than the payday for the next regular payroll period

20    pursuant to Labor Code §204.

21    194.    Labor Code §210 provides, without limitation, that in addition to, and entirely independent

22    and apart from, any other penalty provided by the Labor Code, every person who fails to

23    pay the wages of each employee as provided in §§201.3, 204, 204b, 204.1, 204.2,

24    205,205.5, and 1197.5 of the Labor Code, shall be subject to penalty.

25    195.    Defendant and/or DOES failed to pay wages to Plaintiffs and Class Members in the

26    timeframes provided in Labor Code §204.

27    196.    Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES have a continuous and

28    consistent policy and/or practice of not paying all wages owed to Plaintiffs and non-

1  exempt, hourly workers twice during each month in compliance with California law. For

2  example, throughout the statutory period, in every pay period during the relevant statute of

3  limitations—which, on information and belief, includes pay periods which encompassed

4  the workweeks of October 6-12, 2019; October 13-19, 2019; October 20-26, 2019; October

5  27 – November 2, 2019; and November 3-9, 2019—Ms. Hansber has alleged that pursuant

6  to Defendant ULTA BEAUTY COSMETICS, LLC's and/or DOES' policy—as explained

7  to Ms. Hansber during her orientation with ULTA BEAUTY COSMETICS, LLC and/or

8  DOES and enforced by her supervisor, Stuart — Ms. Hansber was required to wait in line

9  and go through ULTA BEAUTY COSMETICS, LLC's and/or DOES' security procedures

10  every day she worked before clocking in to start her shift and was required to spend time

11  traveling through ULTA BEAUTY COSMETICS, LLC's and/or DOES' massive facility

12  to and from the breakroom while off the clock during her unpaid meal periods. Ms. Hansber

13  alleges that this time qualifies as "hours worked" under California law for which Ms.

14  Hansber and non-exempt, hourly workers should have been compensated but were never

15  paid wages for. Additionally, Ms. Hansber has alleged that as a result of Defendant ULTA

16  BEAUTY COSMETICS, LLC's and/or DOES' unlawful meal and rest period policies —

17  as explained to Ms. Hansber during her orientation with ULTA BEAUTY COSMETICS,

18  LLC and/or DOES and enforced by her supervisor, Stuart — Ms. Hansber was never

19  provided a fully thirty-minute meal period or a net ten-minute rest period in which she was

20  free to leave the premises and spend entirely outside of ULTA BEAUTY COSMETICS,

21  LLC's and/or DOES' control. Under Labor Code § 226.7, Ms. Hansber is entitled to

22  premium wages for each shift she was not provided a complaint meal or rest period. Section

23  226.7 premiums constitute wages and are therefore required to be paid twice monthly.

24  However, ULTA BEAUTY COSMETICS, LLC and/or DOES have failed to pay any such

25  wages to Ms. Hansber and non-exempt, hourly workers at any point throughout their

26  employment. As a result, ULTA BEAUTY COSMETICS, LLC and/or DOES have failed

27  to pay Ms. Hansber and non-exempt, hourly workers all wages that were owed to them

28

1    twice per month in compliance with California law.

2  197.   Similarly, throughout the statutory period, in every pay period during the relevant statute

3    of limitations—which, on information and belief, includes pay periods which encompassed

4    the workweeks of March 25-31, 2018; April 1-7, 2018; April 8-14, 2018; April 15-21,

5    2018; April 22-28, 2018; April 29 – May 5, 2018: May 6-12, 2018; May 13-19, 2018; May

6    20-26, 2018; May 27 – June 2, 2018; June 3-9, 2018; June 10-16, 2018; June 17-23, 2018;

7    June 24-30, 2018; July 8-14, 2018; July 15-21, 2018; July 22-28, 2018; July 29 – August

8    4, 2018; August 5-11, 2018; August 12-18, 2018; August 19-25, 2018; August 26 –

9    September 1, 2018; September 2-8, 2018; September 9-15, 2018; September 16-22, 2018;

10    September 23-29, 2018; September 30 – October 6, 2018; October 7-13, 2018; October 14-

11    20, 2018; October 21-27, 2018; October 28 – November 3, 2018; November 4-10, 2018;

12    November 11-17, 2018; November 25 – December 1, 2018; December 2-8, 2018;

13    December 9-15, 2018; December 16-22, 2018; January 6-12, 2019; January 13-19, 2019;

14    January 20-26, 2019; January 27 – February 2, 2019; February 3-9, 2019; February 10-16,

15    2019; February 17-23, 2019; February 24 – March 2, 2019; March 3-9, 2019; March 10-

