1
2
3
4

# UNITED STATES DISTRICT COURT

5

## EASTERN DISTRICT OF CALIFORNIA

6

| | |
|---|---|
| 7 **SUSAN HANSBER, NANG CHAN, and** | **CASE NO. 1:21-cv-00022-AWI-JLT** |
| 8 **JESUS MORENO, on behalf of themselves, all others similarly situated, and the** | |
| 9 **general public,** | **ORDER ON DEFENDANT ULTA BEAUTY COSMETICS, LLC'S** |
| 10 **Plaintiffs,** | **MOTION TO DISMISS AND/OR STRIKE** |
| 11 **v.** | |
| 12 **ULTA BEAUTY COSMETICS, LLC, and** | (Doc. No. 18) |
| **DOES 1-100,** | |
| 13 **Defendants.** | |
| 14 | |

15
16      In this class action lawsuit, Susan Hansber, Nang Chan, and Jesus Moreno are suing their

17 former employer, Ulta Beauty Cosmetics, LLC, on grounds that it violated California wage-and-

18 hour and unfair competition laws.  Ulta now moves to dismiss Plaintiffs' second-amended

19 complaint under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, to strike portions of the

20 pleading under Federal Rule of Civil Procedure 12(f).  For the reasons discussed below, the Court

21 will grant in part and deny in part Ulta's motion.

22
23                                          **BACKGROUND**

24      On July 10, 2020, Hansber filed an initial complaint in state court, naming as defendants

25 Ulta and Does 1–100.  Doc. No. 1-3 at 4–32.  Then, on November 4, 2020, Hansber, Chan, and

26 Moreno filed a first-amended complaint against Ulta, Spherion Staffing, LLC, and the Doe

27 defendants.  Doc. No. 1-1 at 2–31.  Spherion removed the action to this Court pursuant 28 U.S.C.

28 § 1332(d).  Doc. No. 1.  Thereafter, Plaintiffs filed a second-amended complaint, wherein they

pleaded nine causes of action against only Ulta and the Doe defendants.  Doc. No. 15 ("SAC").

In the second-amended complaint, which is the operative pleading, Plaintiffs allege that they formerly worked as non-exempt, hourly workers in Defendants' California warehouse and distribution facilities.  SAC, ¶¶ 29–32, 43.  Plaintiffs seek to represent a class of similarly situated non-exempt, hourly workers for purposes of nine causes of action:  (1) failure to pay straight-time wages (¶¶ 72–94); (2) failure to pay overtime wages (¶¶ 95–115); (3) failure to provide meal periods or compensation in lieu thereof (¶¶ 116–142); (4) failure to provide rest periods or compensation in lieu thereof (¶¶ 143–163); (5) failure to provide accurate wage statements (¶¶ 164–176); (6) failure to pay separation wages (¶¶ 177–191); (7) failure to timely pay wages (¶¶ 192–203); (8) violations of California's unfair competition law (¶¶ 204–211); and (9) entitlement to civil penalties under California's Private Attorney General Act (¶¶ 212–215).

Ulta now moves to dismiss the second-amended complaint under Rule 12(b)(6) or to strike portions of the pleading under Rule 12(f).  Doc. No. 18.[1]

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a cause of action may be dismissed where a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1121–22 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion for failure to allege sufficient facts, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Compliance with this rule ensures that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v.

---

[1] Based on the arguments presented, the Court will primarily consider Ulta's "Motion to Dismiss and/or Strike" through the lens of Rule 12(b)(6).  As one exception, Plaintiffs acknowledge in response to Ulta's challenge that references in the second-amended complaint to injunctive and declaratory relief are unnecessary leftovers from a previous iteration of the pleading.  Doc. No. 20 at 36.  The Court will strike these references as immaterial given that, by Plaintiffs' own admission, they carry no essential or important relationship to the pleaded claims. Fed. R. Civ. P. 12(f); Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994).

Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (internal marks omitted). Under this standard, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570) (internal marks omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Id. at 663.

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Mollett, 795 F.3d at 1065; Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008). But the Court is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoted source omitted). Complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678; Johnson v. Fed. Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). Rather, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). If a motion to dismiss is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Henry A. v Willden, 678 F.3d 991, 1005 (9th Cir. 2012) (quoted source and internal marks omitted).


## DISCUSSION

Ulta challenges Plaintiffs' second-amended complaint in numerous ways, some affecting the entire pleading and others affecting particular claims for relief. The Court will start with the broadest challenges before turning to the narrower, claim-specific arguments.

1 **A.    Class definition**

2    Ulta contends that the putative class is overbroad, ill-defined, and unascertainable, and that

3 these problems fatally undermine the class certification allegations as well as Plaintiffs' further

4 pursuit of class recovery.

5    In the second-amended complaint, the putative class is defined as follows: "All non-

6 exempt, hourly workers who were employed and/or performed services for Defendant and/or

7 DOES, either directly for Defendant and/or DOES, or through staffing agencies and/or other third-

8 party entities, in Defendant's and/or DOES' warehouse/distribution facilities within the State of

9 California during the period of the relevant statute of limitations." SAC, ¶ 50. Plaintiffs further

10 define separate subclasses that associate with particular causes of action and theories of relief. Id.

11    The Court first notes that motions to dismiss or strike class allegations under Rule 12 are

12 generally disfavored, as these contests often turn on issues that are more appropriately addressed

13 through motions for class certification under Federal Rule of Civil Procedure 23. See In re Wal-

14 Mart Stores, Inc. Wage & Hour Litig., 505 F. Supp. 2d 609, 615–16, 619 (N.D. Cal. 2007);

15 Morrelli v. Corizon Health, Inc., No. 1:18-cv-1395-LJO-SAB, 2019 WL 918210, at *12–13 (E.D.

16 Cal. Feb. 25, 2019). With this in mind, the Court approaches Ulta's instant challenge, which

17 expressly treads on traditional certification inquiries (e.g., ascertainability of the putative class and

18 typicality of Plaintiffs as proposed class representatives), with some skepticism.

19    But that disfavor and skepticism aside, Ulta also has not shown that the disputed class

20 allegations warrant the requested relief. Through their second-amended complaint, Plaintiffs have

21 brought nine class claims for purposes of a putative class comprising those who worked as non-

22 exempt, hourly workers in Ulta's warehouse and distribution facilities in California. This putative

23 class is further narrowed to cover only those workers who were either directly employed by Ulta

24 or staffed to work for Ulta through a staffing agency or similar third-party entity. Plaintiffs then

25 use their claim-specific allegations to explain how this putative class was subjected to Ulta's

26 uniformly applied policies and practices that violated California laws. These claim-specific

27 allegations pair with the claim-specific subclasses. For instance, Plaintiffs' wage statement claim

28 is apparently made on behalf of a subclass of putative class members "who worked one (1) or

more shifts in which they received a wage statement for the corresponding pay period."  SAC, ¶ 50.  The allegations specific to that claim further indicate that these putative class members suffered injury after receiving wage statements that were missing information required under California Labor Code § 226 as a result of Ulta's knowing and intentional failures to comply with the statute.  Id., ¶¶ 165–175.  As shown by this example, collectively, the claim-specific allegations and proposed subclasses in the second-amended complaint both narrow the scope of the overarching class definition and ensure that that definition only captures those putative class members who were similarly affected by Ulta's allegedly unlawful conduct.  Thus, even if its merits are considered here, Ulta's challenge does not convince that Plaintiffs' class allegations are insufficiently pleaded.

