1
2
3
4

**UNITED STATES DISTRICT COURT**

5

**EASTERN DISTRICT OF CALIFORNIA**

6

7
8
9
10
11
12
13
14

| | |
|---|---|
| **SHAHARA HANSBER, NANG CHAN, and JESUS MORENO, on behalf of themselves, all others similarly situated, and on behalf of the general public,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**ULTA BEAUTY COSMETICS, LLC; and DOES 1-100,**<br><br>**Defendants** | **CASE NO. 1:21-cv-00022-AWI-CDB**<br><br>**ORDER ON DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATIONS OF PLAINTIFFS SHAHARA HANSBER AND JESUS MORENO AND TO STAY CASE**<br><br>(Doc. Nos. 51, 52) |

15
16

Plaintiffs Shahara Hansber, Nang Chan, and Jesus Moreno filed this class action lawsuit

17 against Defendant Ulta Beauty Cosmetics, LLC ("UBC"), alleging violations of California's

18 Private Attorneys General Act ("PAGA"), Labor Code, and Business & Professions Code.  Doc.

19 No. 29.  Currently before the Court are UBC's Motions to Compel Individual Arbitrations of

20 Hansber and Moreno and to Stay Proceedings Pending Ruling on Motions and Completion of

21 Arbitrations.  Doc. Nos. 51, 52.  For the following reasons, the Court will grant in part and deny in

22 part UBC's Motions.

23

## BACKGROUND

24

Hansber is a former employee of Exact Staff Inc. ("Exact"), and Moreno is a former

25 employee of Spherion Staffing LLC ("Spherion").  Doc. No. 51 at 12; Doc. No. 52 at 12.  Both

26 Hansber and Moreno signed arbitration agreements at the start of their employment to submit all

27 claims and controversies arising from their employment to individual arbitration.  Doc. No. 51 at

28 14-15; Doc. No. 52 at 14-15.

1    UBC entered into separate staffing services agreements with Exact and Spherion, pursuant
2    to which Exact and Spherion agreed to recruit, screen, and hire workers who would be assigned to
3    work at Ulta Inc.'s distribution center in Fresno, California ("Fresno DC").  Doc. No. 51 at 13-14;
4    Doc. No. 52 at 13-14.  Both Hansber and Moreno were placed on work assignments at the Fresno
5    DC.  Doc. No. 51 at 12; Doc. No. 52 at 12.  Chan also worked at the Fresno DC, but unlike
6    Hansber and Moreno, Chan applied to, interviewed with, and was hired by UBC without entering
7    into an arbitration agreement.  Doc. No. 53 at 8.

8    On November 4, 2020, Hansber, Moreno, and Chan filed a First Amended Class Action
9    Complaint against UBC and Spherion in Kern County Superior Court, alleging violations of
10   California's Labor Code, PAGA, and Business & Professions Code.[1]  Doc. No. 1, Ex. 1.  On
11   January 5, 2021, Spherion removed the matter to this Court pursuant to the Class Action Fairness
12   Act, 28 U.S.C. § 1332(d).  Id.  On March 15, 2021, Plaintiffs filed a Second Amended Complaint
13   which dropped Spherion and left UBC as the sole Defendant.  Doc. No. 15.  On April 18, 2021,
14   UBC filed a motion to dismiss and/or strike the Second Amended Complaint, which the Court
15   granted in part and denied in part.  Doc. Nos. 18, 26.  On November 2, 2021, Plaintiffs filed the
16   operative Third Amended Complaint, alleging eight cause of action against UBC for (1) failure to
17   pay all straight time wages; (2) failure to pay all overtime wages: (3) failure to provide meal
18   periods; (4) failure to authorize and permit rest periods; (5) knowing and intentional failure to
19   provide accurate itemized wage statements; (6) failure to pay all wages upon termination or
20   separation; (7) unfair competition; and (8) civil penalties under the PAGA.  Doc. No. 29.

21   On December 17, 2021, UBC filed a motion to join Exact and Spherion as necessary
22   parties under Fed. R. Civ. P. 19(a), which ultimately was denied.  Doc. Nos. 33, 48.  On August
23   12, 2022, UBC filed the instant motions to compel individual arbitrations of Hansber and Moreno
24   and to stay all proceedings pending the rulings on the motions and completion of arbitrations.
25   Doc. Nos. 51, 52.

26   _____

27   [1] Before Plaintiffs collectively filed their FAC, Moreno filed a representative action complaint pursuant to the PAGA
     in Fresno County Superior Court on June 29, 2020, Hansber filed a putative class action complaint in Kern County
     Superior Court on July 10, 2020, and Chan filed a putative class action complaint in Fresno County Superior Court on
28   August 12, 2020.  Doc. No. 55 at 10.  After the parties met and conferred regarding the sufficiency of these separate
     complaints, Moreno, Hansber, and Chan agreed to amend their separate complaints and collectively file the FAC.  Id.