16    16, 2019; March 17-23, 2019; March 24-30, 2019; March 31 – April 6, 2019; April 7-13,

17    2019; April 14-20, 2019; April 21-27, 2019; April 28 – May 4, 2019; May 5-11, 2019; May

18    12-18, 2019; May 19-25, 2019; May 26 – June 1, 2019; June 2-8, 2019; June 9-15, 2019;

19    June 16-22, 2019; June 23-29, 2019; July 7-13, 2019; July 14-20, 2019; July 21-27, 2019;

20    July 28 – August 3, 2019; August 4-10, 2019; August 11-17, 2019; August 18-24, 2019;

21    August 25-31, 2019; September 1-7, 2019; September 8-14, 2019; September 15-21, 2019;

22    September 22-28, 2019; September 29 – October 5, 2019; October 6-12, 2019; October 13-

23    19, 2019; October 20-26, 2019; October 27 – November 2, 2019; November 3-9, 2019;

24    November 10-16, 2019; November 17-23, 2019; December 1-7, 2019; December 8-14,

25    2019; December 9-21, 2019; January 5-11, 2020; January 12-18, 2020; January 19-25,

26    2020; January 26 – February 1, 2020; February 2-8, 2020; February 9-15, 2020; February

27    16-22, 2020; February 23-29, 2020; March 1-7, 2020; March 8-14, 2020; March 15-21,

28

1    2020; March 22-28, 2020; March 29 – April 4, 2020; April 5-11, 2020; April 12-18, 2020;

2    April 19-25, 2020; April 26 – May 2, 2020; May 3-9, 2020; May 10-16, 2020; May 17-23,

3    2020; May 24-30, 2020; May 31 – June 6, 2020; June 7-13, 2020; June 14-20, 2020; and

4    June 21-27, 2020—Mr. Chan has alleged that pursuant to Defendant ULTA BEAUTY

5    COSMETICS, LLC's and/or DOES' policy— as explained to Mr. Chan during ULTA

6    BEAUTY COSMETICS, LLC's and/or DOES' training with his supervisors, Laura

7    Valequez, Adrian Olivares, and Alma (last name unknown) — Mr. Chan was required to

8    wait in line and go through ULTA BEAUTY COSMETICS, LLC's and/or DOES' security

9    procedures every day he worked before clocking in to start his shift and was required to

10   spend time traveling through ULTA BEAUTY COSMETICS, LLC's and/or DOES'

11   massive facility to and from the breakroom while off the clock during his unpaid meal

12   periods. Mr. Chan alleges that this time qualifies as "hours worked" under California law

13   for which Mr. Chan and non-exempt, hourly workers should have been compensated but

14   were never paid wages for. Additionally, Mr. Chan has alleged that as a result of Defendant

15   ULTA BEAUTY COSMETICS, LLC's and/or DOES' unlawful meal and rest period

16   policies — as explained to Mr. Chan during ULTA BEAUTY COSMETICS, LLC's and/or

17   DOES' training with his supervisors, Laura Valequez, Adrian Olivares, and Alma (last

18   name unknown) — Mr. Chan was never provided a fully thirty-minute meal period or a net

19   ten-minute rest period in which he was free to leave the premises and spend entirely outside

20   of ULTA BEAUTY COSMETICS, LLC's and/or DOES' control. Under Labor Code §

21   226.7, Mr. Chan is entitled to premium wages for each shift he was not provided a

22   complaint meal or rest period. Section 226.7 premiums constitute wages and are therefore

23   required to be paid twice monthly. However, ULTA BEAUTY COSMETICS, LLC and/or

24   DOES have failed to pay any such wages to Mr. Chan and non-exempt, hourly workers at

25   any point throughout their employment. As a result, ULTA BEAUTY COSMETICS, LLC

26   and/or DOES have failed to pay Mr. Chan and non-exempt, hourly workers all wages that

27   were owed to them twice per month in compliance with California law.