Ulta's contrary argument goes wrong by singularly focusing on the overarching class definition as though it alone conclusively sets forth who is covered by Plaintiffs' class claims. Under this myopic lens, it makes some sense to argue, as Ulta does, that the class definition greatly expands the scope of the putative class despite particular class members not being subjected to the workplace conditions that give rise to Plaintiffs' claims.  This was a problem cited by the court in Bush v. Vaco Technical Services, LLC, No. 17-cv-05605-BLF, 2018 WL 2047807, at *6 (N.D. Cal. May 2, 2018), a case on which Ulta relies.  There, the court took issue with the plaintiff's proposed class definitions because, other than a broad allegation that all putative class members were misclassified as exempt employees, the pleading was completely devoid of any allegations tying the plaintiff's experience to the experiences of thousands of individuals who were otherwise part of the alleged putative class.  Id.  As the above shows, Plaintiffs' second-amended complaint is not similarly deficient.

Ulta's other argument dwells on the language "staffing agencies and/or other third-party entities" in the overarching class definition.[2]  Seeking the same relief, Ulta points out that other

---

[2] Aside from the proposed class definition, this particular language appears three more times in the second-amended complaint. After indicating that the three named Plaintiffs were employed and worked for Ulta and the Doe defendants as non-exempt, hourly workers, the pleading adds that Plaintiffs performed services "either directly for Defendant and/or DOES, or through staffing agencies and/or other third-party entities."  SAC, ¶ 29.  And it elsewhere appears in near-identical context for a pair of introductory allegations.  Id., ¶¶ 1, 3.

courts have ordered the removal of "third party" language from proposed class definitions on overbreadth grounds.  See Parsittie v. Schneider Logistics, Inc., No. CV19-3981-MWF (AFMx), 2019 WL 8163645, at *4 (C.D. Cal. Oct. 29, 2019); Bush, 2018 WL 2047807, at *6.  The Court finds this emphasis misplaced at this time.  The allegations within the second-amended complaint make clear that the putative class is composed of class members who are similarly situated to the extent they suffered from Ulta's uniformly applied unlawful policies and practices while working at its California warehouse and distribution facilities.  In other words, the precise contours of the putative class are based on the allegations of Ulta's unlawful conduct within the pleaded claims, and not on whether individual class members were hired directly by Ulta or placed with Ulta through a staffing agency or other third-party entity.  While this part of the putative class definition may need to be modified as further proceedings lend more certainty to the situation, the allegations are sufficient to withstand Ulta's challenge here.

### B.    Employer allegations

Ulta next contends that the second-amended complaint should be dismissed because Plaintiffs have not sufficiently alleged that Ulta employed them.

Each of Plaintiffs' claims rests, in some part, on the existence of an employment relationship between Defendants and the putative class.  See Cal. Labor Code §§ 203, 204, 226, 226.7, 1194, 2699.[3]  California courts have drawn on Industrial Welfare Commission wage orders for the applicable employment definition for purposes of assessing Labor Code violations.  See Martinez v. Combs, 49 Cal. 4th 35, 52 (2010).  The wage orders each define the term "employ" as "to engage, suffer, or permit to work," and the term "employer" as any person "who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person."  E.g., Cal. Code Regs., tit. 8, § 11070(2)(D), (F).  "To employ, then, under the [Commission's] definition, has three alternative definitions.  It means:  (a) to exercise control over the wages, hours or working conditions, or (b) to suffer or

---

[3] This recognizes that Plaintiffs' UCL claim is derivative of causes of actions that are themselves dependent on proof of an employment relationship.

permit to work, or (c) to engage, thereby creating a common law employment relationship." Martinez, 49 Cal. 4th at 64.

Under all three of these definitions, and contrary to Ulta's contention, Plaintiffs have sufficiently alleged that Ulta employed the putative class.  First, Plaintiffs have explicitly alleged that Ulta "exercised control over the wages, hours, and/or working conditions of Plaintiffs and members of the proposed class throughout the liability period." SAC, ¶¶ 25, 46. This bald allegation is then greatly supported by Plaintiffs' claim-specific allegations, which explain myriad ways in which Ulta exercised control over the putative class members' wages, hours, and working conditions.  Second, by alleging that Ulta's Labor Code violations resulted from knowing, intentional, or willful conduct or unlawful policies and practices that it maintained (id., ¶¶ 73, 114, 140, 146, 168, 185, 201), Plaintiffs have also pleaded that Ulta was the putative class's employer through the "suffer or permit" standard.  See Martinez, 49 Cal. 4th at 69–70 (explaining that liability under this standard is based on the defendant's knowledge of and failure to prevent the work from occurring).  Finally, Plaintiffs have also pleaded enough for the Court to reasonably infer that, under a common-law theory, Ulta employed the putative class of non-exempt, hourly workers.  See Ayala v. Antelope Valley Newspapers, Inc., 59 Cal. 4th 522, 531 (2014) ("Under the common law, '[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired.'" (quoted source and internal marks omitted)).  Of note are the numerous allegations addressing the putative class members' regular shifts and payment schedules, as well as Ulta's control over the putative class members during their meal and rest periods—an allegation that undergirds all of the class claims (SAC, ¶¶ 30–32, 119–130, 137, 149–160, 169–171).  Ayala, 59 Cal. 4th at 532 (highlighting factors other than the right to control that typify a common-law employment relationship).  Given this collection of allegations, Plaintiffs have sufficiently pleaded that Ulta was an employer of the putative class for purposes of the class claims.

Against this conclusion, Ulta points out that Plaintiffs have made nearly identical allegations against the Doe defendants by pleading "Defendant and/or DOES" throughout the second-amended complaint.  Ulta interprets this as Plaintiffs' attempt to plead that the

1  aforementioned "staffing agencies and/or other third-party entities" constituted putative class

2  members' joint employer.  Ulta then contends that Plaintiffs' attempt leaves the complaint fatally

3  inconsistent and without any detail to establish that putative class members were specifically

4  under its day-to-day control, as opposed to that of a staffing agency or other third-party entity.

5       As an initial matter, the Court is not convinced that Ulta has the proper reading of

6  Plaintiffs' allegations.  That is, in the second-amended complaint, Plaintiffs allege that they were

7  employed and performed services for Ulta as non-exempt, hourly workers, "working either

8  directly for Defendant and/or DOES, *or through staffing agencies and/or other third-party*

9  *entities*, in Defendant's and/or DOES' warehouse/distribution facilities in California."  SAC, ¶ 29

10  (emphasis added).  This suggests that the "staffing agencies and/or other third-party entities" are

11  separate from the Doe defendants, which in turn means that Plaintiffs have not alleged that the

12  "staffing agencies and/or other third-party entities" are liable to putative class members' on joint-

13  employer grounds.  As much is seemingly confirmed by Plaintiffs' party-identifying allegations,

14  which indicate that Ulta and the Doe defendants "engage in the ownership and operation of

15  facilities which are used to provide of cosmetics and beauty products" through which they "carried

16  out a joint scheme, business plan or policy in all respects pertinent" to this case.  SAC, ¶¶ 43, 49.