**LEGAL STANDARD**

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; Zoller v. GCA Advisors, LLC, 993 F.3d 1198, 1201 (9th Cir. 2021). Further, the FAA permits a party "aggrieved by the alleged . . . refusal to arbitrate" to petition any federal district court for an order compelling arbitration.  9 U.S.C. § 4; Van Dusen v. United States Dist. Court for the Dist. of Ariz., 654 F.3d 838, 842 (9th Cir. 2011).  A district court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  Revitch v. DIRECTV, LLC, 977 F.3d 713, 716 (9th Cir. 2020) (citing Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)).  If the answer to both questions is 'yes,' the district court must enforce the arbitration agreement in accordance with its terms; there is no place for discretion by the district court. Revitch, 977 F.3d at 716.  Thus, "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue."  Granite Rock Co. v. International Bhd. Of Teamsters, 561 U.S. 287, 299 (2010); Revitch, 977 F.3d at 716.

If a court orders the parties to arbitration, the FAA provides for the court to stay the matter pending completion of the arbitration.  See 9 U.S.C. § 3; Ziober v. BLB Res., Inc., 839 F.3d 814, 817 (9th Cir. 2016).  However, when all claims in a complaint are within the scope of an arbitration agreement, the court may dismiss the entire action instead of issuing a stay. Johnmohammadi v. Bloomingdale's, Inc., 755 F.3d 1072, 1074 (9th Cir. 2014).  The party seeking to compel arbitration, has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence.  Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014) (citing Rosenthal v. Great W. Fin. Sec. Corp., 14 Cal. 4th 394, 413 (1996)).

//

//

**DISCUSSION**

The parties do not dispute that Hansber and Moreno entered into agreements to arbitrate with Exact and Spherion, respectively.  Neither do the parties dispute that the FAA applies to the above agreements or that UBC may enforce them despite being a nonsignatory.  However, the parties disagree as to whether UBC waived its right to arbitration, and if not, whether Hansber and Moreno's representative PAGA claims and all of Chan's claims should be stayed pending the arbitrations of Hansber and Moreno's individual claims.  The Court will address each issue in turn below.

**1.  Waiver**

*Plaintiffs' Arguments*

Plaintiffs argue that UBC waived its right to arbitrate because its actions were inconsistent with the right to arbitrate.  Specifically, Plaintiffs claim that because UBC substantially invoked the litigation machinery by removing the matter to this Court, filing several motions, and engaging in discovery, UBC unjustifiably delayed the assertion of its right to arbitrate and, therefore, waived it.  Furthermore, Plaintiffs argue that UBC delayed its assertion to arbitrate for tactical reasons and that Plaintiffs would be prejudiced if ordered to arbitrate this late in the case.

*Defendant's Arguments*

UBC argues it did not waive its right to arbitrate Hansber or Moreno's claims because it repeatedly asserted its right to arbitrate and has not otherwise defended against Plaintiffs' claims in a manner inconsistent with its right to arbitrate.  Additionally, UBC contends that its purported delay in seeking arbitration was justified and did not result in any prejudice to Plaintiffs.  Furthermore, UBC argues that policy concerns disfavor waiver of the right to arbitrate and that in any event, it is the role of the arbitrator, and not the Court, to decide any disputes regarding waiver because the parties clearly and unmistakably agreed to arbitrate the issue of waiver.

*Legal Standard*

The right to arbitration, like other contractual rights, can be waived.  Martin v. Yasuda, 829 F.3d 1118, 1124 (9th Cir. 2016); Saint Agnes Med. Ctr. v. PacifiCare of Cal., 31 Cal. 4th 1187, 1195 (2003).  Under the FAA "[a] party seeking to prove waiver of a right to arbitration

1  must demonstrate: (1) knowledge of an existing right to compel arbitration [and] (2) acts

2  inconsistent with that existing right." Martin, 829 F.3d at 1124; see also Morgan v. Sundance,

3  Inc., 142 S. Ct. 1708, 1714 (2022) (holding that prejudice is no longer a condition of finding that a

4  party waived its right to compel arbitration). Furthermore, under California law, factors that may

5  be considered to determine whether arbitration has been waived include "(1) whether the party's

6  actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been

7  substantially invoked and the parties were well into preparation of a lawsuit before the party

8  notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration

9  enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a

10  defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5)

11  whether important intervening steps [e.g., taking advantage of judicial discovery procedures not