28

SECOND AMENDED CLASS ACTION COMPLAINT 91

198.    In addition, throughout the statutory period, in every pay period during the relevant statute of limitations—which, on information and belief, includes pay periods which encompassed the workweeks of April 7-13, 2019; April 14-20, 2019; and April 21-27, 2019—Mr. Moreno has alleged that pursuant to Defendant ULTA BEAUTY COSMETICS, LLC's and/or DOES' policy— which Mr. Moreno believes was explained to him and enforced by his supervisor — Mr. Moreno was required to wait in line and go through ULTA BEAUTY COSMETICS, LLC's and/or DOES' security procedures every day he worked before clocking in to start his shift and was required to spend time traveling through ULTA BEAUTY COSMETICS, LLC's and/or DOES' massive facility to and from the breakroom while off the clock during his unpaid meal periods. Mr. Moreno alleges that this time qualifies as "hours worked" under California law for which Mr. Moreno and non-exempt, hourly workers should have been compensated but were never paid wages for. Additionally, Mr. Moreno has alleged that as a result of Defendant ULTA BEAUTY COSMETICS, LLC's and/or DOES' unlawful meal and rest period policies — as explained enforced by his supervisor — Mr. Moreno was never provided a fully thirty-minute meal period or a net ten-minute rest period in which he was free to leave the premises and spend entirely outside of ULTA BEAUTY COSMETICS, LLC's and/or DOES' control. Under Labor Code § 226.7, Mr. Moreno is entitled to premium wages for each shift he was not provided a complaint meal or rest period. Section 226.7 premiums constitute wages and are therefore required to be paid twice monthly. However, ULTA BEAUTY COSMETICS, LLC and/or DOES have failed to pay any such wages to Mr. Moreno and non-exempt, hourly workers at any point throughout their employment. As a result, ULTA BEAUTY COSMETICS, LLC and/or DOES have failed to pay Mr. Moreno and non-exempt, hourly workers all wages that were owed to them twice per month in compliance with California law.

199.    As a result Defendant's and/or DOES' continuous and consistent policies failing to pay Plaintiffs and Class Members all straight time wages, meal period premiums, and rest

1    period premiums owed, Defendant's and/or DOES failed to pay wages due and payable to

2    Plaintiffs and Class Members twice during each month as provided in Labor Code §204.

3    200.    As a result Defendant's and/or DOES' continuous and consistent policies failing to pay

4    Plaintiffs and Class Members all overtime wages owed, Defendant's and/or DOES failed

5    to pay wages due and payable to Plaintiffs and Class no later than the payday for the next

6    regular payroll period as provided in Labor Code §204.

7    201.    Defendant and/or DOES failure to pay said wages to Plaintiffs and members of the Class

8    they seek to represent, was willful in that Defendant and/or DOES and each of them knew

9    the wages to be due, but failed to pay them.

10   202.    As a consequence of Defendant's and/or DOES' willful conduct in not timely paying wages

11   and overtime wages owed, Plaintiffs and members of the proposed Class are entitled to one

12   hundred dollars ($100) for any initial violation and two hundred dollars ($200) for any

13   subsequent violation plus twenty-five percent (25%) of the amount withheld under Labor

14   Code §210, together with interest thereon and attorneys' fees and costs.

15   203.    WHEREFORE, Plaintiffs and the Class they seek to represent request relief as described

16   below.

17   **EIGHTH CAUSE OF ACTION AGAINST DEFENDANT AND/OR DOES:**
**Violation of Unfair Competition Law (California Bus. & Prof. Code, § 17200, et seq.)**

18

19   204.    Plaintiffs and those similarly situated Class members hereby incorporate by reference each

20   and every other paragraph in this Complaint herein as if fully plead.

21   205.    Defendant and/or DOES failure to pay all straight time and overtime wages earned and

22   failure to provide compliant meal and/or rest breaks and/or compensation in lieu thereof,

23   as alleged herein, constitutes unlawful activity prohibited by California Business and

24   Professions Code section 17200, et seq.

25   206.    The actions of Defendant and/or DOES in failing to pay Plaintiffs and members of the

26   proposed Class in a lawful manner, as alleged herein, constitutes false, unfair, fraudulent

27   and deceptive business practices, within the meaning of California Business and

28   Professions Code section 17200, et seq.

207.    Plaintiffs are entitled to equitable relief against such unlawful practices. Plaintiffs bring this cause individually and as members of the general public actually harmed and as a representative of all others subject to Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES unlawful acts and practices.

208.    As a result of their unlawful acts, Defendant ULTA BEAUTY COSMETICS, LLC and/or DOES have reaped and continue to reap unfair benefits at the expense of Plaintiffs and the proposed Class they seek to represent. ULTA BEAUTY COSMETICS, LLC and/or DOES should be made to disgorge these ill-gotten gains and restore Plaintiffs and the members of the proposed Class pursuant to Business and Professions Code section 17203. Plaintiffs are informed and believes, and thereon allege, that Defendants ULTA BEAUTY COSMETICS, LLC and/or DOES are unjustly enriched through their policy of not all wages owed to Plaintiffs and members of the proposed Class.

209.    Plaintiffs are informed and believe, and thereon allege, that Plaintiffs and members of the proposed class are prejudiced Defendant ULTA BEAUTY COSMETICS, LLC's and/or DOES ' unfair trade practices.