17  It is also consistent with Plaintiffs' contentions that they are generally seeking to impose liability

18  on the named Defendants (i.e., Ulta and Does 1–100) for Labor Code violations against putative

19  class members, regardless of whether those putative class members were directly employed by

20  Defendants or placed with Defendants through a staffing agency or other third-party entity.

21       Assuming this is the correct reading of the pleading, the Court rejects Ulta's theory that

22  Plaintiffs' allegations regarding Ulta's employment of the putative class are undermined based on

23  additional allegations regarding a joint-employment relationship between Ulta and the Doe

24  defendants.[4]  After all, California law recognizes the possibility of Labor Code liability for

_____

[4] In so far as Plaintiffs' employment allegations are actually trying to do something different from the Court's
interpretation as much is not made clear in the second-amended complaint.  Moreover, to the extent Plaintiffs actually
seek to hold staffing agencies and other third-party entities liable as joint employers of putative class members, the
complaint appears to be lacking sufficient allegations that either identify the staffing agencies and other third-party
entities as the Doe defendants (and thus "named" defendants), or describe how the staffing agencies and other third-
party entities are themselves liable for Labor Code violations.  If necessary, Plaintiffs may amend their pleading to
account for these concerns in response to this order.

multiple employers in a joint-employment situation.  See Martinez, 49 Cal. 4th at 59 (explaining that the disjunctive use of "wages, hours, *or* working conditions" in the wage orders "has the obvious utility of reaching situations in which multiple entities control different aspects of the employment relationship, as when one entity, which hires and pays workers, places them with other entities that supervise the work").  As explained above, Plaintiffs have sufficiently alleged that Ulta was an employer of the putative class for purposes of the class claims.  By including the Doe defendants within the aforementioned allegations, Plaintiffs have also alleged that the Doe defendants were an employer of the putative class for purposes of the class claims.  When put together, Plaintiffs have alleged at least some facts in support of a legal conclusion that Ulta and the Doe defendants were joint employers of the putative class.  Hibbs-Rines v. Seagate Techs., LLC., No. C 08-05430 SI, 2009 WL 513496, at *5 (N.D. Cal. Mar. 2, 2009).  Ultimately, Plaintiffs will need to prove the existence of an employment relationship, and could run into trouble from Ulta's specific perspective if evidence shows that putative class members were neither directly nor jointly employed by Ulta.  At this stage, however, Ulta has not presented authority suggesting that Plaintiffs may not proceed with the employment allegations in the second-amended complaint.[5]

### C.   Meal and rest period claims

Ulta argues that Plaintiffs' meal and rest period causes of action should be dismissed for failure to plead sufficient factual allegations to support plausible claims.

Under California law, an employer generally must provide an employee with a meal period

---

[5] The Court also rejects Ulta's related argument that Plaintiffs' straight-time and overtime wages claims must be dismissed to the extent they are based on putative class members' employment through staffing agencies or other third-party entities, as Plaintiffs have failed to allege their compliance with the pre-filing requirements of California Labor Code § 2810.3.  As Plaintiffs rightly point out in opposition, however, allegations of this kind are not required here.  Instead, § 2810.3 provides an alternative theory of liability whereby a "client employer" and a "labor contractor" share all civil legal responsibility and liability for the payment of wages to all workers supplied by that labor contractor to the client employer for the workers' performance of labor within the client employer's usual course of business.  § 2810.3(b).  The statute makes clear that this theory of liability is "in addition to, and shall be supplemental of, any other theories of liability or requirement established by statute or common law."  § 2810.3(f).  Here, Plaintiffs have pleaded other theories of liability against Ulta and the Doe defendants through their specific wage-and-hour, UCL, and PAGA claims.  Given this, Plaintiffs' decision to forgo pleading an alternative theory of liability under § 2810.3 does not necessitate dismissal of the challenged straight-time and overtime wages claims (even if it may ultimately affect issues of liability and recovery that emerge in this case).

of not less than thirty minutes for a work period of more than five hours in a day and a second meal period for a work period of at least ten hours.  Cal. Labor Code § 512(a); Cal. Code Regs., tit. 8, § 11070(11)(A)–(B).  Likewise, California law also dictates that employees receive ten minutes of rest time for every "four hours or major fraction thereof" of work time.  Cal. Code Regs., tit. 8, § 11070(12)(A).  If a legally compliant meal or rest period is not provided, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest . . . period is not provided."  Cal. Labor Code § 226.7(c); <u>see also</u> Cal. Code Regs., tit. 8, § 11070(11)(D), 12(B).  To satisfy an employer's obligation under these provisions, "employees must not only be relieved of work duties [during breaks], but also be freed from employer control over how they spend their time."  <u>Augustus v. ABM Sec. Servs., Inc.</u>, 2 Cal. 5th 257, 270 (2016); <u>see also</u> <u>Brinker Rest. Corp. v. Superior Court</u>, 53 Cal. 4th 1004, 1038–39 (2012) (stating that the "fundamental employer obligations associated with a meal break" are "to relieve the employee of all duty and relinquish any employer control over the employee and how he or she spends the time").

The meal and rest period claims are pleaded quite similarly in the second-amended complaint.[6]  As to both, Plaintiffs allege that putative class members did not receive legally compliant meal and rest periods despite regularly working shifts that were long enough to trigger the statutory requirements.  SAC, ¶¶ 121, 123, 125, 151, 153, 155.  According to Plaintiffs, this discrepancy occurred because, pursuant to Ulta's uniformly applicable policies and practices, putative class members were required to spend part of their meal and rest periods traveling to and from breakrooms and submitting to security protocols (if leaving the premises).  <u>Id.</u>, ¶¶ 119–131, 146, 149, 150–161.  Plaintiffs allege that the breakroom travel time took approximately six minutes, while security protocols compliance took approximately ten minutes.  <u>Id</u>, ¶¶ 120, 122, 124, 126, 128, 130, 150, 152, 154, 156, 158, 160.  Putting all of this together, Plaintiffs allege that

---

[6] Despite references to Wage Order No. 7 ("mercantile industry") constituting the applicable wage order here, Plaintiffs also cite Wage Order No. 4 ("professional, technical, clerical, mechanical, and similar occupations") and No. 9 ("transportation industry") in their second-amended complaint.  This variety appears mistaken but is also harmless here.  Plaintiffs shall have a chance to clean up these citations (which occur throughout the pleading) in response to this order.