12  available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced

13  the opposing party." Saint Agnes Med. Ctr., 31 Cal. 4th at 1196; see also Cox v. Ocean View

14  Hotel Corp., 533 F.3d 1114, 1124 (9th Cir. 2008). Although "[t]here is no concrete test to

15  determine whether a party has engaged in acts that are inconsistent with its right to arbitrate,"

16  Newirth v. Aegis Senior Cmtys., LLC, 931 F.3d 935, 941 (9th Cir. 2019); Saint Agnes Med. Ctr.,

17  31 Cal. 4th at 1195, "a party acts inconsistently with exercising the right to arbitrate when it (1)

18  makes an intentional decision not to move to compel arbitration and (2) actively litigates the

19  merits of a case for a prolonged period of time in order to take advantage of being in court."

20  Newirth, 931 F.3d at 941. Conversely, "parties do not act inconsistently with a right to compel

21  arbitration when they engage in litigation activities that do not evince a decision to take advantage

22  of the judicial forum." Id.

23      Because waiver of a contractual right to arbitration is generally disfavored, any party

24  arguing waiver of arbitration "bears a heavy burden of proof." Martin, 829 F.3d at 1124; Richards

25  v. Ernst & Young, LLP, 744 F.3d 1072, 1074 (9th Cir. 2013); Saint Agnes Med. Ctr., 31 Cal. 4th

26  at 1195. Questions of arbitrability, such as whether a party's litigation conduct amounts to waiver

27  of arbitration, are for "judicial determination unless the parties clearly and unmistakably provide

28  otherwise." Martin, 829 F.3d at 1123-24; see also Morgan Stanley & Co., LLC v. Couch, 134 F.

1  Supp. 3d 1215, 1224-25 (E.D. Cal. 2015) (finding that it is presumptively for the Court to decide

2  whether defendant waived arbitration rights).

3      *Discussion*

4      As an initial matter, the Court finds that it may adjudicate the issue of waiver.  The specific

5  issue before the Court is whether UBC waived its right to arbitration through its litigation conduct.

6  Martin, 829 F.3d at 1123-24.  UBC's argument that the parties "clearly and unmistakably" agreed

7  to have the arbitrator decide the issue of waiver is unpersuasive.  Although the Ninth Circuit in

8  *Brennan v. Opus Bank* held that an arbitration agreement's incorporation of the American

9  Arbitration Association ("AAA") rules constituted "clear and unmistakable evidence" that the

10  contracting parties agreed to arbitrate arbitrability, *Brennan* expressly limited its holding to the

11  facts of its case, which involved an arbitration agreement between "sophisticated parties."

12  Brennan v. Opus Bank, 796 F.3d 1125, 1130-31 (9th Cir. 2015) ("[W]e limit our holding to the

13  facts of the present case, which do involve an arbitration agreement 'between sophisticated

14  parties.'"); see also Roman v. Jan-Pro Franchising Int'l, Inc., 2022 U.S. Dist. LEXIS 137190, *16

15  (N.D. Cal. Aug. 2, 2022) (distinguishing *Brennan* on the ground that it does not apply to an

16  employment contract between employer and janitors).  Because the claims and evidence before the

17  Court do not indicate that UBC's arbitration agreements mirror the facts in *Brennon*, the Court is

18  not convinced that the parties "clearly and unmistakably" agreed to have the arbitrator decide the

19  waiver issue.  Therefore, the Court will decide whether UBC waived its right to arbitration

20  through its litigation conduct.  Martin, 829 F.3d at 1123-24; Roman, 2022 U.S. Dist. LEXIS

21  137190, at *16.

22      Based on UBC's litigation conduct, the Court finds that UBC did not waive its right to

23  arbitration.  There is no dispute that UBC had knowledge of its right to compel arbitration, but the

24  parties dispute whether UBC's conduct in this litigation was inconsistent with that right.  Plaintiffs

25  argue that the following conduct of UBC demonstrates that it acted in a manner inconsistent with

26  its right to arbitration: rather than immediately moving to compel arbitration, UBC assented to the

27  case's removal to this Court; UBC filed a motion to dismiss the Second Amended Complaint

28  which was granted in part and denied in part; UBC filed an Answer to the Third Amended

Complaint; UBC responded with objections to Plaintiffs' written discovery requests; UBC filed a motion to join Exact and Spherion as necessary parties which was ultimately denied; UBC did not file a motion to stay the case pending the Supreme Court's decision in *Viking River Cruises, Inc. v. Moriana*; and UBC ultimately filed its motion to compel arbitration approximately one year and seven months after the case was removed to this Court.