210.    As a direct and proximate result of the unfair business practices of Defendant and/or DOES, and each of them, Plaintiffs, as individuals and on behalf of all workers similarly situated, are entitled to equitable relief, including full restitution and/or disgorgement of all wages and premium pay which have been unlawfully withheld from Plaintiffs and members of the proposed Class as a result of the business acts and practices described herein.

211.    WHEREFORE, Plaintiffs and the Class they seek to represent request relief as described below.

**NINTH CAUSE OF ACTION AGAINST DEFENDANT AND/OR DOES: Violations of the Private Attorneys General Act of 2004 ("PAGA") (<u>Labor Code §2698 et seq</u>**

212.    Plaintiffs and those similarly situated Class members hereby incorporate by reference each and every other paragraph in this Complaint herein as if fully plead.

213.    Plaintiffs, by virtue of their employment with Defendant and/or DOES, and Defendant's and/or DOES' failure to provide meal and rest periods, overtime compensation, all wages

1   for all work performed at the statutory minimum agreed upon rate, all wages due at

2   termination, itemized wage statements, and timely pay all wages and overtime wages due,

3   are aggrieved employees with standing to bring an action under the Private Attorney

4   General Act ("PAGA"). Plaintiffs, as representatives of the people of the State of

5   California, will seek any and all penalties otherwise capable of being collected by the Labor

6   Commission and/or the Department of Labor Standards Enforcement (DLSE). This

7   includes each of the following, as set forth in Labor Code Section 2699.5, which provides

8   that Section 2699.3(a) applies to any alleged violation of the following provisions: Sections

9   201 through 203, 204, 205.5, 210, 212, 213, 221, 223, 226, 226.7, 246, 247.5, 510, 512,

10  558, 1174, 1194, 1197, 1197.1, and 1199.

11  214.  Plaintiffs are informed and believe that Defendant and/or DOES have violated and continue

12  to violate provisions of the California Labor Code and applicable Wage Orders related to

13  meal and rest periods, overtime compensation, wages for all work performed, all wages

14  due at termination, itemized wage statements, and timely paying all wages and overtime

15  wages owed.

16  215.  Plaintiffs, as personal representatives of the general public, will and do seek to recover any

17  and all penalties for each and every violation shown to exist or to have occurred during the

18  one-year period of filing of Plaintiffs' January 15, 2020 notice to the LWDA, in an amount

19  according to proof, as to those penalties that are otherwise only available to public agency

20  enforcement actions. All funds recovered will be distributed in accordance with PAGA,

21  with at least 75% of the penalties recovered being reimbursed to the State of California and

22  the Labor and Workforce Development Agency (LWDA).

23  **V.   PRAYER FOR RELIEF**

24  WHEREFORE, Plaintiffs pray for judgment as follows:

25       1.    That the Court determine that this action may be maintained as a class action;

26       2.    For compensatory damages, in an amount according to proof at trial, with interest

27             thereon;

28

3.     For economic and/or special damages in an amount according to proof with interest thereon;

4.     For unpaid straight time and overtime wages, in an amount according to proof at trial, with interest thereon;

5.     For compensation for all time worked;

6.     For compensation for not being provided paid rest breaks;

7.     For compensation for not being provided paid meal periods;

8.     For damages and/or monies owed for failure to comply with itemized employee wage statement provisions;

9.     For all waiting time penalties owed;

10.     For penalties and/or monies owed for failure to timely pay all wages and overtime wages owed;

11.     That Defendant be found to have engaged in unfair competition in violation of sections 17200 et seq. of the California Business and Professions Code;

12.     That Defendant be ordered and enjoined to make restitution to the Class due to their unfair competition, including disgorgement of their wrongfully withheld wages pursuant to California Business and Professions Code sections 17203 and 17204;

13.     That an order of specific performance of all penalties owed be issued under Business and Professions Code sections 17202;

14.     That Defendant be enjoined from continuing the illegal course of conduct, alleged herein;

15.     That Defendant further be enjoined to cease and desist from unfair competition in violation of section 17200 et seq. of the California Business and Professions Code;

16.     That Defendant be enjoined from further acts of restraint of trade or unfair competition;

17.     For penalties for each violation of the Labor Code Private Attorneys General Act of 2004 ("PAGA");

1    18.    For attorneys' fees;

2    19.    For liquidated damages;

3    20.    For interest accrued to date;

4    21.    For costs of suit and expenses incurred herein; and

5    22.    For any such other and further relief as the Court deems just and proper.

6                              **DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial.

7

Dated: March 15, 2021                              **MARA LAW FIRM, PC**

8

9

10    _____
      David Mara, Esq.

11    Matthew Crawford, Esq.
      Representing Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28