1  these mandatory sacrifices of time—for which they were necessarily under the control of Ulta—

2  ensured that class members did not receive duty-free meal or rest periods of a lawful length.  Id.,

3  ¶¶ 119, 133–134, 146, 149.[7]

4       The Court finds these allegations sufficiently state meal and rest period claims under

5  California law.  In general, claims of this kind are found to be deficiently pleaded where the

6  complaint contains little, if anything, more than recitation of the relevant statutory language.  See,

7  e.g., Finder v. Leprino Foods Co., No. 1:13-cv-2059-AWI-BAM, 2015 WL 1137151, at *3 (E.D.

8  Cal. Mar. 12, 2015); Bellinghansen v. Tractor Supply Co., No. C-13-02377 JSC, 2013 WL

9  5090869, at *3 (N.D. Cal. Sept. 13, 2013).  In that situation, the claim stands as wholly conclusory

10  and devoid of factual allegations specific to the alleged failure.  See Garcia v. Wal-Mart Stores,

11  Inc., No. CV16-01645-BRO (RAOx), 2017 WL 10403356, at *3 (C.D. Cal. May 31, 2017)

12  (collecting cases).

13       Plaintiffs' claims, on the other hand, are no mere skeletons.  The second-amended

14  complaint identifies specific instances where the named Plaintiffs were not provided with legally

15  compliant meal and rest periods despite becoming entitled to such breaks by working shifts of a

16  certain minimum length.  SAC, ¶¶ 121, 123, 125, 151, 153, 155.  The pleading further explains

17  how and why these alleged statutory violations occurred:  namely, Ulta imposed and enforced

18  policies and practices that required employees to spend some of their allotted meal and rest period

19  time under its control.  Id., ¶¶ 120–131, 150–161.  While these allegations are, in some ways,

20  tailored to the named Plaintiffs—such as through the identification of particular workweeks

21  involving alleged violations—the pleading sufficiently incorporates the putative class by alleging

22  that Ulta's policies and practices were uniformly applied to non-exempt, hourly employees

23  working at the same facilities.  Id., ¶¶ 119, 133–134, 146.  Plaintiffs have also identified specific

24  subclasses for meal and rest period violations, thus further limiting overbreadth concerns.  Id.,

25  _____

26  [7] For both the meal and rest period claims, Plaintiffs also allege that putative class members were unable to take legally compliant breaks because Ulta's practice of understaffing and assigning too much work to be completed in too

27  short of time frames.  SAC, ¶¶ 135–136, 147–148.  These allegations in isolation would not likely be sufficient to support a theory of liability.  Yet, in so far as these allegations are pleaded merely as factual support for Plaintiffs'

28  primary theory of liability  (i.e., meal and rest periods shortened because of travel time and security protocols), their inclusion in the pleading is unproblematic.  Id.,

¶ 50.  In sum, Plaintiffs have alleged exactly how the putative class suffered from Ulta's violations of the underlying statute.  These collective facts are sufficient to, at the very least, give rise to a reasonable inference that putative class members were entitled to meal and rest periods that Ulta failed to provide.[8]

The Court does not find any of Ulta's arguments against this conclusion to be compelling.  First, Plaintiffs' causes of action contain enough specificity to establish plausible claims in line with the Ninth Circuit's guidance in Landers v. Quality Communications, Inc., 771 F.3d 638, 644–45 (9th Cir. 2014).  Landers addressed pleading requirements for minimum wage and overtime claims under the federal Fair Labor Standards Act in the wake of Twombly and Iqbal.  Id. at 639, 641–42.  Therein, the Ninth Circuit held that the plaintiffs' allegations were so vague that a reasonable inference could not be drawn that there was any week in which they worked more than forty hours and were not paid overtime.  Id. at 646; see also Tan v. GrubHub, Inc., 171 F. Supp. 3d 998, 1006 (N.D. Cal. 2016) (noting Landers's analysis has been applied by federal courts to California Labor Code claims).  For purposes here, Ulta desires for Landers to be read such that Plaintiffs must identify specific workweeks in which meal and rest period violations occurred.  Like other courts before, the Court is largely unmoved by this effort to have Landers read as strictly as possible.  See Sagastume v. Psychemedics Corp., No. CV20-6624 DSF (GJSx), 2020 WL 8175597, at *2–3 (C.D. Cal. Nov. 30, 2020); Tan, 171 F. Supp. 3d at 1006, 1008.  But even if the Court were to adopt Ulta's strict reading, Plaintiffs' pleading would suffice as it identifies specific workweeks in which violations occurred.  SAC, ¶¶ 120–131, 150–161.  While Ulta describes these allegations as indeterminate because they broadly identify every workweek in which Plaintiffs performed work, the Court finds that Plaintiffs have provided a ready explanation for the breadth of these allegations:  namely, the combination of Ulta's uniformly applied policies and practices and the putative class's regular shift schedules led to persistent meal and rest period violations.

---

[8] Although done in slightly barer fashion, Plaintiffs have also sufficiently pleaded a theory of liability premised on second meal period violations.  Namely, Plaintiffs allege that they worked shifts longer than ten hours and that Ulta had a policy of not providing second meal periods before the end of employees' tenth hour of work.  SAC, ¶¶ 30–32, 121, 123, 125, 127, 129, 131, 139.  At this stage, that is sufficient.  Garcia, 2017 WL 10403356, at *3.

The rest of Ulta's arguments essentially seek to bypass the pleading stage so that the merits of Plaintiffs' claims can be engaged.  For instance, Ulta asserts that Plaintiffs have failed to separately plead that putative class members were both required to take breaks in a breakroom and prevented from extending their breaks or leaving the premises for breaks based on Ulta's coercion. Although this correctly points out allegations that have not been made, nothing in the relevant statutes and wage order provisions suggests that meal or rest period claims require specific allegations of this kind.  To the extent this identifies possible weak spots in Plaintiffs' ability to prove their claims, that terrain is independent of the task at hand.  In a similar vein, the Court also rejects Ulta's final contention that even if Plaintiffs' allegations are sufficient to state a claim for relief, there is nothing amongst them that suggests they describe anything more than their own individual experiences as opposed to violations occurring by way of unlawful break policies and practices that give rise to class-wide relief.  As noted above, Plaintiffs have alleged that the meal and rest period violations were a product of Ulta's uniformly applied policies and practices.  At this pre-certification stage, this is sufficient.

### D.    Wage statement claim

Ulta next challenges Plaintiffs' wage statement claim under California Labor Code § 226. Section 226 states that an employer must provide to every employee

> an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee . . . , (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer . . . , and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee . . . .

Cal. Labor Code § 226(a).  An employee who has suffered injury as a result of his or her employer's "knowing and intentional" failure to comply with § 226(a) may recover the greater of all actual damages or certain statutory penalties.  § 226(e)(1).

Plaintiffs' wage statement cause of action is pleaded as a wholly derivative claim.  That is,

Plaintiffs allege that Ulta failed to pay to putative class members straight-time wages for all hours worked and premium wages for meal and rest period violations under Labor Code § 226.7, and that these failures translated to wage statement violations under § 226. SAC, ¶¶ 164–176. Plaintiffs specify that, because of these knowing and intentional failures, their wage statements did not include the correct total number of hours worked and the correct rates of pay for all hours worked, as required under § 226(a)(2) and (9). Id., ¶¶ 168–171. Plaintiffs also allege that, in violation of the applicable wage order (Cal. Code Regs., tit. 8, § 11070(7)), Ulta failed to maintain accurate records showing shift times, total hours worked, total wages, bonuses, and incentives earned, and all deductions made. Id., ¶ 167.