Upon review, the Court finds that Plaintiffs did not satisfy their "heavy burden of proof" to warrant a finding of waiver. <u>Martin</u>, 829 F.3d at 1124; <u>Saint Agnes Med. Ctr.</u>, 31 Cal. 4th at 1195. The record indicates that UBC notified Plaintiffs and the Court since at least April 28, 2021 of its right to arbitration. <u>See</u> Doc. No. 18 at 15-16. UBC's Answer to the operative Third Amended Complaint also asserts an affirmative defense that Plaintiffs' claims must be submitted to individual arbitration. Doc. No. 30 at 65, 70-71. UBC thereafter expressly notified Plaintiffs and the Court on December 8, 2021, and several times thereafter, that it intended to move to compel individual arbitrations of Plaintiffs' claims and the timing thereof. Doc. Nos. 31 at 4-5 and 49 at 4-5. UBC also served objections to Plaintiffs' written discovery requests on the grounds that Plaintiffs were required to individually arbitrate their claims.[2] <u>See</u> Doc. No. 58-1, Exs. A, B. Although these statements alone are not enough to defeat a claim of waiver, <u>Martin</u>, 829 F.3d at 1125, other acts by UBC further indicate that it did not act inconsistent with its right to arbitration.

As UBC notes, UBC did not extensively engage in the discovery process, given that UBC neither propounded any written discovery requests nor conducted any depositions.[3] Additionally, UBC's written objections to Plaintiffs' discovery requests reflected only a "determination to avoid or frustrate the litigation" rather than a strategic decision to "actively litigate" the case. <u>Newirth</u>, 931 F.3d at 941; <u>Chartwell Staffing Servs. v. Atl. Sols. Grp, Inc.</u>, 2020 U.S. Dist. LEXIS 24640,

---

[2] Given that UBC notified Plaintiffs and the Court of its right and intent to compel individual arbitrations of Hansber and Moreno's claims well before it filed its current motions, several of Plaintiffs' cases cited in support of their position (<u>Liou v. Organifi, LLC</u>, 2021 U.S. Dist. LEXIS 24681 (S.D. Cal. Feb. 8, 2021), <u>Roberts v. El Cajon Motors, Inc.</u>, 200 Cal. App. 4th 832 (2011), <u>Guess?, Inc. v. Superior Court</u>, 79 Cal. App. 4th 553 (2000), <u>Kaneko Ford Design v. Citipark, Inc.</u>, 202 Cal. App. 3d 1220 (1988)) are distinguishable on this basis.

[3] The fact that UBC did not extensively engage in the discovery process makes several of the cases relied upon by Plaintiffs (<u>Augusta v. Keehn & Assocs.</u>, 193 Cal. App. 4th 331 (2011), <u>Sobremonte v. Superior Court</u>, 61 Cal. App. 4th 980 (1998), <u>Davis v. Continental Airlines, Inc.</u>, 59 Cal. App. 4th 205 (1997)) distinguishable.

*24-25 (C.D. Cal. Jan. 9, 2020) (concluding that defendants operated defensively in litigation aimed at "'frustrat[ing] the litigation rather than' engaging in strategic, active litigation"). UBC's joinder to Spherion's removal of the case to this Court also was not an act inconsistent with UBC's right to arbitrate. See Gonsalves v. Infosys Techs., Ltd., 2010 U.S. Dist. LEXIS 79683, *9 n.2 (N.D. Cal. Aug. 5, 2010) (citing Saint Agnes Med. Ctr., 31 Cal. 4th at 1205). Neither was the filing of UBC's motion to join Spherion and Exact as necessary parties because that motion did not address the merits of Plaintiffs' claims. Newirth, 931 F.3d at 941-42; Conde v. Open Door Mktg., LLC, 2017 U.S. Dist. LEXIS 185508, *20 (N.D. Cal. Nov. 8, 2017). Although Plaintiffs point to UBC's motion to dismiss as a motion on the merits, that motion "would have proceeded irrespective of the arbitration motion" because Plaintiff Chan did not sign an arbitration agreement; thus, filing the motion to dismiss was not an act inconsistent with a right to arbitrate because Chan's claims "could not have been compelled to arbitration in the first place."[4] Conde, 2017 U.S. Dist. LEXIS 185508, at *21; see also Cadena v. Am. Honda Motor Co., 2020 U.S. Dist. LEXIS 104165, *13-14 (C.D. Cal. June 10, 2020).

Accordingly, because UBC's actions were not inconsistent with its right to individually arbitrate Hansber and Moreno's claims, UBC did not waive its right to arbitrate. Given that Plaintiffs do not dispute that Hansber and Moreno signed arbitration agreements encompassing their claims against UBC, nor dispute that UBC may enforce them, the Court grants UBC's motions to compel individual arbitrations of Hansber and Moreno's claims.