Ulta initially challenges the sufficiency of Plaintiffs' pleading in two ways. First, it asserts that Plaintiffs have not alleged factual support for their assertion that Ulta's failure to comply with § 226(a) was "knowing and intentional." The Court disagrees. As noted above, Plaintiffs' wage statement claim is predicated on its straight-time wages, meal period, and rest period claims. For purposes of this collection of claims, Plaintiffs allege that putative class members were subjected to mandatory policies regarding travel time and security protocols that were uniformly applied and enforced by their supervisors. SAC, ¶¶ 78–89, 120–131, 150–161, 172–174. When put together, these allegations support Plaintiffs' specific allegations that Ulta's wage statement violations were knowing and intentional. Id., ¶¶ 168–171. This is sufficient to create a reasonable inference that the alleged wage statement violations resulted from knowing and intentional conduct of Ulta. See Jones v. Certified Safety, Inc., No. 17-cv-02229-RS, 2017 WL 11572135, at *5 (N.D. Cal. Aug. 28, 2017); see also Reinhardt v. Gemini Motor Transp., 879 F. Supp. 2d 1138, 1142 (E.D. Cal. 2012) (finding general allegation of "knowing and intentional" mental state to be sufficient).

Ulta also asserts that Plaintiffs failed to sufficiently allege that they suffered a cognizable injury under § 226(e). Specifically, Ulta contends that Plaintiffs failed to allege facts showing how the disputed wage statements left them unable to "promptly and easily determine from the wage statement[s] alone" whether they were paid the correct amount. § 226(e)(2)(B); see also § 226(e)(2)(C) ("'[P]romptly and easily determine' means a reasonable person would be able to readily ascertain the information without reference to other documents or information."). The

1  Court is not persuaded by this effort.  Although case law explains that a wage statement injury

2  cannot be predicated on missing information that is obtainable through "simple math," nothing in

3  the statute suggests that plaintiffs must affirmatively plead the negative of this standard.  See

4  Castillo v. Bank of Am. Nat'l Ass'n, No. SA CV 17-0580-DOC (KESx), 2018 WL 1409314, at *8

5  (C.D. Cal. Feb. 1, 2018) (expressing skepticism that a plaintiff must plead their inability to

6  promptly and easily determine their gross wages under § 226).  And allegations that wage

7  statements were without the correct total number of hours worked and rates of pay for those hours

8  tend to describe an injury that is more complicated than the straightforward production of missing

9  information through basic calculations.  Reinhardt, 879 F. Supp. 2d at 1142.  At bottom, it can be

10 reasonably inferred under these circumstances that the allegedly missing information from the

11 disputed wage statements could not be promptly and easily determined from the wage statements

12 themselves.  While the simple math standard may ultimately prove useful to Ulta at some point in

13 proceedings on Plaintiffs' claim, the Court is not currently in a position to dismiss the claim on

14 that basis.

15      Ulta's other three challenges to the wage statement claim all attack its derivative nature.

16 First, Ulta asserts that Plaintiffs have not alleged that Ulta provided them with inaccurate wage

17 statements, as all of the wage statements accurately reflected wages that were actually paid.  In

18 other words, Ulta dismisses the possibility that any wage statement claim may be of a derivative

19 nature.  To make the same point through a second challenge, Ulta contends that Plaintiffs cannot

20 pursue a derivative wage statement claim because their success on that claim would produce an

21 impermissible double recovery.  Recognizing this is a divisive area of case law, the Court will

22 follow its own rulings (and those of other district courts) in cases raising similar legal questions to

23 find here that Plaintiffs have ability to bring a derivative § 226 claim.  Bates v. Leprino Foods Co.,

24 No. 2:20-cv-00700-AWI-BAM, 2020 WL 6392562, at *6 (E.D. Cal. Nov. 2, 2020); Finder, 2015

25 WL 1137151, at *5; see also Reyna v. WestRock Co., No. 20-cv-01666-BLF, 2020 WL 5074390,

26 at *10 (N.D. Cal. Aug. 24, 2020); Fodera v. Equinox Holdings, Inc., No. 19-cv-05072-WHO,

27 2020 WL 3961985, at *5 (N.D. Cal. July 13, 2020); Castillo v. Bank of Am. Nat'l Ass'n, No. SA

28 CV 17-0580-DOC (KESx), 2019 WL 7166055, at *8 (C.D. Cal. Oct. 29, 2019).

On this front, the Court disagrees with Ulta's reliance on the California Court of Appeal's decision in Maldonado v. Epsilon Plastics, Inc., 22 Cal. App. 5th 1308 (2018).  There, the court reversed an award of statutory penalties for wage statement violations after agreeing with the employer's argument that the plaintiffs had not shown they suffered a wage statement injury under § 226(e)(1).  Id. at 1334, 1336.  The disputed claim involved wage statements that showed the correct total hours worked, but failed to indicate that certain hours were worked as overtime.  Id. at 1334.  In other words, the wage statements misstated the actual wages earned by the plaintiffs.  Id. At issue for the appellate court was the trial court's finding that the plaintiffs had proved their injury based on evidence of unpaid overtime wages and the plaintiffs' argument on appeal that their injury was presumed under the wage statement statute.  Id. at 1335–36.  As to the latter, the court noted that reporting inaccuracies regarding "gross wages earned" and "net wages earned" under § 226(a)(1) and (5) are not amongst the categories of information where wage statement injury is presumed under § 226(e)(2)(B)(i).  Id. at 1335–36.  Without this presumption, the court explained, there was no showing of a wage statement injury that was distinct from the injury at the heart of the plaintiffs' overtime wages claim.  Id. at 1336–37.  In other words, the wage statement award under § 226 stood as an impermissible double recovery for the same injury as the underlying wage-and-hour violation.  Id. at 1336.

Important here, the Maldonado court distinguished the circumstances at hand from wage statement claims predicated on inaccurate or incomplete reporting of "total hours worked" and "number of hours worked at each hourly rate" under § 226(a)(2) and (a)(9).  When this information is missing from a wage statement, injury is presumed under § 226(e)(2)(B)(i).  The court explained that this distinction reflected an intentional legislative choice to account for situations where the wage statement inaccuracy masks the fact that an employee was not compensated for all hours of work.  Id. at 1336.  As the Maldonado court put it:

> Wage statements should include the hours *worked* at each rate and the wages *earned*.  In a perfect world, the first numbers will calculate out to the second.  But when there is a wage and hour violation, the hours worked will differ from what was truly earned.  But only the absence of the *hours worked* will give rise to an inference of injury; the absence of accurate *wages earned* will be remedied by the violated wage and hour law itself, as is the case here.