## 2. **Stay of Representative PAGA Claims**

### *Defendant's Arguments*

UBC argues that because Hansber and Moreno agreed to the specific terms of their

---

[4] Although Plaintiffs cite several cases (Newirth v. Aegis Senior Cmtys., LLC, 931 F.3d 935 (9th Cir. 2019), Martin v. Yasuda, 829 F.3d 1118 (9th Cir. 2016), Flores v. Adir Int'l, LLC, 788 F. App'x 496 (9th Cir. 2019)) in which motions to compel arbitration were denied in part because those motions were filed after the defendant unsuccessfully attempted to use motions to dismiss claims on the merits, those cases are distinguishable because they do not involve a motion to compel arbitration asserted against a co-plaintiff like Chan who was not bound to an arbitration agreement in the first instance. *Martin* is also distinguishable because unlike UBC who repeatedly asserted its intent to arbitrate, the *Martin* defendants expressly "told the district judge and opposing counsel that they were likely 'better off' in federal court." Martin, 829 F.3d at 1126. *Newirth* is also distinguishable because unlike UBC, the *Newirth* defendant first filed a motion to compel, subsequently withdrew it, then filed a motion to dismiss which was ultimately denied, engaged in extensive discovery, and thereafter filed another motion to compel arbitration. Newirth, 931 F.3d at 938-39.

1  respective arbitration agreements, the terms dictate that they arbitrate all their claims against UBC

2  on an individual basis and not in a class or representative capacity.  UBC further asserts that if

3  Hansber and Moreno's individual PAGA claims are sent to arbitration, their remaining

4  representative PAGA claims must be stayed and dismissed for lack of standing pursuant to the

5  Supreme Court's decision in *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022).

6  　　　　*Plaintiffs' Arguments*

7  　　　　Plaintiffs argue that even if their individual claims are compelled to arbitration, their

8  representative PAGA claims should not be dismissed in court because California case law and

9  PAGA's statutory language and legislative history demonstrate that Plaintiffs still have standing to

10  litigate those claims. According to Plaintiffs, the Supreme Court in *Viking River* exceeded its

11  authority when it held that a plaintiff lacked standing to litigate representative PAGA claims when

12  her individual PAGA claims were compelled to arbitration.  Furthermore, given that the California

13  Supreme Court is expected to clarify this PAGA standing issue in *Adolph v. Uber Technologies,*

14  *Inc.*, Plaintiffs request that, if Hansber and Moreno are ordered to arbitrate their individual claims,

15  their representative PAGA claims be stayed until *Adolph* is decided.

16  　　　　*Legal Standard*

17  　　　　PAGA authorizes any "aggrieved employee" to initiate an action against a former

18  employer "on behalf of himself . . . and other current or former employees" to obtain civil

19  penalties that otherwise can be "recovered only by the State" in an enforcement action brought

20  by California's Labor and Workforce Development Agency ("LWDA").  Viking River Cruises,

21  Inc. v. Moriana, 142 S. Ct. 1906, 1914 (2022) (quoting Cal. Lab. Code Ann. § 2699(a)).  PAGA

22  claims are "representative" in two ways: first, PAGA actions are "representative" in the sense that

23  they are brought by employees acting as agents or proxies of the State.  Id. at 1916.  Second,

24  PAGA actions are "representative" in the sense they are brought by employees acting on behalf of

25  other employees in addition to themselves.  Id.

26  　　　　The California Supreme Court held in *Iskanian* that waivers of an employee's right to

27  bring "representative" PAGA claims in the first sense are barred under California law. See

28  Iskanian v. CLS Transp. L.A., LLC, 59 Cal. 4th 348, 383-84 (2014). The Supreme Court termed

1   this "*Iskanian*'s principal rule." Viking River, 142 S. Ct. at 1916. *Iskanian* further held that

2   agreements to arbitrate or litigate individual PAGA claims for Labor Code violations that an

3   employee personally suffered, separately and apart from "representative" PAGA claims in the

4   second sense, are invalid. Iskanian, 59 Cal. 4th at 383-84. The Supreme Court termed this

5   *Iskanian*'s "secondary rule." Viking River, 142 S. Ct. at 1916-17. In *Viking River*, the United

6   States Supreme Court upheld *Iskanian*'s "principal rule," but overturned *Iskanian*'s "secondary

7   rule" on the ground that it was preempted by the FAA. Viking River, 142 S. Ct. at 1923-26; see

8   also Harper v. Charter Commc'ns, LLC, 2022 U.S. Dist. LEXIS 161321, *4 (E.D. Cal. Sep. 7,

9   2022). Thus, under *Viking River*, waivers of the right to assert representative PAGA claims on the

10  state's behalf remain barred, but employees may waive the right to bring PAGA claims that are

11  specifically premised on labor code violations they have personally suffered. See Harper, 2022

12  U.S. Dist. LEXIS 161321, at *4 (citing Viking River Cruises, 142 S. Ct. at 1923-26 and

13  MacClelland v. Cellco P'ship, 2022 WL 2390997, at *9, ___F.Supp.3d___ (N.D. Cal. July 1,

14  2022)).