Id. at 1336–37.  This distinction is also the reason why the pleading in this case is not doomed by

Maldonado.  Here, unlike in that case, Plaintiffs here have alleged that Ulta's wage statements did

not include the correct number of hours worked.  SAC, ¶¶ 168–171.  This information is required

under § 226(a)(2) and (a)(9), and entitled to a presumption of injury under § 226(e)(2)(B)(i).

Given this, Maldonado actually supports the viability of Plaintiffs' claim.  Bates, 2020 WL

6392562, at *7; Fodera, 2020 WL 3961985, at *5.[9]

Ulta's next challenge is similar to the pair discussed above, with specific focus on the

interaction between Plaintiffs' wage statement claim and allegations of meal and rest period

violations under § 226.7.  According to Ulta, even if a derivative wage statement claim may exist,

it cannot be derivative of meal or rest period violations under § 226.7 because relief for those

violations does not constitute wages that need to be included in a wage statement under § 226(a).

This Court has had opportunity to square this exact issue in other cases involving wage

statement causes of actions predicated, at least in part, on meal or rest period allegations.  While

noting the lack of broader judicial consensus regarding the proper characterization of payments

under § 226.7 for meal and rest period violations—i.e., wages or penalties—this Court has

consistently relied on the California Supreme Court's holding in Murphy v. Kenneth Cole

Productions, Inc., 40 Cal. 4th 1094, 1114 (2007), that the remedy for a § 226.7 violation "is a

premium wage intended to compensate employees, not a penalty."  See Bates, 2020 WL 6392562,

at *4–6; Finder, 2015 WL 1137151, at *5.  With that in mind, this Court has determined that

premium wages under § 226.7(c) are required to be included in wage statements under § 226.  See

Bates, 2020 WL 6392562, at *6; Finder, 2015 WL 1137151, at *5.  Plaintiffs, not surprisingly,

point the Court to these decisions and ask that their claim be treated similarly.  Meanwhile, Ulta

---

[9] The Court notes here that some of Plaintiffs' allegations regarding Ulta's failure to include information required under § 226(a)(9) may conflict with Maldonado.  Namely, in some places, Plaintiffs allege that Ulta violated that provision by failing to provide "the correct hourly rate" on wage statements. SAC, ¶¶ 169–171. This abbreviated paraphrasing of the statutory language neglects the part of the provision that Maldonado so heavily focused on: that is, "all applicable hourly rates in effect during the pay period and *the corresponding number of hours worked at each hourly rate by the employee* . . . ." § 226(a)(9) (emphasis added); see also Maldonado, 22 Cal. App. 5th at 1336–37 (explaining that "only the absence of the *hours worked* will give rise to an inference of injury" under § 226(e)(2)(B)(i)).   But even if this constitutes a pleading misstep, the Court finds dismissal unwarranted given Plaintiffs' recitation of § 226(a)(9) in full in other allegations and their alternative allegations that the wage statements did not include the correct total number of hours worked as required under § 226(a)(2). SAC, ¶¶ 168–171.

disputes the correctness of the decisions in <u>Finder</u> and <u>Bates</u>, and points to <u>Naranjo v. Spectrum Security Services, Inc.</u>, 40 Cal. App. 5th 444, 474, (2019), <u>review granted</u> (Jan. 2, 2020).

For purposes of making a record in this case, the Court will adhere to its determination in <u>Finder</u> that § 226.7(c) payments are wages (not penalties) that can sustain a wage statement claim. <u>Finder</u>, 2015 WL 1137151, at *5.[10]  Likewise, as it has done before, the Court herein acknowledges that its decision in <u>Finder</u> contradicts the conclusion in <u>Naranjo</u> that § 226.7(c) payments for meal and rest period violations are penalties, not wages. See <u>Naranjo</u>, 40 Cal. App. 5th at 473–74 (2019).  This conflict notwithstanding, the Court will once again decline to adopt <u>Naranjo</u>'s rationale so long as the California Supreme Court's pending review of that decision leaves it with "no binding or precedential effect" under California Rule of Court 8.1115(e)(1).  See <u>Bates</u>, 2020 WL 6392562, at *5; <u>Howell v. Leprino Foods Co.</u>, No. 1:18-cv-01404-AWI-BAM, 2021 WL 168291, at *4 (E.D. Cal. Jan. 19, 2021).  The Court will stand by its previous analysis unless and until the Ninth Circuit, the California Supreme Court, or a published California Court of Appeal opinion not subject to California Rule of Court 8.1115(e)(1) reaches a contrary result.[11]

In sum, the Court determines, as it has done before when facing the same legal issue, that Plaintiffs may proceed with their wage statement claim, notwithstanding that it is wholly derivative and in part derivative on their meal and rest period claims.

---

[10] With its motion, Ulta requests that the Court take judicial notice of a statement of decision in <u>Driscoll v. Graniterock Company</u>, No. 1-08-CV-103426 (Cal. Super. Ct. Sept. 20, 2011), a July 6, 2006 opinion letter from the California Division of Labor Standards Enforcement, and an enrolled bill report and bill analysis pertaining to Assembly Bill No. 3731 (1976).  Doc. No. 18 at 17–18.  Although the Court can take judicial notice of the existence of these matters of public record, <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689–90 (9th Cir. 2001), it finds doing so would be of little import here.  Acknowledging that the proper characterization of § 226.7(c) payments has been a divisive legal issue, this Court will continue to rely on its previous readings of the California Supreme Court's decision in <u>Murphy</u>, which itself was issued after the matters for which notice is sought (except for the trial court decision, which merely stands as unpublished and nonbinding authority on one side of the issue).

[11] The Court disagrees with Ulta's contention that <u>Ling v. P.F. Chang's China Bistro, Inc.</u>, 245 Cal. App. 4th 1242, 1260–61 (2016), constitutes a California Court of Appeal opinion of that kind.  Rather, the Court agrees with other California district courts that have declined to follow <u>Ling</u> on grounds that its discussion regarding the nature of § 226.7(c) premiums for purposes of a derivative separation wages claim was dicta.  See <u>Alejandro Caballero v. W. Ref. Retail, LLC</u>, No. 8:21-cv-00018-VAP-SKx, 2021 WL 2935308, at *4 n.5 (C.D. Cal. June 9, 2021); <u>Kazi v. PNC Bank, N.A.</u>, No. 18-cv-04810-JCS, 2021 WL 965372, at *22–23 (N.D. Cal. Mar. 15, 2021); <u>Karl v. Zimmer Biomet Holdings, Inc.</u>, No. C 18-04176 WHA, 2018 WL 5809428, at *10–11 (N.D. Cal. Nov. 6, 2018); <u>Valdez v. Harte-Hankes Direct Mktg./Fullerton, Inc.</u>, No. SA CV 17-0525-DOC (KESx), 2017 WL 10592135, at *6 (C.D. Cal. Dec. 21, 2017); <u>In re: Autozone, Inc.</u>, No. 3:10-md-02159-CRB, 2016 WL 4208200, at *7 (N.D. Cal. Aug. 10, 2016).