15      For purposes of PAGA standing, *Viking River* further held that when plaintiffs maintain

16  representative PAGA claims in the second sense on behalf other employees, those plaintiffs must

17  also maintain an individual PAGA claim in that action. Viking River, 142 S. Ct. at 1925 (citing

18  Cal. Lab. Code Ann. §§2699(a), (c)). This is because "[w]hen an employee's own dispute is pared

19  away from a PAGA action, the employee is no different from a member of the general public, and

20  PAGA does not allow such persons to maintain suit." Id. (citing Kim v. Reins Int'l Cal., Inc., 9

21  Cal. 5th 73, 90 (2020)). Accordingly, if a plaintiff's individual PAGA claims are compelled to

22  arbitration, that plaintiff "lacks statutory standing to continue to maintain her non-individual

23  claims in court, and the correct course is to dismiss her remaining claims." Id.; see also Johnson

24  v. Lowe's Home Ctrs., Ltd. Liab. Co., 2022 U.S. Dist. LEXIS 171626, *11 (E.D. Cal. Sep. 21,

25  2022) ("The Supreme Court clearly set forth that non-individual PAGA claims should be

26  dismissed once the individual PAGA claim is compelled to arbitration.").

27      *Discussion*

28      The parties do not dispute that Hansber and Moreno signed agreements to submit their

10

1   individual PAGA claims to arbitration.  Neither do the parties dispute the scope or validity of the

2   arbitration agreements' waivers, under which Hansber and Moreno agreed to waive their rights to

3   assert claims on a class or representative basis.  See Doc. No. 51-2 at 6 ("All claims that are

4   covered by this Agreement may only be brought by me or the Company on an individual basis.

5   The Company and I agree to waive any right to make any claims on a representative or class basis

6   to the fullest extent permitted by law."); Doc. No. 52-3 at 4 ("I also agree that covered claims will

7   only be arbitrated on an individual basis, and that both Spherion and I waive the right to

8   participate in or receive money from any class, collective or representative proceeding.").  Instead,

9   the parties simply disagree as to whether Hansber and Moreno can maintain statutory standing to

10  bring representative PAGA claims on behalf of other employees if their individual PAGA claims

11  are compelled to arbitration.

12          While UBC contends that *Viking River* directly resolves this issue, Plaintiffs argue that

13  *Viking River* does not apply because it is at odds with the California Supreme Court's decision in

14  *Kim*, which concluded that "[s]ettlement of individual claims does not strip an aggrieved

15  employee of standing, as the state's authorized representative, to pursue PAGA remedies."  Kim, 9

16  Cal. 5th at 80.  Plaintiffs also highlight Justice Sotomayor's concurrence in *Viking River* which

17  states "if [the] Court's understanding of state law is wrong, California courts, in an appropriate

18  case, will have the last word."  Viking River, 142 S. Ct. at 1925 (Sotomayor, S., concurring).

19          Notwithstanding Justice Sotomayor's concurrence and the California Supreme Court's

20  decision in *Kim*, a majority of Justices—including Justice Sotomayor—held that a plaintiff lacks

21  statutory standing to bring a representative PAGA claim without a related individual PAGA claim

22  in that same proceeding.  See Viking River, 142 S.Ct. at 1925-26; see also Radcliff v. San Diego

23  Gas & Elec. Co., 2022 U.S. Dist. LEXIS 165054, *8 (S.D. Cal. Sep. 12, 2022).  The Supreme

24  Court also explicitly considered *Kim* when reaching this holding.  See Viking River, 142 S.Ct. at

25  1916-17, 1925.  Accordingly, in light of *Viking River*, the Court will apply the Supreme Court's

26  interpretation of PAGA standing to this matter.  Cf. Kona Enterprises, Inc. v. Est. of Bishop, 229

27  F.3d 877, 884 n.7 (9th Cir. 2000) (stating that the Ninth Circuit's interpretation of state law

28  remains binding within the Ninth Circuit in the absence of any subsequent indication from the

state courts that the interpretation is incorrect).  Because Hansber and Moreno's individual PAGA claims are compelled to arbitration, they lack statutory standing to maintain their remaining non-individual PAGA claims in court; therefore, those remaining claims will be dismissed.  Viking River, 142 S.Ct. at 1925.