**E.    Separation wages claim**

Ulta next challenges Plaintiffs' separation wages claim on grounds of its insufficient pleading and its being derivative of the meal and rest period claims.  The latter challenge follows an identical course as the discussion immediately above regarding the derivative nature of the wage statement claim.  Thus, here too the Court will reject Ulta's challenge and adhere to its previous ruling in <u>Finder</u> that § 226.7(c) premiums constitute wages that are subject to the statutory framework for separation wages penalties.  <u>Finder</u>, 2015 WL 1137151, at *8; <u>see also</u> <u>Bates</u>, 2020 WL 6392562, at *5.[12]  This still leaves the pleading sufficiency challenge.

California law requires wages to be paid in a timely manner at an employee's separation. "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."  Cal. Labor Code § 201(a).  Likewise, when an employee without a written contract for a definite period quits, "his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting." Cal. Labor Code § 202(a).  Where an employer willfully fails to comply with §§ 201 and 202 upon an employee's separation, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  Cal. Labor Code § 203(a).

Plaintiffs allege that they terminated their employment with Ulta and that regardless of whether that termination was voluntary or involuntary, separation wages were not timely paid. SAC, ¶ 178–181.  Plaintiffs also allege that numerous members of the putative class experienced a similar fate.  <u>Id.</u>, ¶ 182.  Plaintiffs allege that the unpaid wages included straight-time wages, overtime wages, and premium wages for meal and rest period violations.  <u>Id.</u>, ¶¶ 185.  They allege that Ulta's failure to pay these wages was willful and part of a consistent policy or practice.  <u>Id.</u>,

---

[12] The Court also declines to grant Ulta's request for judicial notice of an unpublished order in <u>Rodriguez v. Old Dominion Freight Line, Inc.</u>, No. 13-cv-00891 DSF (RZx) (C.D. Cal. June 18, 2013), and transcript excerpts of a June 20, 2000 public hearing before the California Industrial Welfare Commission.  Doc. No. 18 at 17–18.  Like with the judicial notice request above, the Court could take such notice but finds doing so would not alter the outcome here. <u>Murphy</u> followed the Industrial Welfare Commission hearing, and notice of a court order does not mean notice that the order is correct.

¶¶ 185–186.  Like with the wage statement claim, Plaintiffs allege that the allegations undergirding their meal and rest period claims support their separation wages claim in so far as (1) their time spent traveling to and from breakrooms and submitting to security protocols should have been, but was not, compensated for as hours worked, and (2) their entitlement to premium wages under § 226.7(c) for meal and rest period violations constitutes unpaid wages under §203. Id., ¶¶ 186–188.

Ulta's sufficiency argument is analogous to one of those it brought against the wage statement claim.  Namely, Ulta contends that Plaintiffs have not alleged any facts suggesting that Ulta's purported separation wages violations were "willful."  To support its cause, Ulta cites cases that have dismissed separation wages claims based on conclusory and threadbare allegations under § 203.  The Court rejects this comparison and greater argument for the same reasons it rejected the similar effort above.  In pleading their derivative separation wages claim, Plaintiffs have both specifically alleged that Ulta's statutory violations were willful and based their claim on the same allegations of the underlying claims that putative class members were subjected to mandatory policies and practices regarding travel time and security protocols that were uniformly applied and enforced by supervisors.  SAC, ¶¶ 78–89, 99–112, 120–131, 150–161, 185, 189–190.  These collective allegations, when taken as true, at least support a reasonable inference that Ulta intentionally chose not to pay wages that were due and payable to separating putative class members.  See Ambriz v. Coca Cola Co., No. 13-cv-03539-JST, 2013 WL 5947010, at *7 (N.D. Cal. Nov. 5, 2013).  With this in hand, Plaintiffs' have pleaded a plausible claim for relief under § 203.

### F.    Timely wages claim

Ulta next argues that Plaintiffs' timely wages cause of action should be dismissed on grounds that it is without allegations supporting proper relief for violations of California Labor Code § 204.  Under that statute, an employer must pay wages for work performed between the first and fifteenth day of the month at least by the twenty-sixth day of the same month, and wages for work performed between the sixteenth and last day of the month at least by the tenth day of the

following month.  § 204(a).  The statute thus "imposes an obligation of timely payment of wages upon California employers and provides rules for scheduling wage payments."  See's Candy Shops, Inc. v. Superior Court, 210 Cal. App. 4th 889, 904 (2012).  California Labor Code § 210 provides statutory penalties for initial and subsequent violations of § 204.  Cal. Labor Code § 210(a).  Employees can recover these penalties by filing a complaint with the California Labor Commissioner under California Labor Code § 98.  § 210(b).  In lieu of seeking this administrative relief, employees can instead pursue civil penalties by way of a PAGA claim.  § 210(c).

For their seventh cause of action, Plaintiffs allege that Ulta violated § 204 and seek compensatory relief under § 210.  SAC, ¶¶ 199–200, 202.  As to the violation, Plaintiffs allege that Ulta failed to pay wages to the putative class in the § 204 timeframes.  Id., ¶¶ 195–196.  Plaintiffs' claim appears to be wholly derivative of their straight-time wages, overtime wages, meal period, and rest period claims.  That is, Plaintiffs allege that Ulta's violations of § 204 occurred by way of its failures to pay putative class members straight-time and overtime wages for their time spent traveling to and from workstations and submitting to security protocols, and premium wages under § 226.7(c) for meal and rest period violations.  Id., ¶¶ 196–200.  Plaintiffs allege that all of these failures were willful as Ulta knew the wages were due and still failed to pay them.  Id., ¶ 201.

Ulta's arguments against this claim fail to land the fatal blow.  First, the Court disagrees with Ulta's assertion that Plaintiffs are wrongly seeking unpaid wages under § 204, whereas the statute is exclusively focused on the timing of wage payments.  Ulta understands the nature of § 204 correctly, but undersells Plaintiffs' pleading.  As noted above, Plaintiffs have both alleged that Ulta violated § 204 because certain wages were not paid in compliance with the statute's timing requirements, and sought penalties under § 210 (and not payment of those wages) for this violation.  SAC, ¶¶ 195, 199–200, 202.  This is precisely how a timely wages claim is supposed to be structured under California law.  The Court also disagrees with Ulta's citation to case law statements that suggest § 204 violations cannot be privately enforced.  These statements of law rest on a previous iteration of § 210, which dictated that failures to comply with § 204 were subject to civil penalties that were recoverable only by the California Labor Commissioner.  See, e.g., Johnson v. Hewlett-Packard Co., 809 F. Supp. 2d 1114, 1136 (N.D. Cal. 2011).  This

21

1  statutory arrangement changed in 2019 when § 210 was amended to allow for employees to

2  recover statutory penalties through a complaint to the Labor Commissioner or enforce a PAGA

3  claim for civil penalties.  See 2019 Cal. Stat. ch. 716, § 1 (eff. Jan. 1, 2020).