The Court is also disinclined to stay the above statutory standing issue pending the California Supreme Court's decision in *Adolph v. Uber Technologies, Inc.*, Cal. S. Ct. Docket No. G059860.  "The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."  D'Lil v. Riverboat Delta King, Inc., 59 F. Supp. 3d 1001, 1020 (E.D. Cal. 2014) (citing Clinton v. Jones, 520 U.S. 681, 706 (1997)).  When determining whether to grant a stay, the court must weigh the competing interests, including "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  Id. (citing CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962)).  Here, despite Plaintiffs' contention that the California Supreme Court is expected to clarify the PAGA standing issue in *Adolph*, the Supreme Court's decision in *Viking River* is on point in this matter, and this Court has no assurances of when *Adolph* will be decided.  The Court "declines to issue an indefinite stay of months, or possibly years, on the possibility that the California Supreme Court's interpretation of statutory standing will differ from the interpretation articulated in [*Viking River*]."  Radcliff, 2022 U.S. Dist. LEXIS 165054, at *10-11; see also Dependable Highway Exp., Inc. v. Navigators Ins. Co., 498 F.3d 1059, 1066 (9th Cir. 2007) ("Generally, stays should not be indefinite in nature.").  Therefore, the Court will apply *Viking River* and dismiss Hansber and Moreno's non-individual PAGA claims.

3. **Stay of Chan's Claims**

*Defendant's Arguments*

UBC argues that all proceedings in this litigation, including Chan's claims against UBC, should be stayed until the arbitrations of Hansber and Moreno's individual claims are complete.  According to UBC, all three Plaintiffs assert identical claims against UBC involving common

1   questions of fact and law.  Therefore, even if Chan is a nonsignatory to any arbitration agreement,

2   Hansber or Moreno's arbitrations will likely resolve significant factual and legal questions at issue

3   in Chan's claims.  Moreover, UBC claims that a discretionary stay by the Court is also warranted

4   because a stay would not prejudice Chan but would prejudice UBC, and because a stay would best

5   serve the orderly course of justice.

6   *Plaintiffs' Arguments*

7   Plaintiffs argue that the litigation of Chan's claims against UBC should not be stayed

8   pending the competition of Hansber and Moreno's individual arbitrations.  According to Plaintiffs,

9   the Court must rely on its inherent discretionary power to control its proceedings in determining

10   whether to stay Chan's claims.  Plaintiffs assert that such a discretionary stay is not appropriate

11   here because UBC faces no risk of irreparable injury absent a stay, the issues to be decided in

12   Hansber and Moreno's arbitrations will not impact Chan's case, and Chan would be substantially

13   prejudiced if the stay is granted.

14   *Legal Standard*

15   Where a suit presents issues referable to arbitration under a written agreement the court

16   "shall on application of one of the parties stay the trial of the action until such arbitration has been

17   had in accordance with the terms of the agreement."  9 U.S.C. § 3; Int'l All. of Theatrical Stage

18   Emple. v. Insync Show Prods., Inc., 801 F.3d 1033, 1039 (9th Cir. 2015).  Although it may be

19   advisable to stay litigation among nonarbitrating parties pending the outcome of the arbitration,

20   that decision is one left to the district court as a matter of its discretion to control its docket.

21   Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 n.23 (1983); Portland GE

22   v. Liberty Mut. Ins. Co., 862 F.3d 981, 986 (9th Cir. 2017); see also Congdon v. Uber Techs., 226

23   F. Supp. 3d 983, 990 (N.D. Cal. 2016).  A "district court's inherent, discretionary power to control

24   its proceedings should promote economy of time and effort for itself, for counsel, and for

25   litigants."  Congdon, 226 F. Supp. 3d at 990.  "Where a stay is proposed, the court should weigh

26   the competing interests that will be affected, including: the possible damage which may result

27   from granting the stay, the hardship or inequity which a party may suffer in being required to go

28   forward, and 'the orderly course of justice measured in terms of the simplifying or complicating of

1 issues, proof, and questions of law which could be expected to result from a stay.'" Id. (citing

2 CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962)).

3      *Discussion*

4      Upon review, the Court finds that a stay of Chan's claims is not warranted.  Proceeding

5 with the litigation as to Chan's claims would not result in a waste of judicial resources.  Congdon,

6 226 F. Supp. 3d at 991.  If the Court stays the entire litigation and allows Hansber and Moreno's

7 individual arbitrations to first proceed to completion, it is unclear what preclusive effect the

8 arbitrations would have on Chan's claims.  See Gile v. Dolgen Cal., 2022 U.S. Dist. LEXIS

9 39631, *5 (C.D. Cal. Jan. 14, 2022); see also Global Live Events — In Liquidation v. Ja-Tail

10 Enters., LLC, 2014 U.S. Dist. LEXIS 63963, *7-*10 (C.D. Cal. May 8, 2014) (collecting cases

11 discussing the uncertain preclusive effects of arbitration on litigation).  Such a result would, in any

12 event, frustrate the intent of the employment contracts between UBC and Chan, as well as other

13 direct hires Chan seeks to represent, in choosing not to arbitrate their claims in the first place.