4          Despite these misses, the Court still finds dismissal is necessary here, as Plaintiffs' pursuit

5  of penalties under § 210 for Ulta's violations of § 204 is not properly before the Court.  Instead,

6  § 210(b) dictates that employees can recover these statutory penalties only by seeking

7  administrative relief under § 98.  Plaintiffs' timely wages claim does not comport with that

8  instruction.  Even so, the Court also recognizes here that this does not end Plaintiffs' pursuit of

9  recovery for the alleged timely wages violations.  Rather, under § 210(c), Plaintiffs are still able to

10  pursue that recovery by enforcing a PAGA claim.  And as discussed in more detail below,

11  Plaintiffs have done precisely that in the second-amended complaint.  SAC, ¶ 213.  Because

12  Plaintiffs' PAGA claim is pleaded such that it is dependent on the specific allegations under the

13  timely wages claim, the Court will provide Plaintiffs with an opportunity to amend their pleading

14  to ensure the PAGA claim still incorporates the allegations of the dismissed claim.

15

16      **G.      UCL claim**

17          Ulta raises two specific challenges to Plaintiffs' unfair competition law ("UCL") claim:

18  that it is insufficiently pleaded and that it seeks relief that is improper under the UCL.

19          The UCL generally prohibits "any unlawful, unfair or fraudulent business act or practice."

20  Cal. Bus. & Prof. Code § 17200.  The scope of the UCL "is sweeping, embracing anything that

21  can properly be called a business practice and that at the same time is forbidden by law."  Cel-

22  Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) (internal marks and

23  quoted source omitted).  Relevant here, "any business act or practice that violates the Labor Code

24  through failure to pay wages is, by definition (§ 17200), an unfair business practice."  Cortez v.

25  Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 178 (2000).  Notwithstanding its broad scope

26  of coverage, however the UCL limits available remedies to injunctive relief and restitution.  Clark

27  v. Superior Court, 50 Cal. 4th 605, 610 (2010).  In this context, restitution means "the return of

28  money or other property obtained through an improper means to the person from whom the

property was taken." Id. at 614.  "The object of restitution is to restore the status quo by *returning* to the plaintiff funds in which he or she has an ownership interest."  Id. (quoted source omitted). In contrast to restitution, a "penalty" constitutes "a recovery without reference to the actual damages sustained" and is generally not recoverable under the UCL.  Id. (internal marks and quoted source omitted).

Plaintiffs base their UCL claim on the allegations undergirding their straight-time wages, overtime wages, meal period, and rest period causes of action.  SAC, ¶ 205.  Ulta asserts that this claim must be dismissed to the extent that the meal and rest period claims fail.[13]  Because the Court finds that Plaintiffs have sufficiently pleaded their meal and rest period claims, it rejects this challenge.

Ulta next asserts that the UCL claim must be dismissed to the extent it is predicated on claims that are remediable through relief that is not restitution under the UCL.  Ulta contends this precludes Plaintiffs' pursuit of UCL recovery for unpaid straight-time and overtime wages, and meal and rest period violations under § 226.7.[14]  The Court disagrees.  Earned wages that are due and payable under the Labor Code are recoverable as restitution under the UCL.  Cortez, 23 Cal. 4th at 178 (explaining that unpaid wages are restitutionary because they "are as much the property of the employee who has given his or her labor to the employer in exchange for that property as is property a person surrenders through an unfair business practice").  In light of the rulings above regarding the proper characterization of § 226.7(c) payments as wages, this accounts for each basis on which Plaintiffs' UCL claim is made.  See also Howell, 2021 WL 168291, at *4 (explaining that UCL claims may be based on § 226.7 violations as the remedy is recoverable under the UCL as restitution for unpaid wages); Bates, 2020 WL 6392562, at *8 (same); Cleveland v. Groceryworks.com, LLC, 200 F. Supp. 3d 924, 962–63 (N.D. Cal. 2016) (same)

---

[13] Ulta also asserts that the UCL claim must fail to the extent it is derivative of Plaintiffs' insufficiently pleaded claims for wage statement, separation wages, and timely wages violations.  Plaintiffs, however, have not pleaded their UCL claim such that it is derivative of these additional claims.  SAC, ¶ 205.

[14] Ulta also asserts that Plaintiffs may not recover under the UCL for wage statement penalties under § 226 or separation wages penalties under § 203.  The Court again notes that Plaintiffs have not based their UCL claim on wage statement or separation wages violations.  SAC, ¶ 205.

1    **H.      PAGA claim**

2        Ulta finally challenges Plaintiffs' PAGA claim on sufficiency grounds.

3        The California Legislature enacted PAGA, Cal. Lab. Code §§ 2698, et seq., in an effort to

4    improve the enforcement of Labor Code provisions by allowing employees to bring private civil

5    actions on behalf of themselves and other employees to recover civil penalties.  Iskanian v. CLS

6    Transp. L.A., LLC, 59 Cal. 4th 348, 379−80 (2014) (citing Arias v. Superior Court, 46 Cal. 4th

7    969 (2009)).  Under California law, the initial right to prosecute and collect civil penalties for

8    Labor Code violations belongs to the California Labor and Workforce Development Agency (the

9    "LWDA").  Caliber Bodyworks, Inc. v. Superior Court, 134 Cal. App. 4th 365, 376–77 (2005)

10   (citing Cal. Lab. Code § 2699(h)).  Where the state does not pursue a given claim, an "aggrieved

11   employee" suing under PAGA acts as a "proxy or agent" by "represent[ing] the same legal right

12   and interest as state labor law enforcement agencies—namely, recovery of civil penalties that

13   otherwise would have been assessed and collected by the [LWDA]."  Arias, 46 Cal. 4th at 986

14   (citing § 2699(a), (f)); see also § 2699(c) (defining "aggrieved employee" as "any person who was

15   employed by the alleged violator and against whom one or more of the alleged violations was

16   committed").  "Of the civil penalties recovered, 75 percent goes to the [LWDA], leaving the

17   remaining 25 percent for the 'aggrieved employees.'"  Id. at 980−81 (citing § 2699(i)).

18       Similar to the UCL argument, Ulta asserts that Plaintiffs' PAGA claim must be dismissed

19   to the extent that it is derivative of Plaintiffs' insufficiently pleaded claims.  Plaintiffs base their

20   PAGA claim on the allegations undergirding their straight-time wages, overtime wages, meal

21   period, rest period, wage statement, separation wages, and timely wages causes of action.  SAC,

22   ¶ 213.  With the exception of the timely wages claim under § 204, the Court has not found any of

23   these underlying claims to have been insufficiently pleaded.  Moreover, in dismissing the timely

24   wages claim above, the Court recognized its allegations are properly included as part of Plaintiffs'

25   PAGA claim.  Thus, the Court will reject Ulta's challenge.

26   ///

27   ///

28   ///

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.     Defendants' motion (Doc. No. 18) is GRANTED in part and DENIED in part;

     a.     The seventh cause of action for timely wages violations under California Labor Code § 204 is DISMISSED with prejudice;

     b.     All references to injunctive relief and declaratory relief are STRICKEN;

2.     Plaintiffs are GRANTED leave to file an amended complaint.  If Plaintiffs elect to file a third-amended complaint, they must do so within thirty days of service of this order.

IT IS SO ORDERED.

Dated:  __October 5, 2021__                       _____

                               SENIOR  DISTRICT  JUDGE