14 Congdon, 226 F. Supp. 3d at 991.  Furthermore, the Court is not persuaded that proceeding with

15 the litigation as to Chan's claims would in some way negatively impact or undermine the parallel

16 arbitration proceedings, or would in some way prejudice UBC.  As other courts have

17 acknowledged, the potential for inconsistent results in this forum is insufficient to overcome such

18 interests.  See Global Live Events, 2014 U.S. Dist. LEXIS 63963, at *8-*11 (collecting cases)

19 ("Some inconsistency is therefore an inevitable result of the piecemeal litigation required by the

20 FAA."); see also Congdon, 226 F. Supp. 3d at 991 (citing Moses H. Cone, 460 U.S. at 20).

21 Although there are some overlapping factual issues common to both the arbitrations and this

22 litigation, there are also discrete issues that UBC itself acknowledges; that is, Hansber and

23 Moreno's claims against UBC, and UBC's specific affirmative defenses thereto, are predicated on

24 a joint employer theory of liability, which does not apply to Chan or the direct hires he seeks to

25 represent.[5]  The Court is reluctant to accept UBC's argument that the parties intended

26

27 ───────────────
[5] With respect to UBC's evidentiary objections to specific portions of the Declaration of Nang Chan (Doc. No. 53-1),
the distinct circumstances surrounding Chan's claims, as compared to the claims of Hansber and Moreno, are relevant

28 as to whether the entire case should be stayed pending the arbitrations of Hansber and Moreno.  The Court is also
disinclined to strike the statements of Nang that are based on his personal knowledge gained through his experiences

individualized adjudication of Hansber and Moreno's claims, and in the same breath, argue that their actions should be impacted by parallel litigation.  Congdon, 226 F. Supp. 3d at 991. Accordingly, the Court will exercise its discretion by denying UBC's motion to stay the litigation of Chan's claims pending the competition of Hansber and Moreno's arbitrations.[6]

**<u>ORDER</u>**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motions to compel individual arbitrations of Hansber and Moreno (Doc. Nos. 51, 52) are GRANTED;

2. Defendant's motion to dismiss Hansber and Moreno's non-individual PAGA claims for lack of statutory standing (Doc. Nos. 51, 52) is GRANTED;

3. Defendant's evidentiary objections to portions of Declaration of Nang Chan (Doc. No. 59) are OVERRULED.

4. Defendant's motion to stay all remaining proceedings in this case pending the completion of Hansber and Moreno's individual arbitrations (Doc. Nos. 51, 52) is DENIED.

5. Hansber and Moreno are ordered to arbitration with UBC forthwith in accordance with their respective arbitration agreements.

IT IS SO ORDERED.

Dated:   November 9, 2022           _____

                                                    SENIOR  DISTRICT  JUDGE

---

working for UBC.  Fuchs v. State Farm Gen. Ins. Co., 2016 U.S. Dist. LEXIS 195658, at *10 (C.D. Cal. Nov. 14, 2016).  Accordingly, the Court will overrule UBC's evidentiary objections.

[6] While the parties appear to agree that the FAA applies to this action, UBC asserts that courts in California routinely cite to both the FAA and California Arbitration Act ("CAA") § 1281.4 when deciding whether to stay an action pending completion of court-ordered arbitration.  Assuming without deciding that the CAA applies to this matter, the Court is not persuaded that CAA § 1281.4 requires a stay of Chan's claims.  "Section 1281.4 does not authorize the court to stay a plaintiff's action on the basis of a pending arbitration to which the plaintiff is not a party."  Leenay v. Superior Court, 81 Cal. App. 5th 553, 559 (2022).  The case UBC primarily cites for authority, Heritage Provider Network, Inc. v. Superior Court, 158 Cal. App. 4th 1146 (2008), did not hold that an arbitration proceeding may be used to "stay an action brought by a plaintiff who is not a party to the arbitration."  Leenay, 81 Cal. App. 5th at 571 (referring to and distinguishing Heritage Provider Network).  Indeed, Heritage Provider Network did not "even consider[] that proposition, so [it is] not authority for it.  Id.  Therefore, in light of Leenay, CAA § 1281.4 does not require a stay of Chan's claims.